IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

ALLAPATTAH SERVICES, INC., )
et al., )
                     )
      Plaintiffs, )
                     )
v. )
                     )
EXXON CORPORATION, )
                     )
      Defendant. )
                     )

**CASE NO. 91-0986-CIV-GOLD/SIMONTON**

FILED by _[signature]_ D.C.

**APR 0 7 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

---

## ORDER OF FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT

THIS CAUSE came on before the Court upon the Court's February 1, 2006 Order

Preliminary Approving Class Settlement, Form of Manner of Class[1] Notice, Scheduling

Time For Objections to Petitions For Attorneys' Fees and Incentive Awards and Setting

---

[1] The Class was originally defined by prior orders of this Court to include more than 10,000 current and former Exxon direct served dealers in thirty-five (35) states who alleged that Exxon systematically and intentionally overcharged them for the wholesale purchase of motor fuel between March 1, 1983 and August 31, 1994. Following the jury verdict, notice to members of the Class was extensive by publication and other reasonable means. The notice to the Class contained a bar date which was extended by the Court on several occasions. The Class was notified of those extensions and warned that claims would be barred if not filed, in accordance with the notice, by December 1, 2004. Thus, the Court had set a bar date of December 1, 2004 for all eligible Class members to file claims in this case.

There has been significant controversy as to Class members who filed claims after that date. I had not ruled on that matter as of the time the Settlement Agreement was announced. Regardless, the Class Settlement Agreement extends the deadline for Class members to file claims until December 19, 2005. Therefore, under the Class Settlement Agreement, the definition of the Class is expanded to include any class member who initially opted out of the class but who filed a claim in the Claims Administration Process by December 19, 2005. These new members are part of the Class pursuant to the Class Settlement Agreement and consequently, these persons and entities have received the notice of these proceedings along with the States. **[DE # 2561, Exhibit "B" at 1 & DE # 2607]**.  These matters are also more specifically addressed at pages 25-27 *infra*.

Final Fairness Hearing on Proposed Settlement **[DE # 2607]** (the "Order Preliminary Approving Class Settlement") for purposes of reaching a final determination as to whether the Class Settlement Agreement proposed by the parties is fair, reasonable, adequate and in the best interests of the Class Members.

I.    Introduction

On December 22, 2005, Plaintiffs filed a Motion to (1) Preliminarily Approve the Terms of Settlement of This Action, (II) Approve the Form of Notice to the Class of the Settlement, (III) Establish the Means of Communication of the Notice to the Class, (IV) Schedule the Time For Objections to be Made to the Proposed Settlement and to Petitions For Attorneys' Fees and Class Representatives' Incentive Awards and (V) Schedule a Final Fairness Hearing on the Proposed Settlement **[DE # 2561]**. The Motion was referred to Special Master Thomas E. Scott to consider whether the proposed settlement appears to be sufficiently fair, reasonable and adequate for submission to the Class Members under Fed. R. Civ. P. 23(e).    Special Master Scott issued an Amended Report and Recommendation on the Class Settlement Agreement **[DE # 2607, Exhibit "A"]**. In the Amended Report and Recommendation, Special Master Scott recommended that Plaintiff's Motion to Preliminary Approve the Terms of Settlement be granted.  Thereafter, upon review of the Amended Report and Recommendation, I entered my Order Preliminary Approving Class Settlement **[DE # 2607]**. In that Order, I adopted the Special Master's 76 page Amended Report and Recommendations in its entirety. I now re-adopt the Amended Report and Recommendations of the Special Master and re-incorporate its as part of this Final Order. I rely extensively on it in reaching my findings and conclusions.

In the Order Preliminary Approving Class Settlement, I set a Fairness Hearing on the proposed Class Settlement Agreement. The Fairness Hearing took place before this Court on April 5, 2006. Prior to the Fairness Hearing, out of 11,000 claimants, there was only one objection to the to the Class Settlement Agreement *[See DE # 2714]*. This single Class Member's alleged compensatory damages amounts to seven-one hundred thousandths of the total settlement. After receiving the objection I requested the Special Master to file a supplemental report. On April 5, 2006, Special Master Scott filed his Report and Recommendation On Westheimer's Objection to the Class Settlement. This Report extensively reviews the objections and recommends that the Court should " ... enter a Final Order Approving Settlement Agreement and should require Westheimer (the objector) to Post a Supercedes Bond and an Appeal Bond as outlined in Part IV of the Report." *Id.*

At the Fairness Hearing, I heard argument on the propriety of the Settlement Agreement and on the Objections. At the conclusion of the Fairness Hearing, I verbally approved the Settlement Agreement and denied the objections. Before so ruling, I considered the entire record in this case, including the affidavits submitted by the parties, the pleadings and other matters of record, including the objections. I also independently reviewed and assessed the Special Master's findings and conclusions in his latest Report and Recommendations. It is extraordinarily well-reasoned. I now adopt the Special Masters' April 5, 2006 Report and Recommendations and rely on it in articulating my own findings and conclusions in this written Order. Accordingly, I see no need to elaborate at length on matters which are so well addressed by the Special Master.

I further conclude, as is set forth below, that notice complies with Federal Rule of Civil Procedure 23(3); that the form of notice contained a fair and accurate description of the settlement and its terms, and provided a fair and adequate opportunity for Class

3

Members to understand whether they should accept or reject the settlement; that all of the *Bennett* factors have been met and exceeded; that the settlement is fair, adequate and reasonable; that the settlement is not the product of collusion between the parties, and that the proposed bar order is fair, adequate and reasonable. This Order, however, does not address either attorneys' fees or incentive awards, except that I conclude that the portion of the Settlement Agreement which requires Exxon to pay an attorney's fee in the three fee-shifting states is fair and reasonable.

For these reasons, I hereby APPROVE the Class Settlement Agreement. I further ORDER that the objections to the Class Settlement Agreement be, and are, hereby DENIED as patently frivolous and without merit **both** as to the individual objector and the Class as a whole, and that the single objector only has standing to raise objections as to itself and not as to the Class as a whole. In the event that an appeal is filed with the Eleventh Circuit Court of Appeals, I will require that a supercedes bond be posted if the objector appeals issues affecting the entire Class.

II.     Background

    A.     The History of Litigation

This class action lawsuit was originally filed in 1991 by 10,000 current and former Exxon direct served dealers in thirty-five states (the "Class") who claimed that Exxon, through a marketing program entitled Discount for Case Program (the "DFC Program"), systematically and intentionally overcharged the dealers on wholesale purchases of motor fuel. The action was brought in federal court pursuant to 28 U.S.C. § 1332 which provides federal court with diversity jurisdiction over citizens from different states. The Class claimed that by overcharging the dealers, Exxon breached its obligations to the dealers under Exxon's contractual agreements with the dealers.

4

Under the DFC Program, Exxon encouraged the dealers to reward retail customers paying cash for gasoline by charging them a few cents less per gallon of gasoline than retails customers who paid by credit card. Exxon began charging the dealers a three-percent processing fee on all sales of gasoline to customers who paid by credit card in order to encourage participation in the DFC Program. Exxon promised to offset the processing charges by reducing the wholesale price of gasoline Exxon charged each dealer. Exxon honored this promise for six months by reducing the wholesale price of gasoline by 1.7 cents per gallon. Exxon ceased providing the offset in March 1983 without notice to the dealers. The Class alleged that Exxon's failure to inform the dealers of the change resulted in Exxon overcharging them for gasoline during the period March 1, 1983 until August 31, 1994 (the "Class Period").

B.    The Trial

This case was originally tried before a jury in 1999. The first trial resulted in a hung Jury in September 1999. The retrial took place in January 2001 and resulted in a unanimous jury verdict in favor of the Class. On February 20, 2001, the jury rendered a Special Verdict wherein it found that Exxon breached its contractual obligations to the Class and that it fraudulently concealed that breach.

After trial, the Court concluded that the Class was entitled to an award of prejudgment interest. The Court entered a final judgment for the Class representatives, however, the Court created a Claims Administration Process for determining the amount to which each Class member was entitled, as the jury had not awarded aggregate damages. The Claims Administration Process allowed Exxon to contest each Class member's claim for compensatory damages.

5

C.    The Appeals and the Start of the Claims Administration Process

Exxon appealed.    On June 2003, the United States Court of Appeals for the Eleventh Circuit affirmed the district court's decision. Exxon then sought certiorari review in the United States Supreme Court challenging the district court's decision to certify the class and to assert subject matter jurisdiction over those Class members with claims of less than $50,000.00.  The Supreme Court granted certiorari solely on the issue of supplemental jurisdiction over those claimants with claims below $50,000.00.  Following the Supreme Court's decision to grant limited certiorari, the Eleventh Circuit issued its mandate.

In December 2004, the Court appointed retired United States District Court Judge Thomas E. Scott as the Special Master of the Claims Administration Process.  Although the factual and legal complexities of Exxon's liability were resolved at the trial, the role of the Special Master in the Claims Administration Process is to accurately evaluate the claims asserted by the Class members to render final judgments for Class members with proper claims.  The goal of the Claims Administration Process is to determine whether a claimant is the proper owner of the interest in the damage award for the period of ownership asserted on the claimant's respective proof of claim form.

Special Master Scott has heard over twenty motions for summary judgment as of the date of this Order and has recommended judgment in the amount of $276,000,000.00 dollars of claims.  The Claims Administration Process is ongoing and summary judgment claims will be adjudicated on a rolling basis.

On June 23, 2005, the United States Supreme Court issued its decision affirming the district court's exercise of supplemental jurisdiction over those Class members whose claims did not meet the $50,000.00 minimum amount in controversy requirement for

6

diversity jurisdiction.  The Supreme Court affirmed the decision of the Eleventh Circuit which upheld the Final Judgment entered by this Court.

D.     The Parties Reach a Settlement as to All Claims

On November 9, 2005, during a hearing before Special Master Scott, the parties announced a settlement in this matter.  Subsequent to the parties' initial announcement of a settlement, the parties engaged in lengthy negotiations and conferences to finalize the terms of the Class Settlement Agreement **[DE # 2561, Exhibit "A"]** and to prepare a form that provided sufficient notice to the Class. As discussed in detail in Special Master Scott's Amended Report and Recommendation **[DE # 2607, Exhibit "A"]**, the parties engaged in five settlement conferences.  The purpose of these conferences was to refine the terms of the Class Settlement Agreement and the Notice in order to ensure that the proposed settlement was fair, adequate and reasonable to justify submission to the Class for their consideration.

On December 22, 2005, following the numerous settlement conferences to discuss the terms of the Class Settlement Agreement **[DE # 2561, Exhibit "A"]** and the proposed notice to the Class, Plaintiffs filed a Motion to (I) Preliminarily Approve the Terms of Settlement of This Action, (II) Approve the Form of Notice to the Class of the Settlement, (III) Establish the Means of Communication of the Notice to the Class, (IV) Schedule the Time For Objections to be Made to the Proposed Settlement and to Petitions For Attorneys' Fees and Class Representatives' Incentive Awards and (V) Schedule a Final Fairness Hearing on the Proposed Settlement **[DE # 2561]**.

The Court referred the Motion to Preliminarily Approve the Terms of the Settlement to Special Master Scott for initial consideration.  Special Master Scott issued his Amended

Report and Recommendation **[DE # 2607, Exhibit "A"]** wherein he recommended that Plaintiff's Motion to Preliminary Approve the Terms of Settlement be granted. This matter is now before me upon the parties' request for final approval of the Class Settlement Agreement **[DE # 2561, Exhibit "A"]**. I held a Fairness Hearing on the Class Settlement Agreement on April 5, 2006. Upon review of the Class Settlement Agreement, the arguments of the sole objector to the Class Settlement Agreement, the responses of numerous parties to the objection and after hearing argument from counsel at the Fairness Hearing, I find that the Class Settlement Agreement reached by the parties is fair, adequate, reasonable and it is not the product of collusion between the parties. I therefore approve the Class Settlement Agreement. In approving the Class Settlement Agreement, I make the following findings of fact:

E.   The Terms of the Settlement are Fair, Adequate and Reasonable

The following is a summary of the terms of the settlement:[2]

1.   The Settlement Fund and Exxon's Waiver of Objections and Appeals

Exxon will wire funds in the amount of $1,075,000,000 (the "Total Settlement Proceeds") to an account at a banking institution approved by the Court (hereinafter, the "Exxon DFC Class Action Account" maintained at the "Exxon DFC Depository Institution"). Of this amount, $1,060,000,000 will be designated for payment of claims (the "Settlement Fund") and $15,000,000 will be designated for partial payment of the attorneys' fees owed by Exxon for class members whose stores were located in the states of Arkansas, Arizona, and Texas (the "Three State Fund"). Upon final approval of the agreement, Exxon waived

---

[2]

Not all of the terms of the Class Settlement Agreement are included. Only the significant terms are discussed for the purposes of evaluating the results achieved.

and relinquished all objections and appeals to all claims. Exxon will no longer participate in the claims adjudication process, except that Exxon will be available to respond to inquiries by Class counsel regarding the need for additional documentation

### 2. Release to Exxon

Exxon Corporation will be released and discharged from any and all further liability for any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character that are related to the cause of action that was adjudicated in this lawsuit.

### 3. The Claims Process

The claims adjudication process will go forward before the Special Master to adjudicate each Proof of Claim that was postmarked on or before December 19, 2005, including those claims that were filed after the claims filing deadline of December 1, 2004 and including those claims that were filed by members of the Class who previously had opted out (if they filed claims prior to December 19, 2005).

Throughout the duration of the claims process Class Counsel will remain responsible for designating and presenting all claims for adjudication before the Special Master on a rolling basis, marshaling the supporting documentation that may be available for each claim, and identifying those gallons as to which there are competing claims requiring adjudication.

### 4. Two Percent (2%) Reduction and Five Percent (5%) Reserve From Claims

Each claim filed by a claimant by December 19, 2005 will be reduced by two percent (2%) as a reserve for contingent circumstances. In addition, when a claim is ordered to be paid, a five percent (5%) reserve will be taken from each claim to ensure that sufficient

9

funds will exist at the end of the claims process to fund all claims timely filed by December 19, 2005 and determined to be valid.  Payment of that reserve will be made only if sufficient funds exist at the end of the claims process to allow it to be paid and only in the amount of the funds then available.  The funds reserved and not paid will not bear interest. Thus, until the end of the claims process, claimants will be paid 93% of their awarded recovery less deductions for attorneys' fees, costs, expenses and incentive awards.  Class Member's actual recovery will depend on the District Court's award of attorneys' fees to Class counsel.

5.    Termination of Prejudgment Interest and Funding of Costs of the Claims Process

Effective October 31, 2005, prejudgment interest will cease to accrue on all claims. Instead, the interest that accrues on the money held in the Exxon DFC Class Action Depository Account will be utilized to fund the costs of the Claims Administration Process, including the payment of fees of the Special Master, the fees of the Claims Administrator, the fees of the attorney(s) appointed on behalf of the state governments as discussed below, and all bank and transaction fees (collectively, the "Claims Adjudication Costs").

6.    Exxon's Set-Off Claims Abandoned

All of the thousands of set-off claims raised by Exxon in the claims process will be dismissed with prejudice.

7.    Appointment of States' Counsel; Residual Funds Revert to the States as Abandoned Property

Exxon's departure from the claims process will eliminate a role that it has previously filled — screening claims to challenge invalid claims in the claims process. Class counsel cannot fulfill this role because it cannot take a position adverse to claiming class members.  The Claims Administrator, Garden City Group, also cannot fulfill this role

10

because it is acting in a neutral capacity as an arm of the District Court, as is the Special Master. The state governments of the 35 states who have an unresolved claim to any monies not claimed by class members in the claims process, however, have a sufficient interest and the proper incentives to fulfill this role. In particular, under the various states' abandoned property laws, the states will hold any unpaid funds they recover for the benefit of the true owner and thus have no incentive to needlessly oppose or unduly delay payment of valid claims.

The state governments will replace Exxon in order to preserve the adversarial nature of the claims process. The Court will not allow the state governments to assert the same nature, scope and breadth of objections to the entry of final judgments and the payment of claims as Exxon has done throughout the Claims Administration Process. The focus of the state governments in the Claims Administration Process will only be to ensure that the rightful owner recovers its respective interest in the Settlement Fund.

To fill the role, the state governments will collectively retain an attorney or attorneys who will fully participate in the claims process, have standing to object to claims, assist in the resolution of conflicting claims, and facilitate the settlement of disputed claims (which settlements will resolve with finality the right to claim the gallons at issue). In the event the states cannot agree on counsel to serve in this capacity, states' counsel will be appointed for all states by the District Court. States' counsels' attorneys' fees and expenses, as approved by the Special Master and District Court, shall be paid from the interest income earned on the Exxon DFC Class Action Depository Account.

Any money remaining in the Settlement Fund or the Three State Fund after adjudication and payment of all claims (including payment in full of the 5% reserve from adjudicated claims, litigation expenses, and Claims Adjudication Costs) will be disbursed

11

pro rata to the 35 state governments in which the Class member stations were located. This money will be held in perpetuity by the state governments pursuant to their abandoned property statutes or law for the benefit of the rightful owner. Any class member who did not submit a Proof of Claim on or before December 19, 2005 will be able to make a claim directly to the appropriate state government pursuant to the applicable abandoned property statute or law. The value of the claim will be derived from the difference between the amount of the residual fund and the total of all claims that were not timely asserted.

8. No Interpleader; Sole Venue for Claims

The settlement provides that all claims, including disputes between competing claimants, must be adjudicated under the jurisdiction of the United States District Court for the Southern District of Florida pursuant to the authority and supervision of the Court and cannot be interplead to other courts. Moreover, any and all third-party liens, garnishments, attachments, and other claims against Exxon must be brought as part of this litigation and cannot be brought against Exxon in any other court of law or jurisdiction.

9. Appeals From Claims Decisions Limited

Any party seeking to recover monies in the claims process will be entitled to due process before a Special Master and review of any decisions following that process by appeal to the District Court. There will be no appellate review of decisions of the District Court with respect to claims decisions.

10. Authority of the States' Counsel to Recommend Discounts of Claims Where Disputed Legal or Factual Issues Exist

To facilitate the claims process, the States' counsel will be empowered to recommend to the Special Master agreed-upon discounts of claims in recognition of the risk of litigation of those disputes in the claims process. The amount of any negotiated and

approved discount will remain in the Settlement Fund to enhance the probability of excess funds in the Settlement Fund upon the adjudication of all claims.

11.    Mediation

Where requested by the parties or ordered by the Special Master, parties to contested claims will be directed to mediation to attempt to resolve disputes.

12.    The Settlement Also Includes a Bar Order

After Exxon tenders the Settlement Fund to the Court-appointed depository institution, Exxon will be granted a release and bar order with respect any and all claims that were asserted or could have been asserted in this action or all gallons sold and for all Class members. This includes any claimants or person, entity, state or political subdivision that has claimed or may claim through a Class member. This does not include those original Class members who opted out of the Class and did not file claims in the Claims Administration Process. This does include, however, those original Class members who opted out of the Class but who did file claims in the Claims Administration Process on or before December 19, 2005.

F.    Proper Notice of the Settlement Was Given to All Claimants

On February 1, 2006, the Court issued an Order Preliminary Approving Class Settlement, Form of Manner of Class Notice, Scheduling Time For Objections to Petitions For Attorneys' Fees and Incentive Awards and Setting Final Fairness Hearing on Proposed Settlement **[DE # 2607]** for purposes of reaching a final determination as to whether the Class Settlement Agreement proposed by the parties is fair, reasonable, adequate and in the best interests of the Class Members. In that Order, the Court approved a form of Notice (attached thereto as Exhibit "B") of the proposed Class Settlement Agreement to

be sent "by first class U.S. mail to all individuals and entities who have filed claims[3], and their designated representatives where applicable."

Federal Rule of Civil Procedure 23(e)(1)(B) requires the district court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." In order to meet the requirements of Rule 23(e)(1)(B), the Order Preliminary Approving Class Settlement, Form of Manner of Class Notice, Scheduling Time For Objections to Petitions For Attorneys' Fees and Incentive Awards and Setting Final Fairness Hearing on Proposed Settlement **[DE # 2607]** required that the Notice "shall also be mailed via first class U.S. Mail to the office or agency of the state governments responsible for administering the unclaimed property statutes of the states in which Exxon sold motor fuel to direct served dealers during the class period. This notice shall be posted on the official Court-sponsored web site at www.exxondealerclassaction.com, Class counsel's web site at www.exxondealerattorneys.com and the Special Master's web site at http://cert.gardencitygroup.com/docketview/fs/adminwww". The Order required the Notice to be mailed and be posted at the three websites on or before February 7, 2006.

The parties have provided a number of affidavits documenting their efforts to provide Notice to all claimants and affected state governments. **[See DE # 2726, 2733 & 2748]**. Among the affidavits filed regarding notice to the class, the parties filed the Affidavit of Patrick Passarella, Assistant Vice President of Operations for the Garden City Group, Inc., the claims administrator in this case.

---

[3] At the hearing, the parties informed the Court that 92% of the Class filed claims in the claims administration process.

In the Passarella Affidavit, Mr. Passarella attests that a copy of the Notice was sent "to all individuals and entities who have filed claims, and their designated representatives where applicable as of February 3, 2006." **[DE # 2726 at 2]**. Mr. Passarella also attested that the Notice was sent to "35 offices or agencies of state governments responsible for administering the unclaimed property statutes of the states in which Exxon sold motor fuel to direct served dealers during the class period." **[DE # 2726 at 2]**.

The parties also provided the Affidavit of John Pizzuto, President of the firm Rolls Offset. **[DE # 2726, Exhibit "C"]**. Rolls Offset is the professional printing company retained by Garden City Group to print and mail a copy of the Notice to each claimant. **[DE # 2726, Exhibit "C"]**. Mr. Pizzuto attested that Rolls Offset sent the Notice to 12,922 claimants. **[DE # 2726, Exhibit "C"]**.

The parties also provided the Affidavit of Victor Ullah. **[DE # 2733]**. In the Ullah Affidavit, Mr. Ullah attests that the Notice was posted on the website www.exxondealerclassaction.com website on February 7, 2006 pursuant to the requirements of the Order Preliminary Approving Class Settlement, Form of Manner of Class Notice, Scheduling Time For Objections to Petitions For Attorneys' Fees and Incentive Awards and Setting Final Fairness Hearing on Proposed Settlement. **[*See* DE # 2733]**. The parties also supplied the Affidavit of Cecilia Simmons **[DE # 2748, Exhibit 3]** attesting that the Notice was also posted on the www.exxondealerattorneys.com website in compliance with the Order Preliminary Approving Class Settlement, Form of Manner of Class Notice, Scheduling Time For Objections to Petitions For Attorneys' Fees and Incentive Awards and Setting Final Fairness Hearing on Proposed Settlement. **[*See* DE # 2733]**.

G.    The Class Overwhelming Supports Approval of the Class Settlement Agreement

1.    Only One Objection to the Settlement Itself was Filed

Under Federal Rule of Civil Procedure 23(e)(4), any class member has the right to object to a proposed settlement in a class action.  In the Order Preliminarily Approving Settlement **[DE # 2607]**, I established a March 24, 2006 deadline for submission of any and all objections to the proposed settlement. Although Plaintiffs sent notice of the proposed Class Settlement Agreement to 12,922 Class members, only one objection to the Class Settlement Agreement, as a whole, was filed.

The sole objection directed to the propriety of the Class Settlement Agreement itself was filed by "Westheimer Service Station, Inc. d/b/a Westheimer Exxon[4] and d/b/a Voss Road Exxon's"[5] ("Westheimer").  ***[See DE # 2714]***.   In Westheimer's Objection, Westheimer first objects that the notice to the class was inadequate and violates due process.  Westheimer next objects that the proposed settlement is unfair and inadequate because under the Class Settlement Agreement it is "theoretically possible that the amount of money actually received by such a claimant under this proposed settlement is less that [sic] the claimant would have received in the claims process." Westheimer argues that the

---

[4] Westheimer Exxon has a compensatory damages claim of $9,189.57 and a claim for prejudgment interest in the amount of $8,887.64. **[Report and Recommendation of the Special Master filed April 5, 2006]**.  The total amount  of Westheimer Exxon's claim is $18,077.21.

[5] Voss Road Exxon has a compensatory damages claim of $69,249.31 and a claim for prejudgment interest in the amount of $53,593.40. **[Report and Recommendation of the Special Master filed April 5, 2006]**.  The total amount  of Voss Road Exxon's claim is $122,842.71.  The combined the total of Westheimer Exxon's compensatory damages and Voss Road Exxon's compensatory damages amounts to only 7/100,000 of the total Settlement Fund in this case.   **[Report and Recommendation of the Special Master filed April 5, 2006]**.

Class Settlement Agreement should be modified to "ensure that no claimant who timely filed a claim in the ongoing class administration process will receive anything less than the minimum that claimant would have received in the absence of this proposed settlement."

Westheimer also objects that the Class Settlement Agreement is unclear because it fails to explain "the amount of attorneys' fees that will be borne by the claimants in the fee shifting states. Objection is further made based upon the proposed settlement's failure to guarantee that claimants from Texas, Arkansas and Arizona will not bear any attorneys' fees and that class counsel will not seek or obtain any fee award from the common fund allocated to those states." Westheimer further objects to the provision of the Class Settlement Agreement which allows additional Class claimants who did not file claims before the original deadline to now file claims without demonstrating excusable neglect to justify their untimeliness.

Westheimer also objects to the provision of the Class Settlement Agreement which ensures that any unclaimed funds will revert to the states. Westheimer's last objection is aimed at the amount of attorneys' fees sought by class counsel. As I explain in Section VII, I will address all objections to the amount of attorneys' fees requested by class counsel at the hearing on attorneys' fees.

2.    A Number of Parties Filed Responses to Westheimer's Objections[6]

A number of parties filed responses to Westheimer's Objections to the Class Settlement Agreement. **[See DE # 2734[7], 2735, 2740[8], 2741[9] & 2742]**. As I mentioned, the Special Master also filed a Report and Recommendation **[Report and Recommendation of the Special Master filed April 5, 2006]** as to Westheimer's Objections. As a preliminary matter, some of the parties argue that Westheimer is procedurally precluded from objecting to the Class Settlement Agreement.  First, the Class argues that Westheimer Service Station, Inc. is procedurally barred from objecting to the approval of the Class Settlement Agreement because Westheimer is "a dissolved corporation that may have, immediately prior to its dissolution, transferred all of its interest in this claim to another". **[DE # 2742 at 2]**.   The Class alleges that on January 1, 2002, Westheimer Service Station, Inc. "transferred all of its assets and liabilities to another entity, Voss Road Exxon LLC, also controlled by [owner Demos] Thanos, and that effective March 21, 2003, Westheimer had been voluntarily dissolved." **[DE # 2742 at 9]**.

---

[6]  Class Counsel also filed a motion to revoke the Court's earlier permission of Jeffrey D. Meyer, counsel for Westheimer, to appear *pro hac vice* in this case.  As I explained orally at the Fairness Hearing, I will allow Mr. Meyer to file a written response to this motion.  Mr. Meyer shall file a response to the Motion to Revoke Jeffrey D. Meyer's Permission to Appear Pro Hac Vice **on or before April 12, 2006**.

[7]  Class Representatives Paul Bove, Mickey Cook, George Dalton, Richard Durishin, William McGillicuddy and David Wise dispute Westheimer's Objections and urge the Court to approve the Class Settlement Agreement **[See DE # 2734]**.

[8]  Class Representatives Allapattah Services, Inc. through its owner Alberto Gonzalez, Robert Lewis and John Pinder dispute Westheimer's Objections and urge the Court to approve the Class Settlement Agreement **[See DE # 2740]**.

[9]  The law firm "Grutman, Greene & Humphrey, former counsel to plaintiffs" also dispute Westheimer's Objections and urge the Court to approve the Class Settlement Agreement **[See DE # 2741]**.

Second, Exxon argues that Westheimer waived any claims in this action. **[DE # 2735 at 3]**. Exxon claims that on May 27, 2005 Demos Thanos, owner of Westheimer, executed an Agreement to Mutual Termination of Franchise. **[DE # 2735, Exhibit "A"]**. This agreement contained an explicit waiver and release in favor of Exxon for any "liability, claims, lawsuits or other causes of action, whether known or unknown, arising out of or in connection with the Franchise Agreement, franchise, franchise relationship, or execution of the Termination Agreement. Franchisee specifically waives any claims - including but not limited to, DTW pricing or other franchise-related claims - that Franchisee may have as a member or putative member of the class in the following class actions: . . . *Allapattah Services, Inc. v. Exxon Corporation*, in the United States District Court for the Southern District of Florida, Case No. 91-0986."

Counsel for Westheimer, Jeffrey D. Meyer, appeared at the Fairness Hearing held before the Court on April 5, 2006. Mr. Meyer failed to address either of these procedural arguments. He merely argued the merits of his objections to the Class Settlement Agreement. I conclude that both procedural objections have merit and, standing alone, would be sufficient to deny the objection. Notwithstanding, I address the objections on the merits as set forth below.

III.    Standard of Review

Although Federal Rule of Civil Procedure 23(e) mandates that a district court approve settlement of a class action, it provides little guidance with respect to the standard for approval. It is well settled, however, that a class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330

19

(5th Cir. 1977)[10].   This Court reviews a proposed class action settlement with the knowledge that "there is a strong judicial policy that favors settlement." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990); *see also Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (determining that "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (quoting *Cotton*, 559 F.2d at 1331).

Within this framework, a district court "ought not to try the case during the settlement hearing and should be hesitant to substitute his or her judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028-29 (11th Cir. 1991).   "[I]t should [not] be forgotten that compromise is the essence of settlement.  The trial court should not make a proponent of the proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Amoco Oil*, 211 F.R.D. at 467 (quoting *Cotton*, 558 F.2d at 1330).  Further, when a settlement agreement, as here, has been preliminarily approved, it is "'presumptively reasonable' and an objector must overcome a 'heavy burden' to prove the settlement is unreasonable ." *Id.* (citations omitted).

In the seminal case of *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), the Eleventh Circuit adopted the following six factors that a district court should analyze in determining whether to approve a settlement: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at

---

[10]   All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." Upon review of the Class Settlement Agreement, Westheimer's Objections and all of the responses thereto, I conclude that the Class Settlement Agreement should be approved under the factors established in *Bennett v. Behring Corp.* I conclude that Special Master Scott fully analyzed each of these factors in the Amended Report and Recommendation **[DE # 2607, Exhibit "A"]** which I previously adopted by reference. I specially now incorporate and adopt his analysis of the *Bennett* factors herein.

IV.    Analysis

For the reasons set forth in the Amended Report and Recommendation, I conclude that the Class Settlement Agreement should be approved because it is fair, adequate and reasonable and it is not the product of collusion between the parties. I find that approval of the Class Settlement Agreement is appropriate under the *Bennett* factors set forth by the Eleventh Circuit and because the Class Settlement Agreement is in the best interests of the Class.

I also reject each of the arguments made by Westheimer in the Objections. I conclude that the Objections are patently frivolous both as to the objector itself and to the Class as a whole. In finding all of the objections to be patently frivolous, I conclude that they are all "[g]roundless ... with little prospect of success [and] are ... brought to embarrass or annoy [a party]." Cf. *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999). None of the objections require me to disapprove the Class Settlement Agreement which I find to be in the best interests of the Class.

21

Of critical importance to my decision to approve the Class Settlement Agreement is the amount of recovery provided to the Class. The Settlement Amount represents a payment to the Class that is $10 million dollars more than the total damage award estimate by Class Counsel for all asserted claims in the Claims Administration Process. As the Settlement gives the Class the more immediate and concrete opportunity to share in the extremely large Settlement Fund, the proposed Settlement Fund of $1.075 billion dollars appears to fall well within the range of what is fair, adequate and reasonable.

A. The Factual Circumstances of This Case are Unlike Any Case Cited by Westheimer and Approval of the Settlement is Appropriate Under These Circumstances

I conclude that the objections raised by Westheimer are insufficient to require disapproval of the Class Settlement Agreement. In rejecting Westheimer's Objections, I must first note that factual circumstances of this case are unique and make this case unlike any other class action case of which this Court is aware. In the instant case, the Class members are actually claimants who are participating in a Claims Administration Process post-verdict. As a jury has already rendered a verdict that the Class members - actually claimants in the claims administration proceedings - are entitled to damages on a per gallon basis, the facts of this case are distinguishable from all of the cases cited by Westheimer in their Objection. Moreover, I note that in this action, 92% of the Class members have filed proofs of claim in the Claims Administration Process. Those that have not filed claims are procedurally barred from doing so. While Westheimer claims they still remain "class members," there claims have been extinguished and they may not proceed as a direct claimant in the Claims Administration Process, absent their newly created rights under the Settlement Agreement.

Westheimer argues that the Court should disapprove the Class Settlement Agreement because the "Court has a fiduciary responsibility as the guardian of rights of the absentee class members when deciding whether to approve a settlement agreement." **[DE # 2714, Exhibit "A" at 4]**.  Westheimer claims that if the Court approves the Class Settlement Agreement, he will violate his fiduciary obligation to protect the rights of "absentee" class members.  Unlike other class actions where a settlement is proposed before the verdict and the Court must act as a fiduciary to determine whether a settlement is fair to the interests of unknown class members, here the Court is not a fiduciary for unknown and barred claimants. The Court is not dealing with inchoate potential claimants in the instant case, which often occurs prior to trial and judgment in other settlement situations.  Rather, the identity of all Class members is known to the Court because the Class consists of all persons and entities who have filed timely claims in the Claims Administration Process. As so few of the claimants who have filed claims in the Claims Administration Process have filed objections with the Court despite having received the Notice, I can look to their lack of objection as a significant factor in determining whether the proposed Class Settlement is reasonable to the Class as a whole.  *See Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *see also Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 252 (D. N.J. 2005) (concluding that "[s]uch a small number of objections in relation to the size of the Class favors approval of the request."); *Strougo v. Brazilian Equity Fund, Inc.*, 258 F.Supp. 2d 254, 258 (S.D. N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of

objections.'"); *Dillard v. City of Foley*, 926 F. Supp. 1053, 1063 (M.D. Ala. 1996) (concluding that the plaintiff class overwhelming supported the settlement where no class member objected); *Reynolds v. King*, 790 F. Supp. 1101, 1109 (M.D. Ala. 1990) (stating that "[i]n some cases a court can properly interpret the absence of objections from a majority of the plaintiff class as indicating support for the proposed compromise. For example, this could be true where substantially all members of the class are easily identifiable and have demonstrated significant interest in the litigation.")

I also note that to the extent that a Class member has not participated in the Claims Administration Process, the Class Settlement Agreement still protects that class member. The Class Settlement Agreement establishes that any "class member who has not asserted a claim postmarked on or before the date of the final hearing shall be barred from the claims process but shall be permitted to assert a claim against the appropriate State government pursuant to that State's unclaimed property statute." **[DE # 2714, Exhibit "A" at 8]**. This ensures that Class members who failed to file claims postmarked on or before April 5, 2006 may still attempt to seek recovery from the Settlement Fund. Accordingly, I reject Westheimer's argument that the interests of absentee class members are not protected under the Class Settlement Agreement.

B.    Westheimer's Objections as to Notice are Patently Frivolous

To start with, I adopt and incorporate the Special Master's analysis of Notice as contained in the supplement Report and Recommendations. **[See Report and Recommendation of the Special Master filed April 5, 2006, at 15-20]**. Independently, I also conclude that the Notice in this case was sufficient. Of the 12,922 Notices sent to claimants, only Westheimer objected to the form of the Notice. I infer from this absence

24

of a significant number of objections that the majority of the Class found both the Notice of the Class Settlement Agreement and its terms reasonable and fair.

Westheimer argues that Notice in this case was insufficient because the Notice was only published on the "standard website" and because the Notice was mailed only to prior claimants.[11]   Westheimer acknowledges, and does not dispute that, 92% of all Class members filed claims in the Claims Administration Process. Westheimer argues, however, that by sending the Notice only to the 92% of the Class members who filed claims, the Notice failed to reach the 8% of Class members who did not file claims and is therefore invalid.  Westheimer also argues that several hundred Class members who were part of the Class had suffered a "returned notice of service." I address the status of the several hundred Class members briefly. Under prior orders of the Court, and pursuant to established procedures, those Class members were under a duty to notify the Claims Administrator of any change of address.  To the extent such Class members failed to keep their addresses current, they can hardly complain if they did not receive actual notice— and Westheimer has no standing to object on their behalf.

I conclude that it was proper for the Claims Administrator to only mail the Notice to the 12,992 claimants in the Claims Administration Process, as opposed to all of the original Class members.  Rule 23(e) does not establish a specific standard for the Court to review whether Notice was appropriate in a particular case. Rather, I must conclude whether the

---

[11]  I also reject Westheimer's argument that notice by United States Mail was inappropriate. Garden City Group used the addresses provided by each claimant in order to supply Notice of the Class Settlement Agreement. By using the addresses supplied by the claimants themselves, Garden City Group ensured that delivery would be essentially accurate. At the Fairness Hearing, Class counsel represented that fewer than 200 of the 12,992 Notices that were sent to claimants were returned to Garden City Group as undeliverable.

form of notice given in this case was proper was proper under the circumstances of this case. I find that, under the particular circumstances of this case, it was indeed appropriate that the Notice was sent only to the 92% of Class members who filed claims for a number of reasons.

First, this Court engaged in extensive efforts to notify all Class members of the commencement of this class action and their opportunity to file a claim to participate in the recovery of damages. **[See DE # 1646, DE # 1675, DE # 1631, DE # 1718, DE # 1737 & DE # 1915]**. In fact, the Exxon expended over $4.1 million dollars to provide notice of this action to the class. The Class members were also adequately warned on numerous occasions that the failure to file a claim in this action would result in the forfeiture of any right to later recover damages from Exxon. **[See DE # 1631, DE # 1718, DE # 1737 & DE # 1915]**.

Second, on several occasions the Court extended the deadline for the filing of claims in this case to allow for greater participation of Class members in the process. **[See DE # 1631, DE # 1718, DE # 1737 & DE # 1915]**. The Class Settlement Agreement expands the ability of late filing Class members to participate in the recovery of damages in this action even further. Under the Class Settlement Agreement, the definition of the Class is expanded to include any claimant who filed a claim by December 19, 2005.

Despite the Court's expansion of the claims deadline, the enormous notice effort undertaken in this case (in excess of $4.1 million) and the Class Settlement Agreement's even greater expansion of the right to recover by late filing claimants, Westheimer argues that the notice in this case was insufficient. Westheimer's arguments reflect the lack of comprehension of the history of this case and the Objections lack both factual and

evidentiary support.  It is plain to the Court that Westheimer, through its counsel, failed to conduct an adequate prefiling inquiry before filing the Objections.

Of some significance, even the 8 percent of the Class members who chose not to file claims in the Claims Administration Process were given reasonable notice.  The Notice was published on three websites - www.exxondealerclassaction.com, w w w . e x x o n d e a l e r a t t o r n e y s . c o m  and http://cert.gardencitygroup.com/docketview/fs/adminwww - not one website. In the original notice of class recovery sent to all Class members in this case, the Class members were alerted to the existence of three websites which are dedicated to informing the Class members of all events in this case. These websites contain all the pleadings in this action, including the Notice of the Class Settlement Agreement.  Thus, I conclude that all the Class members were well apprised of their ability to consult one of the three websites related to this action to obtain the current status of the litigation and to obtain a copy of the Notice if they chose to do so.  The Notice was made available to all Class members even if the Notice was only mailed directly to 92% of the Class.   No additional publication is required for the missing 8 percent.  Multiple publications were previously given and an extensive outreach program was initiated to find them.  There is no reasonable basis to believe that the missing 8 percent would now appear if additional notice by publication of the settlement was provided.

C.     The Remainder of Westheimer's Objections are Patently Frivolous

I reject Westheimer's second argument that the amount of money each claimant will receive under the Class Settlement Agreement is less than the amount which each claimant  will receive in the Claims Administration Process.  Westheimer's argument assumes  that each claimant is guaranteed to recover 100% of its claim, including

prejudgment interest, in the Claims Administration Process. The problem with this argument is that it fails to recognize that there are no guarantees to full recovery. If the Class Settlement Agreement is not approved, Exxon will be an active participant and defender in the Claims Administration Process, challenging the amount of each claim and asserting affirmative defenses and set-offs. In addition, Exxon still may appeal each final judgment in favor of each claimant on matters not previously addressed by this Court. Such matters include the method of calculation of prejudgment interest in the various states. The Class Settlement Agreement now puts all these matters to rest.

Based upon the representations of counsel at the Fairness Hearing and the analysis of the Special Master in the Amended Report and Recommendation, it is projected that the claimants *will recover 100%* of their claims for liquidated damages in the Claims Administration Process. The claimants *may likely recover nearly 100%* of their claims for prejudgment interest through October 31, 2005. Thus, under the Class Settlement Agreement, the claimants will only experience a *slight diminishment* of their prejudgment interest claim alone. I conclude that this slight diminishment is not sufficient cause to disapprove the entire Class Settlement Agreement, especially considering that the Court has only ruled that the claimants have an entitlement to prejudgment interest.

I also reject Westheimer's argument that the Class Settlement Agreement fails to explain the amount of attorneys' fees to be borne by those claimants in the three fee-shifting states. An even cursory review of the Class Settlement Agreement reveals that the Class Settlement Agreement *thoroughly* informs all claimants as to how attorney's fees are calculated under the agreement.

Westheimer's second objection related to the calculation of attorneys' fees in the fee shifting states is similarly without merit. Westheimer argues that the claimants in these

28

states should not be liable to Class counsel for any attorneys' fees in excess of the $15,000,000.00 attorneys' fee that Exxon will pay Class counsel on behalf of the claimants in the three fee-shifting states. Again, I find that Westheimer's view on this point is too narrow. The Court did earlier rule that the claimants in the three fee-shifting states, Arizona, Arkansas and Texas, were entitled to have *some of their* attorneys' fees shifted to the extent allowable under the laws of those states, I have not determined, however, the amount of attorneys' fees to be shifted.

Further, as counsel for Exxon represented at the Fairness Hearing, the $15,000,000.00 amount that Exxon will pay for the attorneys' fees for claimants in these three states is not an arbitrary number. Rather, the parties negotiated the $15,000,000.00 amount based upon their estimates of what portion of the overall fees Class Counsel expended on behalf of claimants in the three fee-shifting states. Accordingly, I conclude that the $15,000,000.00 figure is an appropriate amount and that Westheimer's objections on this point are wholly without merit.

The next three objections raised by Westheimer are entirely contradictory, which I conclude is further evidence of the frivolity of the Objections. On one hand Westheimer objects to the provision of the Class Settlement Agreement which extends the original claims filing deadline to late filing claimants without requiring the claimants to demonstrate excusable neglect. On the other hand, Westheimer objects that the Notice given in this case was unacceptable because the Notice was not sent to those Class members who never filed claims at all. Then Westheimer argues that the provision in the Class Settlement Agreement which preserves the rights of claimants who never filed claims to still recover damages from Exxon by filing claims with their state government prejudices

all claimants who did timely file claims in the Claims Administration Process. These three arguments are wholly inconsistent.

Does Westheimer really believe that late filing claimants[12] should not be able to recover because their recovery will deplete the amount of recovery available to timely filing claimants? If so, then why does Westheimer allege that it has standing to argue on behalf of those claimants who have not filed claims, and that the failure to serve them with Notice violates their due process rights, rendering approval of the settlement unacceptable? Westheimer did not address this question during the Fairness Hearing, nor, in good faith, could it honestly do so. Lastly, if Westheimer only seeks to preserve the rights of all Class members, including those who did not file claims, what reason does it have to object to the provision in the Class Settlement Agreement which ensures that any unclaimed funds revert to the states to ensure that money is available to those who did not file claims? The inconsistency of these arguments renders them irretrievably flawed and reveals that the Objections filed by Westheimer are both frivolous and unhelpful to the resolutions of the issues in this case.

D.  Approval of the Class Settlement Agreement Benefits Westheimer and All Other Claimants

Finally I note that Westheimer, like all Class members, will greatly benefit from this settlement. As even a cursory review of the history of this litigation reveals, Exxon has vigorously defended this matter at every stage of the litigation. Exxon's vigorous defense continued post-verdict and throughout the Claims Administration Process. Without being

---

[12]  I note that the number of late filing claimants is incredibly small. According to Special Master Scott's Report and Recommendation on Westheimer's Objection to the Class Settlement, there are only 90 claimants who filed claims within this extended period. The claims of these 90 claimants amounts to a mere 0.4% of the total Settlement Fund.

unduly repetitive, I again note that one of Exxon's most significant remaining challenges in this case is its objection to the amount of prejudgment interest to which the claimants assert they are entitled. In the Class Settlement Agreement, all claimants will receive payment of nearly all their prejudgment interest.

Second, Exxon challenges its liability for an award of attorneys' fees in the three fee-shifting states. Under the Class Settlement Agreement, Exxon agrees to pay $15,000,000.00 for the payment of fees to those claimants in Arizona, Arkansas and Texas. Although Westheimer claims that it should not be responsible for the payment of *any* fees to Class counsel in this matter, this argument assumes that the Court approves an award of attorneys' fees for all fees incurred by Class Counsel. The Court has rendered no such decision in this case. Under the Class Settlement Agreement, Westheimer, as a claimant in a fee shifting state, is guaranteed a pro rata award of its portion of the $15,000,000.00 from Exxon for attorneys' fees.

Third, Westheimer is not in the group of initial claimants who have filed a motion for summary judgment in the Claims Administration Process. As such, if the Court enters an order approving the Class Settlement Agreement, Westheimer's claim will advance quickly and Westheimer will receive payment faster, unless I stay its claim pending its own appeal. Accordingly, I conclude that approval of the Class Settlement Agreement is in the best interest of the Class members, including Westheimer.

V.    Findings and Conclusions of Law

Based on the above analysis, I hereby approve the Class Settlement Agreement **[DE # 2561, Exhibit "A"]** and enter the following findings and conclusions of law:

1.    The Notice of the Class Settlement Agreement complies with the requirements of Federal Rule of Civil Procedure 23(e) in that the form of the Notice

contained a fair and accurate description of the settlement and its terms, and provided a fair and adequate opportunity for Class members to understand whether they should accept or reject the settlement.    That Notice given to the Class strikes a delicate balance between the requirement that the language is sufficiently clear for a reasonably sophisticated lay person to comprehend, yet it is accurate and complete.

2.    The Class Settlement Agreement meets, and exceeds, all of the factors set forth by the United States Court of Appeals for the Eleventh Circuit in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

3.    The Class Settlement Agreement is fair, adequate and reasonable.

4.    The Class Settlement Agreement is not the product of collusion between the parties.

5.    The proposed Bar order in the Class Settlement Agreement is fair, adequate and reasonable.  The Bar order is an integral part of the Settlement Agreement and I conclude that the language of the Bar order is both reasonable and appropriate. The Bar order is narrowly tailored as to be a fair, adequate and reasonable representation of the rights and interests of the parties to this litigation.

6.    The Class Settlement Agreement complies with the requirements of Federal Rule of Civil Procedure 23 and the test set forth in *Bennett v. Behring Corp.*

VI.    Standing and *Supersedeas* Bond

According to the Class Settlement Agreement, Exxon will deposit the Total Settlement Proceeds, $ 1,075,000,000 to a Court approved banking institution.    In the event that this Order is appealed, however, the Court will not enter any final judgments or release any payments to any claimants until after all appeals are resolved. The Class Settlement Agreement states that "[I]f the Final Order and Judgment is entered and an

32

appeal is filed as to any of them, the 'Effective Date' shall be the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in, any Court remains." Class Settlement Agreement, page 14. As no payments may be made pending appeal of this Order, because the "Effective Date" had not occurred, I conclude that any appeal as to the entire class will be greatly detrimental to the entire class. Consequently, I conclude that although Westheimer has the right to appeal this Order, *See Devlin v. Scardelletti*, its right to appeal will be limited. 536 U.S. 1, 6, 122 S.Ct. 2005, 2009 (2002).

In *Devlin v. Scardelletti*, the United States Supreme Court addressed the issue of whether ability of a non-named class member could appeal a district court's final order of approval of a settlement agreement in a class action. 536 U.S. 1, 6, 122 S.Ct. 2005, 2009. The Court held that because the petitioner was bound by the order of final approval of the settlement, the decision "amounted to a 'final decision of [petitioner's] right or claim' sufficient to trigger his right of appeal." *Id.* at 9, 122 S.Ct. at 2010. The Court noted, however, that although the petitioner could appeal the district court's final approval of the class settlement, "petitioner *will only be allowed to appeal that aspect of the District Court's order that affects him - - -* the District Court's decision to disregard his objections." *Id.* (emphasis added). The *Devlin* Court explained that the petitioner had the right to appeal the settlement because he "had no ability to opt out of the settlement, [thus] appealing the approval of the settlement is petitioner's only means of protecting *himself* from being bound by a disposition of *his* rights he finds unacceptable and that a reviewing court might find legally inadequate." *Id.* at 10-11, 122 S.Ct. at 2011 (emphasis added); *see AAL High Yield*

33

*Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310 (11th Cir. 2004) (citing

*Devlin*).[13]

---

[13] The United States Court of Appeals for the Eleventh Circuit has not interpreted this language. The Court recognizes, however, that the United States Court of Appeals for the Tenth Circuit has interpreted this language. *See Rutter v. Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1183 n.1 (10th Cir. 2002). In *Rutter*, the district court approved a $70,000,000.00 settlement agreement in a class action. 314 F. 3d at 1182-83. Prior to trial, the parties agreed to a settlement of all claims. *See id.* at 1184. Eleven objectors filed objections to the approval of the class settlement agreement. *See id.* at 1182.

The district court rejected the objections and gave final approval to the settlement agreement. *See id.* at 1186. The objectors appealed. *See id.* The class members filed a motion to dismiss the appeal "as to all class members other than the Objectors because inasmuch as the settlement agreement provides that there shall be no distributions as long as there are appeals pending, the pending of Objectors' appeals prevents any distribution." *Id.* at 1183, n.1. Although the Tenth Circuit noted that *Devlin* contained language that an objector "will only be allowed to appeal that aspect of the District court's order that affects him", the Tenth Circuit concluded that the "aspect" that the objectors in that case sought to appeal was the "District Court's decision to disregard his objections". *Id.* The Tenth Circuit concluded that the objections raised by the objectors in *Rutter* "were directed at the entire settlement", thus there was "no practical way to separate Objectors' individual interests from those of the other class members without upsetting the entire settlement fund." *Id.* Consequently, the Tenth Circuit held that the objectors' appeal stayed the payment of all claims. *See id.*

I respectfully conclude that the Tenth Circuit wrongly interpreted *Devlin*. The Tenth Circuit's opinion is also not binding precedent on this Court. As a result, I decline to follow the Tenth Circuit's interpretation of *Devlin*.

In *Devlin*, the Supreme Court clearly stated that although the petitioner could appeal the district court's final approval of the class settlement, the "petitioner *will only be allowed to appeal that aspect of the District Court's order that affects him*". (emphasis added). Further, I note that although the Eleventh Circuit did not specifically address the issue of the scope of the appeal by an objector to a final order approving a settlement in a class action, the Eleventh Circuit, in interpreting *Devlin*, found that the objectors were not allowed to appeal such a final order because they were not seeking to "protect their *own* property, *their own allotment from an award or settlement* or any other cognizable legal right or interest." 361 F.3d at 1305. As the express language in *Devlin* limits the right of an objector to appeal the district court's order to the extent that it affects the objector personally and the Eleventh Circuit's conclusion in *AAL High Yield Bond* that an objector who was not specifically challenging his allotment from the class action settlement, I conclude Westheimer should only be allowed to appeal this Order to the extent that it affects him personally.

Moreover, as I explained above, the facts in this case are entirely distinguishable from the facts in *Rutter*. *Rutter* involved a class action where a settlement is proposed before the verdict requiring the district court to act as a fiduciary to determine whether the settlement was in the best interests of unknown class members. Here, 92% of all Class

Based upon the express language in *Devlin* and the dicta in *AAL Yield Bond Fund*, I conclude that if Westheimer chooses to appeal this Order, Westheimer's appeal should be limited to those "aspects of the District Court's order that affects him." *See Devlin*, 536 U.S. at 9, 122 S.Ct. at 2010; *see also AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310 (11th Cir. 2004) (concluding that objectors had no right to appeal final order approving settlement in class action where the "Objectors do not seek to protect their own property, their allotment from an award or settlement, or any other cognizable right or interest"). To the extent that Westheimer attempts to appeal this Order on behalf of the entire Class, however, Westheimer will be required to post a bond. I make this conclusion because any appeal of this Order as to the entire class stays both the entry of final judgment on all claims in the Claims Administration Process and payment to all Class members. Accordingly, the highly detrimental impact of an appeal of the settlement agreement as to the entire class renders it appropriate for the Court to require Westheimer to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7.

Fed. R. App. P. 7 provides that: "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Pursuant to Rule 7, the Court will require

---

members filed claims in the Claims Administration Process. Therefore, in this case, the identities of 92% of all Class members are both known and have participated in the claims filing process. The 8% of all Class members who chose not to file claims - despite having been warned that their failure to do so might potentially preclude them from recovery - are essentially no longer Class members to the extent that they have a vested right to participate in the Claims Administration Process. Once these Class members refused to file a claim in the Claims Administration Process, they no longer had standing to contest the amount of recovery available in the Claims Administration Process pursuant to the Class Settlement Agreement except to the extent that they have residual rights under the Class Settlement Agreement which they must pursue through the states.

Westheimer to post an appeal bond in an amount sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1328 (11th Cir. 2002).   The amount of the bond will be $13,500,000.00. In this regard, I incorporate the conclusions and findings in the Report and Recommendation on Westheimer's Objection to the Class Settlement **[filed April 5, 2006]** at pages 20-25.[14] To the extent that Westheimer files a Notice of Appeal of this Order only as it applies to Westheimer's individual interests, the Court will not require Westheimer to post an appeal bond.

VII.   Attorneys' Fees and Incentive Awards

As I explained above, I have set a hearing on the request for attorneys' fees made by the attorneys for the Class.  On February 7, 2006, I issued an Amended Order on Attorneys' Fees and Incentive Awards Procedures **[DE # 2613]**.  In that Order, I set oral argument on the percentage of attorneys' fees to be approved for Class Counsel and any entitlement to, and the percentage of, incentive awards to be awarded to Class Representatives for April 27, 2006 at 9:00 a.m.  I will address all issues and objections related to these issues at that time.  Consequently, I enter no order at this time relative to attorneys' fees or incentive awards, except to conclude that the portion of the Class Settlement Agreement which establishes that Exxon will pay attorneys' fees in the amount of $15,000,000.00 in the three fee-shifting states (Arizona, Arkansas and Texas) is fair and reasonable.

---

[14] I will consider at a later date whether Westheimer should be required to post an appeal bond for attorneys' fees and costs as recommended by the Special Master at pages 24-25 of his Report and Recommendation on Westheimer's Objection to the Class Settlement **[filed April 5, 2006]**.

VIII.   Orders

Based on the foregoing reasons, including, but not limited to, an analysis of the six *Bennett* factors, it is hereby ORDERED AND ADJUDGED that:

1.      Special Master Thomas E. Scott's Amended Report and Recommendation **[DE # 2607, Exhibit "A"]** on the Class Settlement Agreement is given final APPROVAL and it is ADOPTED and incorporated by reference herein.

2.      The Court hereby approves the Class Settlement Agreement **[DE # 2561, Exhibit "A"]**.

3.      In the event that Westheimer files a Notice of Appeal of this Order only on its own behalf, Westheimer will not be required to post a bond pursuant to Federal Rule of Appellate Procedure 7.  If Westheimer files a Notice of Appeal of this Order as to the entire Class, the Court will require Westheimer to post a bond in the amount of $13,500,000.  Westheimer shall post this bond with the Clerk of Court within ten days of the date the Notice of Appeal is docketed.

4.      A list of persons or entities who timely elected to opt-out of this action and who did not subsequently present a claim for payment in the claims adjudication process is attached to this order as Exhibit 1 and made a part hereof for all purposes.  This Order and the Settlement Agreement shall not alter, either by impairing or improving upon, any rights held by the persons or entities on Exhibit 1 to the extent such rights exist.

5.      The Class Members (collectively the "Class"), the Releasing Parties, and the Released Parties shall be subject to all of the provisions of the settlement, the Settlement Agreement, this Order and the Judgment to be entered by the clerk of the Court pursuant to this Order.

6.     Exxon has asserted set off claims against hundreds of claimants, which it has agreed will be dismissed with prejudice in connection with this Settlement.

7.     The Bar order provision of this Order, which prohibits the assertion of claims against Exxon and the other Released Parties, as set forth below, is a condition of the settlement and a significant component of the consideration afforded to Exxon in the settlement, and that provision is reasonable under the circumstances.

8.     The dismissal with prejudice and entry of judgment contemplated by the settlement and directed pursuant to the terms of this Order will dispose of this action except as to the continuation of the claims adjudication process as provided in the Settlement Agreement and except for consideration of petitions by Class counsel for attorneys' fees, costs and expenses, and by the Class Representatives for incentive awards. This Court finds that there is no just reason for delay in entering judgment in the form attached hereto dismissing this action with prejudice as to Exxon, which judgment shall be entered by the clerk of the Court at the same time as the entry of this order. The entry of judgment is warranted under Federal Rule of Civil Procedure 54(b).

9.     As used in this Order:

   a.     "Class Member" shall mean an Exxon direct served dealer who purchased motor fuel from Exxon during the Class Period, and who did not opt out of the Class by timely filing an opt out notice.

   b.     "Class Period" shall mean the period between March 1, 1983 to August 29, 1994 (the claim of damage from August 1982 to February 28, 1983 was abandoned prior to trial).

   c.     "Timely Filed Claim" shall mean a claim filed in the claims process prior to the date of execution of the Settlement Agreement, excluding claims filed by state governments pursuant to state unclaimed property statutes.

   d.     "Releasing Parties" shall mean the Class Members and their executors, representatives, spouses, heirs, successors and assigns,

38

and any person or entity claiming through them, whether directly or indirectly, including but not limited to the state governments and the District of Columbia where the Exxon direct served dealers did business, regardless of whether those governmental entities asserted claims in the claims process on behalf of Class Members who did not assert a Timely Filed Claim. Releasing Parties shall also include those Exxon direct served dealers who purchased motor fuel from Exxon during the Class Period and who opted out of the Class but asserted a Timely Filed Claim in the claims process to recover as a Class Member notwithstanding the opt out.

e.    "Released Parties" as used herein includes Exxon and each of its present and former parents, present and former wholly-owned subsidiaries, present and former divisions and affiliates and each of their respective current or former officers, directors employees, agents, insurers and attorneys (and the predecessors, heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing).

f.    "Released Party" shall mean either one of the Released Parties or all Released Parties.

g.    "Released Claims" as used herein means all claims, including any and all demands, charges, complaints, actions, causes of action, damages, attorneys' fees, obligations or liabilities of any and every kind, known or unknown, that were asserted or could have been asserted in this class action by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters actually brought as claims of the Class in this action, including, without limitation, any and all claims, demands, charges, complaints, actions, causes of action, damages, attorneys' fees, obligations or liabilities of any and every kind, known or unknown that were or could have been asserted in this class action arising out of Exxon's alleged failure to reduce the wholesale price of motor fuel, on average, to offset credit fees pursuant to its Discount for Cash program during the Class Period, whether any such claim was or must have been asserted by any Releasing Party on its own behalf or on behalf of other persons.

10.    The persons identified on the list attached hereto as Exhibit 1, having timely and properly elected to opt-out from the Class and not having filed a claim in the claims adjudication process, are hereby excluded from the Class and shall not be entitled to any of the monetary or other benefits afforded to the Class under the Settlement Agreement.

11.    The Court concludes that Class Counsel and Representative Plaintiffs have fairly and adequately represented the Class with respect to the Settlement and the Settlement Agreement.

12.    The state governments appearing in the claims process on behalf of Class Members who did not timely file claims have raised complex and novel issues arising under state unclaimed property statutes which are yet undecided and, without settlement, could require years of extensive appellate review.

13.    Pursuant to the Settlement Agreement, and by operation of this Final Order Approving Settlement, the Released Parties shall be released and forever discharged by the Releasing Parties from the Released Claims.

14.    The Releasing Parties are permanently enjoined and barred from filing, commencing, prosecuting, intervening in, participating in (as Class Members or otherwise) or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding related to any or all Released Claims.

15.    The Releasing Parties and each of them are deemed to have agreed and covenanted not to sue or prosecute, institute or participate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claim against any Released Party.

16.    Notwithstanding any other provision of this Order or the Settlement Agreement, nothing in this Order or the Settlement Agreement shall be deemed to in any way impair, limit, or preclude the Releasing Parties' rights to enforce any provision of the Settlement Agreement, or any court order implementing the Settlement Agreement, in a manner consistent with the terms of the Settlement Agreement, including through the continuation of the claims adjudication procedure as set forth in the Settlement Agreement.

17.     With respect to all Released Claims, the Releasing Parties and each of them agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (a) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

18.     Each Releasing Party  may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this action, but each such Releasing Party is hereby deemed to have expressly waived and fully, finally and forever agreed to settle the Released Claims and the absence of knowledge of such claims, whether or not concealed or hidden, shall not affect the binding nature of such settlement and release without regard to the discovery or existence of such different or additional facts.

19.     In accordance with the terms of the Settlement Agreement, the Releasing Parties are barred from pursuing discovery against the Released Parties in the claims adjudication process except that Exxon will be subject to limited discovery only by Class Counsel solely to obtain non-privileged documents available only from Exxon's business records in order to assist in the resolution of disputed issues or to answer Class Counsel inquiries regarding station ownership.

20.     Neither the Settlement Agreement nor any provision therein, nor any negotiations, statements or proceedings in connection therewith shall be construed as, or be deemed to be evidence of, an admission or concession on the part of any of Exxon or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the action are or are not meritorious and in good faith. Neither the Settlement Agreement nor any settlement communications shall be offered or received in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature; provided, however, that the Settlement Agreement, this Order and the Judgment to be entered thereon may be filed in any action by Exxon or any Released Party seeking to enforce the Settlement Agreement or the Judgment by injunctive or other relief, or to assert defenses including, but not limited to, res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

21.     The claims asserted by Exxon, characterized by Exxon as set offs, against hundreds of Class Members are dismissed with prejudice.

22.     The terms of the Settlement Agreement and of this Order and the Judgment shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings that are subject to this Order that are maintained by, or on behalf of, the Releasing Parties subject to those provisions of this Order.

23.     In the event that the Effective Date cannot occur, or the Settlement Agreement is canceled or terminated in accordance with the terms and provisions of the Settlement Agreement, then this Order and the Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be null

and void. Notwithstanding the foregoing, the Parties have stipulated and agreed, and the Court orders, that the provision regarding the computation of prejudgment interest set forth in ¶ 3 of the Settlement Agreement shall nevertheless apply to all judgments recommended prior to such cancellation or termination unless such provision is specifically reversed on appeal.

24.    The Clerk of the Court is directed to enter a Judgment dismissing all Released Claims with prejudice as to Exxon pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

25.    Without in any way affecting the finality of this Order and the Judgment, for the purpose of enforcing and administrating the Settlement Agreement, this Court hereby retains jurisdiction as to (a) all matters relating to the interpretation, administration, and consummation of the Settlement Agreement; (b) the petitions of Class Counsel for an award of attorneys' fees, costs and expenses; (c) the petitions of the Class Representatives for incentive awards; and (d) concluding the claims process on behalf of the Class and its Members, including the claims of any person asserting rights through a Class Member (such as, for example, any and all third-party liens, garnishments, attachments).

**DONE AND ORDERED** in Chambers at Miami, Florida this 7 day of April, 2006.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

**Copies furnished to [via fax from Chambers]:**

Magistrate Judge Andrea Simonton
Special Master Thomas E. Scott (305) 373-2294
Jeffrey D. Meyer, Esq. (713) 353-6698
All Counsel of Record

Opt-Outs Who Did Not File Claims

| Claim Number | Station Number | Opt-Out Card Number | Dealer Name | Claimant Name |
|---|---|---|---|---|
| None | 99999 | 900002 | Not Found | None |
| None | 31819 | 900003 | John N Sakran | None |
| None | 99999 | 900004 | Not Found | None |
| None | 30805 | 900005 | George C Lindsay | None |
| None | 50096 | 900007 | JW Sullivan | None |
| None | 59255 | 900011 | Robert Witcher | None |
| None | 32838 | 900014 | Louis A Marrone | None |
| None | 23547 | 900016 | Charles Conrad | None |
| None | 34437 | 900017 | Ralph Orlando | None |
| None | 23345 | 900019 | Bruno Lucchino | None |
| None | 99999 | 900020 | Not Found | None |
| None | 69925 | 900022 | Walter R Hoffman | None |
| None | 63830 | 900023 | Conrad Ziegler | None |
| None | 32332 | 900025 | John Byrne | None |
| None | 99999 | 900027 | Not Found | None |
| None | 46602 | 900028 | Schoolmeester Inc | None |
| None | 99999 | 900031 | Not Found | None |
| None | 99999 | 900035 | Not Found | None |
| None | 65857 | 900036 | RW Reed | None |
| None | 25741 | 900038 | James Cathcart III | None |
| None | 77001 | 900039 | Lloyd D Coates | None |
| None | 29703 | 900041 | Doyle Starcher | None |
| None | 38168 | 900042 | David Swyden | None |
| None | 99999 | 900043 | Not Found | None |
| None | 66409 | 900044 | AO Growbowsky | None |
| None | 99999 | 900045 | Not Found | None |
| None | 51242 | 900046 | Dalton Rogers Gro | None |
| None | 24680 | 900047 | Stanley T Anderson | None |
| None | 35534 | 900048 | Ken Dickson | None |
| None | 74917 | 900049 | Houshang Jamshidpoor | None |
| None | 99999 | 900051 | Not Found | None |
| None | 25281 | 900055 | R Warren Gross | None |
| None | 38205 | 900056 | Harold E Shonio | None |
| None | 20013 | 900057 | Royce Cheeseman | None |
| None | 57966 | 900058 | Elmer Collett Jr | None |
| None | 69324 | 900059 | Ricky L Talbert | None |
| None | 23298 | 900060 | JL Ellis | None |
| None | 99999 | 900061 | William H Bell | None |

Exhibit 1