IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al.,   )
                                      )
    Plaintiffs,   )
                                      )
v.   )
                                      )
EXXON CORPORATION,   )
    Defendant.   )
_____)

RUSSELL A. CLINE,   )
                                      )   **CONSOLIDATED WITH**
    Plaintiff,   )   **CASE NO.: 05-21338-CIV-GOLD /**
                                      )   **SIMONTON**
vs.   )
                                      )
THE GARDEN CITY GROUP, INC.,   )
    Defendant.   )
_____)

**REPORT AND RECOMMENDATION CONCERNING LANARK WARNER INDUSTRIES, INC. D/B/A CLASS ACTION RECOVERY SERVICES', CLAIMS COMPENSATION BUREAU, INC.'S AND NATIONAL EQUITY DEVELOPMENT GROUP, INC'S EMERGENCY JOINT MOTION FOR AN INJUNCTION PROHIBITING CLASS COUNSEL FROM IMPROPERLY SOLICITING CLASS MEMBERS AND <u>INTERFERING WITH CONTRACTS</u>**

      THIS CAUSE is before the Special Master pursuant to an Order of Reference by District Judge Alan S. Gold to take "all necessary and proper action as required by law." **[D.E. 3208]**. The Special Master has reviewed all matters referred, including Larnark Warner Industries, Inc. d/b/a Class Action Recovery Services' Claims Compensation Bureau, Inc.'s and National Equity Development Group, Inc.'s Emergency Joint Motion for an Injunction Prohibiting Class Counsel from Improperly Soliciting Class Members and

Interfering with Contracts, **[D.E. 3197]**,[1] Affidavit in Support of Larnark Warner Industries, Inc. d/b/a Class Action Recovery Services' Claims Compensation Bureau, Inc.'s and National Equity Development Group, Inc.'s Emergency Joint Motion for an Injunction Prohibiting Class Counsel from Improperly Soliciting Class Members and Interfering with Contracts, **[D.E. 3193]**, and Class Counsel's Response to Service Providers' Emergency Motion to Enjoin Communications with Class Members **[D.E. 3192]**. The Claims Assistance Services also filed supplemental authority in support of their Motion. **[D.E. 3228]**. Having reviewed the briefings, having conducted a hearing on the Motion, and being otherwise fully advised in the premises, the Special Master respectfully recommends that the Emergency Motion be DENIED. The Special Master also recommends, however, that the Court invoke its inherent authority to monitor communications on this matter, as set forth below.

## I. **INTRODUCTION**

Recently the undersigned entered the Omnibus Report and Recommendation Concerning Disputes Between Claimants and Third Party Service Providers ("Omnibus Report and Recommendation"), which held that Claims Assistance Service, Claims Compensation Bureau, Inc. ("CCB"), engaged in the unauthorized practice of law with respect to its services to claimants in this class action. **[D.E. 3067]**. The District Court affirmed the Omnibus Report and Recommendation and held CCB's contracts with claimants to be void and unenforceable. **[D.E. 3207]**.

---

[1] The movants will be collectively referred to as the "Claims Assistance Services" for the purposes of this Motion.

After the Omnibus Report and Recommendation was entered, but before it was affirmed by the District Court, Class counsel sent a letter to all claimants whose awards are scheduled for an upcoming payment, and who have contracted with a Claims Assistance Service. The letter was not only sent to claimants who contracted with CCB, but also to claimants represented by other Claims Assistance Services, such as Larnark Warner Industries, Inc. d/b/a Class Action Recovery Services' ("CARS") and National Equity Development Group, Inc. ("NEDG"). The letters advise claimants, *inter alia*:

1. The court has determined that the activities undertaken by the Claims Assistance Services may constitute the unauthorized practice of law, and that "it is possible that [the claims service] may expect to receive a significant percentage of your recovery in this matter, an amount that is *in addition* to the 31.33 percent attorneys' fees awarded to [Class counsel]";

2. "The claims service noted on your claim form was not involved in the litigation against Exxon";

3. Claimants, John Raineri and Hassan Abbasi successfully objected to their fee agreements by writing letters to the Special Master; and

4. Claimants have a right to receive direct payment from claims administrator, Garden City Group ("GCG"), and that, "If you instruct that payment be made to you, but do not assert an objection to your claim services agreement in this Court, it is possible that the claims service could bring a separate action against you in another court seeking to collect their fee."

The Claims Assistance Services Joint Emergency Motion asks the court to "immediately and permanently enjoin Class counsel from communicating with the class

concerning their contracts with any Claims Assistance Services." The Claims Services also ask the court to order Class counsel to identify each communication he has had with Class members on this issue, and to require a corrective statement to be issued.

## II. ANALYSIS

The Claims Assistance Services assert that they are entitled to an injunction based upon two grounds. First, they argue that Class counsel's letters to claimants violate prior orders of this Court. Second, the Claims Assistance Services argue that they have met the legal requirements for an injunction. The Special Master considers each of these arguments below.

### A. Prior Orders

The Claims Services assert that the Class counsel's communications are barred by this Court's Omnibus Report and Recommendation. See **[D.E. 3067]**. Several months ago this court requested position papers which, *inter alia,* queried whether notices of disclosure of Class counsel's objections to the Claims Services' involvement in the case should be mailed to effected class members. Those objections included allegations that the Claims Services had committed fraud, that their contracts with claimants were unconscionable, and that their services constituted the unauthorized practice of law. *Id.*

Before the undersigned had entered an order on the matter, Class counsel began communicating with Class members regarding their contracts with Claims Assistance Services and the allegations of fraudulent inducement, unconscionability, and the unauthorized practice of law. See generally **D.E. 3067** at 13 n.9. The Claims Services filed an Emergency Motion to prohibit Class counsel from soliciting affidavits which could

be used to void the Claims Services' contracts with claimants. *Id.* Simultaneously, some of the Claims Services began to contact Class members to have them sign releases and statements affirming the Claims Services' right to represent them in the claims process. *Id.* The Special Master entered an order requiring both parties to stand down on the issue pending adjudication of the position papers. *Id.*

The Omnibus Report and Recommendation constituted a ruling on the position papers. *Id.* at 35 n.18. The undersigned held that an *official court notice* was not required to inform class members of Class counsel's *allegations* of fraud, unconscionability, and unauthorized practice of law by each of the Claims Assistance Services. In footnote 18 of the Omnibus Report and Recommendation, the undersigned merely stated, "The Special Master declines, however, to order notices of disclosure holding contracts with TPSP's." With the entry of the Omnibus Report and Recommendation, Class counsel was no longer barred from communicating with the Class on these matters, and thus, did not violate prior orders of this Court by sending the letters at issue in this Joint Emergency Motion.

### B. Standard for Preliminary Injunction

To obtain a preliminary injunction the movant must establish: (1) a substantial likelihood of success on the merits; (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to plaintiff outweighs the potential harm; and (4) granting the injunction will not be adverse to the public interest. *Klay v. Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). Since the Claims Assistance Services' Emergency Motion seeks to prevent Class counsel from communicating with members of the class, however, the undersigned must also consider the several additional

...

factors set forth in *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985). Under *Kleiner*, the Court may monitor communications by an adverse party to insure protection of class member rights only when the order is grounded in good cause with "heightened sensitivity" for First Amendment concerns. An order limiting such communications must take into account: (1) the severity and likelihood of the perceived harm, (2) the precision with which the order is drawn, (3) the availability of a less onerous alternative, and (4) the duration of the order. The elements of each of these standards are discussed below.

### 1.   Substantial likelihood of success on the merits

A traditional injunction motion must be predicated upon a cause of action. *Klay*, 376 F.3d at 1097. The Claims Services contend that they have a valid cause of action for intentional interference with contractual relations and negligent misrepresentation. The Claims Services have not set forth in their motion any analysis concerning the elements of these causes of action, and why they have a substantial likelihood of success on the merits of these claims.

The undersigned finds that the Claims Services do not have a substantial likelihood of success on the merits. Class counsel's letter does not direct or encourage claimants to breach their contracts, but instead constitutes advice of counsel regarding recent orders by the District Court and procedures for exercising rights in the claims administration process. The letter does not misrepresent either the District Court's rulings or the procedure for raising objections.[2]

---

[2] The letter does not, however, distinguish between CCB (whose contracts have been voided by the District Court), and other Claims Assistance Services. Since the District Court

2.   **Real and immediate threat of future injury**

The Claims Services argue that Class counsel's communications pose an actual threat of undermining and destroying the Claims Assistance Services' relationships with their individual customers, and generating needless litigation and confusion. They also argue that the letter will generate disputes where none exist. The undersigned disagrees with this contention.

Class members must be informed of their rights in this claims process. Based upon the District Court's recent decision to require all parties claiming any interest in an award to file a "third party entitlement to claim form," the Court has clearly contemplated a process whereby disputes between claimants and third parties will be adjudicated in this forum, before payments are disbursed. This process for resolution of disputes would be futile, however, if claimants are not apprised of matters which may effect their rights. The recent decision by the District Court to void CCB's contracts is certainly a matter which may effect the rights of claimants who contracted the Claims Assistance Services. Any confusion which may flow from this disclosure is not "needless," but rather necessary to ensure that the Class is properly informed of matters effecting it.

3.   **Threatened injury to plaintiff outweighs potential harm**

The Claims Services assert that no harm would result to the Class if the injunction is granted. According to the Claims Services, Class members will have the same ability to object and request direct payment when they fill out their payment forms. Again, the

---

has not ruled upon Class counsel's allegations of fraud, unconscionability, and unauthorized practice of law with respect to any other Claims Assistance Service, the undersigned invokes the inherent authority of the court to clarify this communication and to monitor future communications. See Part III, *infra*.

undersigned disagrees with this contention.

For the reasons stated in Part 2, above, the class members' ability to object would have little meaning if they are not informed regarding the matters to which they may object. Although the possibility exists that claimants will object to their contracts with Claims Assistance Services when they are informed of the procedure for lodging such objections, there is no guarantee that a claimant will be successful in its objection. Furthermore, as acknowledged by the Claims Assistance Services in their motion, by filing third party entitlement to claim forms, the Claims Services may assert their right to collect fees pursuant to their contracts with claimants. So long as the Claims Services have entered into valid and enforceable contracts with class members, the Claims Services should suffer no tangible harm to their recovery in this matter. For these reasons, the threatened harm to the class by not allowing Class counsel to communicate with the Class regarding contracts between claimants and third parties far outweighs the potential harm to the claims services.

4. **Disservice to Public Interest.**

Entry of an injunction which permanently bars Class counsel from communicating with the Class regarding contracts between Claims Assistance Services and Class members would disserve the public interest. Class counsel plays a crucial role in advising class members of matters effecting their recovery. The District Court's Order Affirming the Omnibus Report and Recommendation underscores the fact that contractual disputes between class members and Claims Services are matters with significant potential to change the ultimate recovery of class members. To enjoin Class counsel from all communication with the Class on these issues would severely disserve the public interest

since such an injunction would censor the very procedures that allow class members to exercise their rights in this process.

### 5. *Kleiner* Factors

The *Kleiner* factors also weigh heavily in favor of denying the injunction. First, the likelihood of harm to class members' ability to understand their rights in the claims process would be greatly increased if this court entered a permanent injunction barring Class counsel from communicating with effected class members on these issues. Second, the requested injunction by the claims services (a *permanent injunction* to prevent class counsel from *any* communication with class members regarding the Claims Services' contracts) is not nearly precise enough to preserve class members' rights to information which effects them. The requested injunction is overbroad. Similarly, third, there are less onerous alternatives available to the Court besides a permanent injunction. As discussed below, Court approved communications on these matters provide a balance between the competing interests raised here. Finally, the requested injunction is too long in duration. There are various briefings scheduled before the court (with respect to all of the Claims Assistance Services) which have the potential to modify the rights of the Claims Services in this process. Class counsel may need to communicate with the class regarding these matters in the future. Thus, for the foregoing reasons, the *Kleiner* factors also weigh heavily in favor of denying the Claims Services' request for a permanent injunction.

## II. <u>CONCLUSION</u>

For the reasons stated above, the Special Master finds that the Claims Assistance Services have not met the essential requirements for an injunction to permanently bar

Class counsel from communicating with Class members concerning their contracts with the Claims Services. Notwithstanding, based upon the argument of counsel at the hearing on this matter, the Special Master finds that the a clarifying statement must be issued to members of the Class who have contracted with CARS and NEDG.

Federal courts in class action cases have authority to regulate communications between the parties and the class. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (holding that an order limiting communications between parties and class members should be based upon specific findings that reflect a need for the limitation, and carefully drawn to limit speech, "as little as possible, consistent with the rights of the parties under the circumstances."); *Kleiner*, 751 F.2d 1193; *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) (finding a limitation upon communications to be appropriate where prior communications by the parties to members of the class created confusion and "threaten[ed] the essence of fairness and due process"). In this case, the record reflects a history of conflicts between Class counsel and several Claims Assistance Services regarding the form, substance, and degree of communications with Class members, where those communications concerned the contractual relationships between the Claims Services and Class members.[3] These conflicts evince a need for a parsimonious

---

[3] *See* Claims Filing Services' Emergency Joint Motion to Regulate Communications with Class Members and to Have Class Counsel Cease Interference With Contracts, D.E. 2509 (seeking to prevent Class counsel from communicating with TPSPs' clients); Class Counsel's Response to Claims Filing Services' "Emergency" Joint Motion to Regulate Communications With Class Members and to Have Class Counsel Cease Alleged Interference with Contracts, D.E. 2517; Reply to Class counsel's Response to Claims Services Providers Emergency Joint Motion to Regulate Communications with Class Members and to Have Class Counsel Cease Interference with Contracts, D.E. 2521; Order of Reference on Claims Filing Services Emergency Joint Motion to Regulate Communications with Class Members and to have Class Counsel Cease Interference with

intervention by the court to prevent confusion and to preserve the rights of all parties to the instant dispute. The Special Master finds that two such forms of intervention are warranted here.

First, the undersigned finds that Class counsel's October 4, 2006 correspondence, issued to all class members who contracted with Claims Services in the First through Twentieth Motions for Summary Judgment, while not factually inaccurate, did not explain that only contracts between Class members and CCB have been held unenforceable. Per the Omnibus Report and Recommendation and the District Court's Order affirming same, the Court's findings of unauthorized practice of law only applied to CCB. Other claims services, such as CARS and NEDG, have not had an opportunity to challenge the allegations of fraud, unconscionability, and unauthorized practice of law which have been raised by and on behalf of class members who contracted with these companies. The Class members who contracted with these companies should have been informed that no evidence has been taken on these allegations, and that the Court has made no rulings upon the validity of CARS and NEDG's contracts. The Special Master finds that a clarifying statement should be issued to correct this omission.

Second, given the ongoing nature of the disputes between Class members and

---

Contracts, D.E. 2528; Sua Sponte Order Regarding Solicitation of Affidavits From Claimants Holding Contracts With Third Party Service Providers, D.E. 2531; Supplemental Memorandum of Law By Class Counsel Regarding Notice to Claimants of Their Rights with Respect to Claims Filing Services; D.E. 2549; Response by Class Action Recovery Services to Class Counsel's Supplemental Memorandum of Law Regarding Notice to Claimants of Their Rights with Respect to Claims Filing Services, D.E. 2551; Order On Supplemental Memorandum of Law by Class Counsel regarding Supplemental Memorandum of Law by Class counsel Regarding Notice to Claimants of their Rights with Respect to Claims Filing Services, D.E. 2553.

Claims Assistance Services, see, e.g. **[D.E. 3161]**, it is reasonable to conclude that additional communications will be warranted to keep effected Class members apprised of their rights in the claims administration process. Due to the lengthy history of conflicts concerning communications on this issue referenced above, and in an effort to prevent the need for future corrective statements, the undersigned hereby institutes a system whereby the Claims Services shall be permitted to verify the accuracy and completeness of all communications to Class members concerning the Claims Services' contracts, before those communications are issued.[4] The Special Master finds that this is a minimally invasive, yet necessary measure to preserve the integrity of the process and protect the rights of all parties to this dispute.

### III. RECOMMENDATION

Based upon the foregoing analysis the Special Master respectfully recommends that the following:

1. Claims Services Joint Motion to permanently enjoin Class counsel from communicating with class members regarding contracts with Claims Assistance Services is DENIED. CARS and NEDG shall have leave to renew this motion upon a showing of non-compliance with this Report and Recommendation. The Motion is denied with prejudice as to CCB.

2. Class counsel shall confer with CARS and NEDG to develop a brief, clarifying statement to advise claimants who contracted with these companies that the findings of unauthorized practice of law referenced in the Omnibus Report and Recommendation

---

[4] The Special Master also notes that at the hearing on this matter, Class counsel stated its intention to continue to send similar letters to the one at issue in this Motion.

applied only to CCB.

3. No clarifying statements shall be sent to Class members who contracted with CCB.

4. To prevent the need for future corrective statements, with respect to any communication:

(1) directed to class members who have contracted with a Claims Assistance Service whose contracts have not been found to be unlawful, and

(2) which pertains to the validity or enforceability of contracts between claimants and Claims Assistance Services,

Class counsel and all Claims Assistance Services shall file a "Notice of Proposed Communication Concerning Claims Assistance Services" and obtain approval of the Court before issuing the communication.[5] The Special Master will allow an opportunity for briefing on the matter before approving the communication.

RESPECTFULLY SUBMITTED in Miami, Florida this 6 day of November, 2006.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:

United States District Court Judge Alan S. Gold
All counsel of record

---

[5] This paragraph shall also apply to communications concerning Claims Assistance Services which are not parties to this Motion. "Communications" includes written and verbal communications. With regard to proposed verbal communications, a description of the substantive content shall be provided to the court for approval as outlined above.