IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al., )
                                                            )
    Plaintiffs,                                     )

v.

EXXON CORPORATION,

    Defendant.

RUSSELL A. CLINE,

    Plaintiff,                  **CONSOLIDATED WITH**
                                  **CASE NO.: 05-21338-CIV-GOLD /**
vs.                                    **SIMONTON**

THE GARDEN CITY GROUP, INC.,

    Defendant.

## ORDER REGARDING DISPOSITION OF DISPUTES C5.9 AND C5.10 AND VACATUR OF MEDIATOR'S CERTIFICATION OF BAD FAITH

This matter is before the Special Master upon Class Counsel's Fifth Motion for Adjudication of Conflicting Claims (Motion C5) **[D.E. 3967]**, Class Counsel's Amended Fifth Motion for Adjudication of Conflicting Claims (Motion C5) **[D.E. 3969]**, and the Mediator's Certification of Bad Faith for C5 Disputes **[D.E. 4145 Ex. "A"]**. On September 17, 2007, the Special Master conducted a hearing to resolve disputes included in Motion C5 that were unable to be resolved through the mediation process. Specifically, the Special Master heard argument regarding two disputes: 1) C5.9 between Claimant Richard Wakile (Claim No. 100051A) and Claimant Elias Abdelnour on behalf of Youssef, Inc. (Claim No. 3062); and 2) C5.10 between Claimant Makele Wakile, on behalf of the Estate of Youssef Wakile (Claim No. 100051B) and Claimant Elias Abdelnour on behalf of Youssef, Inc.

CASE NO.: 91-0986-CIV-GOLD

(Claim No. 3062). Two issues were before the Special Master during this hearing: 1) whether the parties to disputes C5.9 and C5.10 had agreed to settle their dispute; and 2) whether Claimant Elias Abdelnour on behalf of Youssef, Inc. engaged in bad faith during the mediation process. Having reviewed the Court file, conducted a hearing on these disputes, and being otherwise fully advised in the premises, the Special Master hereby orders the following:

### I. Background

This dispute arises out of a disagreement between former business partners and family members as to who, amongst these claimants, is entitled to maintain a claim for damages in the Claims Administration Process for Station No. 39785 for the period of March 31, 1994 through August 28, 1994. During this period, Youssef Wakile, Richard Wakile, and Elias Abdelnour equally owned and operated a direct-served Exxon station under the corporate name of Youssef, Inc. In 1996, Claimant Abdelnour purchased Youssef, Inc. from his former father-in-law and brother-in-law. At bottom, the parties disagree over the effect the 1996 Sales Agreement had on their respective rights to assert a claim for recovery from the Settlement Fund.

The dispute was referred to mediation pursuant to the Special Master's Order Regarding Class Counsel's Fifth Motion for Adjudication of Conflicting Claims (Motion C5) [D.E. 3979] and mediated before Mediator Rippingille on August 9, 2007. *See* Mediator's Report, D.E. 4145, Ex. "A." (hereinafter "MR"). At the conclusion of the mediation, Mediator Rippingille transmitted Settlement Agreements to the interested claimants reflecting the percentages of ownership for the potential damage award agreed to by the

parties. However, as outlined in the Mediator's Report, confusion subsequently arose regarding the scope of the release contained in the form settlement agreement utilized in the mediation process.[1] The Wakile's returned executed copies of the settlement agreements to the Mediator containing the original release language. See MR. Although Claimant Abdelnour acknowledged the existence of an agreement, he advised the Mediator that he would not execute the Settlement Agreements unless he received a broad release from the Wakile's of any future claims or lawsuits. See D.E. 4164 Ex. "A," Youssef, Inc.'s Emergency Motion, Ex. "C."; see also, MR. The Wakile's agreed to execute revised Settlement Agreements that included the releases requested by Claimant Abdelnour. See September 17, 2007 Hearing Transcript, p. 11; see also, MR. The Mediator prepared revised Settlement Agreements to include the broad release requested by Claimant Abdelnour.[2] See MR. The Wakile's returned executed revised Settlement Agreements to

---

[1] The release language utilized in the form settlement agreements is:

> It is understood and agreed by the Claimants herein that this settlement is full and final satisfaction of any and all claims, known and unknown, with respect to each other and the referenced claim. It is understood and agreed that the Claimants do hereby waive any and all rights to appeal with mediated settlement agreement.

Pursuant to the Orders of this Court, the Claims Administration Process was designed to resolves all disputes related to claims of entitlement to awards of damages from the Settlement Fund. See CITE TO ORDERS. Accordingly, this language was included in the form settlement agreements to protect the interests of settling claimants from any and all claims arising out of a claim made in this matter.

[2] The release language included in the revised Settlement Agreements was:

> It is understood and agreed by the Claimants herein that this is in full and final satisfaction of the claims herein and any and all claims, known and unknown with respect to each other individually and as officers and shareholders of the corporate claimants and as prior officers and shareholders of the corporate claimant, the corporate

the Mediator. *Id.* Claimant Abdelnour declined to execute the revised Settlement Agreements even though they contained the additional language he requested. *See* D.E. 4164 Ex. "A," Youssef, Inc.'s Emergency Motion, Ex. "D"; September 17, 2007 Hearing Transcript, p. 11; MR. Accordingly, the disputes were certified to the Special Master by the Mediator as unresolved disputes.[3]

## II. Analysis

Federal district courts have inherent power to summarily enforce settlement agreements entered into by party litigants in a pending case.[4] *Kent v. Baker, III*, 815 F.2d 1395 (11th Cir.1987) (citation omitted). The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law. *Blum v. Morgan Guaranty Trust Co.*, 709 F.2d 1463, 1467 (11th Cir. 1983) (citing *Florida Education Association, Inc. V. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973)).[5] Under Florida law, an

---

claimant and Estate of Youssef Wakile. It is understood that the Claimants do hereby waive any and all rights to appeal this mediated settlement agreement.

[3] The Special Master has reviewed the Mediator's Report and the positions of the parties at the September 17, 2007 hearing before the Special Master. The Special Master does not believe that the conduct of Claimant Elias Abdelnour on behalf of Youssef, Inc. rose to the level of bad faith in the mediation process. Accordingly, the Special Master vacates the Mediator's Certification of Bad Faith with respect to Claimant Elias Abdelnour on behalf of Youssef, Inc.

[4] Settlement agreements entered into between claimants concerning a dispute over the entitlement to maintain a claim for damages from the Settlement Fund are considered to be the final resolution of the dispute between those claimants in this claims process and are governed by Florida law.

[5] *See Lee v. Hunt*, 631 F.2d 1171, 1174 (11th Cir. 1980) (courts must apply the choice of law rules of the forum state). The forum state of these agreements is Florida. (Mediations are conducted in Florida; the District Court is located in Florida; the claims process is in Florida; and the Settlement Fund is domiciled in Florida). The Special Master finds that the significant relationship test requires that application of Florida law to settlements reached in the claims process. *See Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999 (Fla.1980) (Florida courts apply

agreement is a manifestation of mutual assent of legally competent parties to each other. *Marrero Enterprises of Palm Beach, v. Estefan Enterprises, Inc.*, 2007 1490994 (S.D. Fla. 2007); *see also*, *Kuharske v. Lake County Citrus Sales*, 44 So. 2d 641 (Fla. 1950) (en banc). In determining whether common intent or a "meeting of the minds" existed in an agreement, Florida courts have determined that:

> As long as an intent to settle essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the Courts of this state.

*Dania Jai-Alai Palace, Inc. v. Sykes*, 495 So, 2d 859 (Fla. 4th DCA 1986); *see also, Skrtich v. Thornton*, 2003 WL 24845555 (M.D. Fla. 2003) (oral settlement agreements are enforceable under both federal and Florida law).[6] Finally, Courts must consider that Florida law highly favors settlements and has routinely held that settlements will be enforced whenever possible. *Robbie v. City of Miami*, 469 So. 2d 1384 (Fla. 1985); *see also, Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975), *cert. denied*, 425 U.S. 912 (1976); *BR Products North America, Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007) ("[S]ettlement agreements are favored as an efficient way

---

the "significant relationship" test to decide which state's laws apply); *State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So.2d 1160 (Fla. 2006) (the significant relationship test requires the Court to evaluate: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties).

[6] Under Florida law, an "essential term" of an agreement, "varies widely according to the nature of the complexity of each transaction and is evaluated on a case-by-case basis." *Nichols v. Hartford Insurance Co. of the Midwest*, 834 So. 2d 217 (Fla. 1d DCA 2003) (citing *Dimase v. Aquamar, 176, Inc.*, 835 So. 2d 150 (Fla. 3d DCA 2002); *see also Giovo v. McDonald*, 791 So. 2d 38, 39 (Fla. 2d DCA 2001) ("Certainly, what is an 'essential term' of a contract differs according to circumstances.")).

to settle disputes and as a means to conserve judicial resources."); *Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d 295 (Fla. 4d DCA 2003) (Settlement agreements are favored as a means to conserve judicial resources).

Based on the equitable principles that apply to this claims administration process,[7] the Court has permitted the Special Master to refer claimant disputes to mediation. However, those same principles require these disputes be resolved definitively as the mediation process is funded by the Settlement Fund. After balancing these and other factors (*See* D.E.3241), the Special Master must evaluate whether a settlement was reached at mediation between these parties. Upon review of the record before the Court, the Special Master finds that the parties entered into a valid settlement agreement concerning who has the right to maintain a claim for a potential award from the Settlement Fund.[8]

The essential term of any settlement reached between conflicting claimants in the mediation process is who, as between the claimants, is entitled to maintain a claim for damages against the Settlement Fund. Here, that specific term was answered by the parties at the conclusion of mediation.[9] Under the terms of the agreement, the parties

---

[7] *See In Re: Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000).

[8] The Special Master need not reach the issue of the effect of the 1996 Sales Agreement on the parties respective rights in the claims process as the parties settled the dispute. The Special Master notes that Joseph Marley, Esq. appeared on behalf of Claimant Elias Abdelnour and Youssef, Inc. (Claim No. 3062) during the hearing before the Special Master. Although Mr. Abdelnour had settled this dispute prior to counsel's involvement, the Special Master commends Mr. Marley for providing sound legal advice to his client. Unfortunately, to borrow the often quoted catchphrase, Mr. Marley's client was a "day late and a dollar short" in seeking advise from counsel.

[9] Although confusion may have arisen regarding the scope of the release to be included in the Settlement Agreements, the division of the ownership interest in the claim never changed once

CASE NO.: 91-0986-CIV-GOLD

agreed to the following division of claim for damages in the Claims Administration Process for Station No. 39785 for the period of March 31, 1994 through August 28, 1994.

| Party | Claim No. | Percentage of Ownership |
|---|---|---|
| Richard Wakile | Claim No. 100051A | 16% |
| Estate of Youssef Wakile | Claim No. 100051B | 16% |
| Elias Abdelnour/Youssef, Inc. | Claim No. 3062 | 68% |

The Special Master does not believe that the release used in settlements reached in the mediation process is an essential term to those agreements.[10] The mediation process was implemented for the narrow and singular purpose of resolving disputes over the entitlement to maintain a claim for damages against the Settlement Fund. The release utilized in every settlement agreement (*See supra*, FN 1.) was designed to protect claimants against any and all claims, known and unknown, with respect to each other and the referenced claim. The release is not an essential term of the agreement as it merely reflects the binding and conclusive effect of the agreement in the claims process. Furthermore, the principles of equity that govern the claims process require that the Special Master uphold agreements reached by claimants over these disputes.

---

the settlement was reached. *See* MR.

[10] Even if the Court were to determine that the release was an essential term of the Settlement Agreements, the Special Master would still find that a settlement was reached by the parties. At the conclusion of the mediation, the parties had agreed to a division of the interest in the claim against the Settlement Fund for Station No. 39785 for the period of March 31, 1994 through August 28, 1994. At this juncture, Claimant Abdelnour indicated that he wanted a broader release from the Walkie's. Based on this request, the Mediator prepared revised Settlement Agreements with the language requested by Claimant Abdelnour. The broad release contained in the revised Settlement Agreements (*See supra*, FN 2.) would be construed as a counter-offer by Claimant Abdelnour. The counter-offer was accepted by the Walkie's upon their execution of the revised Settlement Agreements. Accordingly, the Special Master would find that there was a meeting of the minds as to all the essential terms of the agreement.

CASE NO.: 91-0986-CIV-GOLD

Accordingly, the Special Master finds that there was a meeting of the minds between the parties as to division of claim for damages in the Claims Administration Process for Station No. 39785 for the period of March 31, 1994 through August 28, 1994. Having reviewed the Court file, the positions of the parties and being otherwise fully advised in the premises, the Special Master hereby orders the following:

**ORDERED and ADJUDGED** as follows:

1. The Agreement reached between the parties to dispute C5.9 (Claimant Richard Wakile, Claim No. 100051A and Claimant Elias Abdelnour on behalf of Youssef, Inc., Claim No. 3062), and dispute C5.10 (Claimant Makele Wakile, on behalf of the Estate of Youssef Wakile, Claim No. 100051B and Claimant Elias Abdelnour on behalf of Youssef, Inc., Claim No. 3062) over the entitlement to maintain a claim for damages in the Claims Administration Process for Station No. 39785 for the period of March 31, 1994 through August 28, 1994 is hereby determined valid and enforceable.

2. The Claims Administrator shall make the appropriate notations in these claim files and Class counsel is permitted to advance these claims in the Claims Administration Process.

3. The Mediator is hereby instructed to prepare and distribute final Settlement Agreements containing the division agreed to by the parties for the potential award from the Settlement Fund for Station No. 39785 for the period of March 31, 1994 through August 28, 1994. The Settlement Agreements shall contain the release outlined in FN 1, *supra*. The Mediator shall distribute the

final Settlement Agreements to the parties, via overnight delivery, no later than Monday, October 1, 2007.

4. The parties to disputes C5.9 and C5.10 are hereby order to execute and return the final Settlement Agreements to the Mediator by no later than Monday, October 8, 2007. Executed originals of the Settlement Agreements shall be delivered to the Mediator and copies shall be delivered to the Claims Administrator and the opposing party.

5. The Mediator's Certification of Bad Faith with respect to Claimant Elias Abdelnour on behalf of Youssef, Inc. is hereby VACATED.

**DONE AND ORDERED** this 26 day of September, 2007.[11]

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
All counsel of record
Garden City Group
U.S. District Judge Alan S. Gold

---

[11] Any objections to orders of the Special Master shall be filed within fourteen (14) calendar days from the date of the Special Master's order. Any responses to objections shall be filed within five (5) business days of the date the objection is filed with the court. The objector shall have three (3) business days to file a reply from the date the response is filed.