IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al.,      )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )
                                        )
EXXON CORPORATION,                      )
                                        )
        Defendant.                      )
_____)
                                        )
RUSSELL A. CLINE,                       )
                                        )
        Plaintiff,                      )   **CONSOLIDATED WITH**
                                        )   **CASE NO.: 05-21338-CIV-GOLD /**
                                        )   **SIMONTON**
vs.                                     )
                                        )
THE GARDEN CITY GROUP, INC.,            )
                                        )
        Defendant.                      )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C6.5

This cause is before the Special Master pursuant to Class Counsel's Sixth Motion for

Adjudication of Conflicting Claims (Motion C6) **[D.E. 4128]**, and the materials submitted[1] by or on

behalf of claimant James W. Wilkerson (Claim No. 1031881), and claimant Qaudar, Inc., c/o Safdar

Khan (Claim No. 1002755).

On April 9, 2008, the Special Master conducted an evidentiary hearing to resolve various

unsettled conflicting claimant disputes contained in Class Counsel's C6 Motion, specifically

_____

[1]Such materials include the original Replies and the responses and documentation attached to the claimants'' respective
answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as
well as the additional supplements provided by the claimants, and the materials contained within the database maintained
by the Claims Administrator.

including dispute C6.5. The parties to this dispute are James W. Wilkerson (Claim No. 1031881), and Qaudar, Inc., c/o Safdar Khan (Claim No. 1002755). William Armstrong, Esq., appeared on behalf of James W. Wilkerson. Jon A. Hoppe, Esq. appeared on behalf of Qaudar, Inc. and Mr. Khan.

After analyzing the materials submitted by the claimants and their counsel, and having reviewed the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## I.    FINDINGS

Qaudar, Inc., c/o Safdar Khan, Claim No. 1002755, is the rightful claimant as between these two disputing claimants. Mr. Wilkerson, d/b/a JVJ, Inc., was the dealer of record during the time period which is the subject of this claim (December 2, 1991 through August 28, 1994). Mr. Wilkerson acquired the station from a prior dealer as of December 2, 1991. Mr. Wilkerson, d/b/a JVJ, Inc., was the Exxon direct-served dealer who purchased the subject fuel for this claim. The question raised by this dispute is whether Mr. Wilkerson, d/b/a JVJ, Inc., transferred or assigned the subject claim to Qaudar, Inc. (or Mr. Khan) when the subject station was sold by Mr. Wilkerson to Qaudar, Inc. in or about 1995.

The subject station/business was known as the "College Plaza Exxon." Mr. Wilkerson (and his corporation JVJ, Inc.) sold the station to Qaudar, Inc. and/or Mr. Kahn in January, 1996. The relevant sales documents which have been provided by the claimants, and upon which they rely, are as follows:

> 1.    Service Station Purchase Agreement dated July 25, 1995 ("Agreement);

-2-

2.    JVJ, Inc. Articles of Sale and Transfer dated January 1, 1996 ("Articles");

3.    Resolution of Directors and Stockholders of JVJ, Inc. dated January 2, 1996;

4.    Consent to Assignment Request;[2]

5.    Bulk Sale Affidavit dated January 2, 1996; and,

6.    Settlement Statement dated January 2, 1996

### A.    *Service Station Purchase Agreement – dated July 25, 1995*

The Agreement is the overall governing document of the sale between both claimants. While

the other materials, which followed this agreement and will be discussed below, bear importance as

well, the Agreement controls, in large part, the resolution of the present dispute.

Paragraph 2 of the Agreement states as follows:

> …Seller shall sell, convey, transfer, assign and deliver unto
> Purchaser, *by appropriate instrument*, in a form satisfactory to
> Purchaser…all of the assets comprising the Business, including but
> not limited to the equipment identified in Schedule A, all of the
> inventory of the Business, the lease for the premises occupied by the
> Business, Seller's rights in the trade name of the Business, telephone
> numbers, good-will and *intangible assets*…This sale shall not include
> any of Seller's cash or cash equivalent, account receivables, notes
> receivables, credits and payments *due* to Seller from Exxon.

*See Agreement* at ¶2 (emphasis added).  At the outset, the Special Master finds that the subject claim

is **not** an account receivable; rather, it is a "chose in action."  Accordingly, the reference to account

---

[2] It is noted that neither claimant has provided the actual "Consent to Assignment" between Exxon, Mr. Wilkerson and Qaudar, Inc. and/or Mr. Kahn.  Rather, only the form "Consent to Assignment Request" was provided. However, Mr. Wilkerson provided a copy of the actual Consent to Assignment between Exxon, himself and the dealer from whom Mr. Wilkerson purchased the station in December of 1991.  This 1991 Consent to Assignment is similar to the same form language as the Special Master has seen throughout the Claims Administration Process.  In the actual Consent to Assignment, "Franchise Agreements" are mentioned at the inception.  While not specifically defined, that term refers to the Retail Service Station Lease and the Sales Agreement (which is for the purchase of motor fuel) for a specified period of time.  While the actual Consent to Assignment, between Exxon, Mr. Wilkerson and Qaudar, Inc. (or Mr. Khan), was not provided, it is noteworthy that such document would have specified a complete assignment of the Assignor's rights to the Assignee under the "Franchise Agreements," which includes the Sales Agreement for motor fuel.  The problem is that the time period of those "Franchise Agreements" is unknown since the original Consent to Assignment was not provided.  So,  without that actual Consent to Assignment Agreement, it is impossible to determine which period of the claim was assigned by Mr. Wilkerson to Qaudar, Inc., so the Special Master must look to the other documents provided and testimony received in order to make a determination of the rightful claimant.  The consent to assignment request form, which was provided, does indicate

receivables, in ¶2 and ¶8 of the Agreement, is inapposite to the determination whether the subject claim was included as part of the sale and purchase of the station between Mr. Wilkerson and Qaudar, Inc.[3] A "chose in action" is indeed an "intangible asset," and arguably, the language of ¶2 supports Qaudar, Inc.'s position that it is the owner of the subject claim, as Mr. Wilkerson transferred his rights in the intangible assets of the business/station.

### B.    Articles of Sale and Transfer – dated January 1, 1996

On January 1, 1996, both JVJ, Inc. (i.e., Mr. Wilkerson's corporation) and Qaudar, Inc. executed an "Articles of Sale and Transfer." Pursuant to ¶First of the Articles, JVJ, Inc. agreed to "sell, assign and transfer all of the assets of the business known as College Plaza Exxon to [Qaudar, Inc.]..." Additionally, pursuant ¶Seventh, JVJ, Inc. proclaimed that its Board of Directors adopted a resolution declaring that "the sale, assignment and transfer of all the assets of [JVJ, Inc.] reflected on Exhibit A as herein set forth is advisable..." It is noted, however, that no "Exhibit A" has been provided which may set forth any limitation of the assets to be transferred.

Lastly, pursuant to ¶Ninth of the Articles, the consideration (the purchase price) of $255,000

---

Mr. Wilkerson's intention to assign his rights under the "Franchise Agreements" to Qaudar, Inc.

[3] Equally, it is inapposite whether there is a "conflict," direct or otherwise, between ¶¶2 and 8 of the Agreement. Mr. Hoppe, on behalf of Qaudar, Inc., made a point to argue that ¶¶2 and 8 of the Agreement are in direct conflict with each other. The Special Master disagrees and finds that both can be read harmoniously. ¶2 refers to the subject sale as not including, *inter alia*, any accounts receivable which are **due** (i.e., meaning those which were, at the time, presently due) to Seller from Exxon. ¶8 states that all accounts receivable and payable **accruing to the close of this sale** shall remain the property of the Seller. Both ¶2 and ¶8 clearly reserve, in favor of the Seller (Mr. Wilkerson), any and all accounts receivable which were due to the Seller and/or accruing by the time of closing. There is no conflict there. Nonetheless, the Special Master determines that the subject claim is not an "accounts receivable," but rather a "chose in action." Of course, one might try to point back to ¶2 of the Agreement and argue that the language which says that any "credits or payments due to Seller from Exxon" are not part of the sale, and that the subject claims refers to "credits" that would be due to the direct-served dealer as a result of Exxon's failure to pay pursuant to the Discount for Cash Program. However, and again, the language in ¶2 of the Agreement refers to "credits" which were then **due** (meaning that those credits, or obligations to pay them, which existed at the time of the Agreement) as of July 25, 1995, and/or at the time of closing in January, 1996 (Note: ¶2 of the Agreement does not stated "due, or which may in the future become due."). No such "credits" were **due** as of July 25, 1995, or as of January, 1996. The *Allapattah* Class Complaint was filed in 1991 and the Class was not even certified until June 25,

is acknowledged and that in exchange for payment, JVJ, Inc. sold, deeded, granted, conveyed, transferred, set over and assigned to Qaudar, Inc. "those assets listed in the [Service Station Purchase Agreement of July 25, 1995]." The Agreement indicates, as mention *supra*, that JVJ, Inc.'s intangible assets were transferred and sold to Qaudar, Inc.

### C.   *Resolution of Directors and Stockholders of JVJ, Inc. – dated January 2, 1996*

The resolution states, in pertinent part, as follows:

> RESOLVED, that the Directors and Stockholders of [JVJ, Inc.] hereby consent to the sale of certain of [JVJ, Inc.'s] assets and the transfer, assignment and conveyance to Qaudar, Inc., as of January 2, 1996, certain of the assets of [JVJ, Inc.], specifically the business known as "College Plaza Exxon,"...as a going concern, its goodwill, and ***assets acquired subsequent hereto.***

(emphasis added). This provision additionally provides support for the proposition that Qaudar, Inc. is the rightful owner of the subject claim.

### D.   *Bulk Sale Affidavit*

Mr. Wilkerson, d/b/a JVJ, Inc. and in his capacity as President of JVJ, Inc., on January 2, 1996 executed a "Bulk Sale Affidavit" in connection with the sale of the subject station to Qaudar, Inc. This document states, in pertinent part, as follows:

> James W. Wilkerson, President of JVJ, Inc., Seller, of a business known as College Plaza Exxon...hereby acknowledge [sic] and assign [sic] to the Purchaser, Safdar Khan,[4] ***all right, title, and interest of any nature whatever*** they may have in and to said business, hereby acknowledging the existence and ownership of said business.

(footnote and emphasis added). This document further bolsters the position that Qaudar, Inc. was sold and/or transferred the subject claim (generally), or the right to asset the subject claim in this

---

1996.

matter.

### E.    Settlement Statement – dated January 2, 1996

Mr. Wilkerson provided a copy of the Settlement Statement, dated January 2, 1996, relating to the sale and purchase of the subject station by and between JVJ, Inc. (and Mr. Wilkerson) and Qaudar, Inc. (and Mr. Khan). The total purchase price was $255,000. Of that amount, $5,000 was a deposit, $100,000 was for a covenant not to compete, and the remaining $150,000 was for the pure purchase price of the College Plaza Exxon business, and its attendant assets. The compensatory damages aspect of the subject claim, at or around the time of the sale to Qaudar was approximately $57,300. Clearly, based upon this information, the documentation reviewed by the Special Master, and the testimony received during the April 9, 2008 hearing, an award of the claim in favor of Qaudar, Inc. would be equitable and not result in a "mere windfall" to Qaudar, Inc.

## II.    CONCLUSION

Based upon the foregoing, the Special Master determines that the rightful claimant is Qaudar, Inc. c/o Safdar Khan. It is the Special Master's determination that Mr. Wilkerson, d/b/a JVJ, Inc., transferred and sold all of his assets of, and rights, title and interest in, the business known as College Plaza Exxon, including the subject chose in action, which ripened after the sale of said business. While the Agreement is clear that Mr. Wilkerson, d/b/a JVJ, Inc., specifically excluded from sale any of his cash or cash equivalents, accounts receivable, notes receivable, credits or payments then due from Exxon and/or accruing by the close of the sale (see ¶¶2 and 8 of the Agreement), said exclusion did not encapsulate the chose in action at issue in this dispute (see discussion, *supra*). Further, the other associated sales documents (i.e., the Resolution, the Bulk Sale Affidavit, the Articles, etc.)

---

[4] Mr. Khan is the principal of Qaudar, Inc.

support the Special Master's findings and determination when read in conjunction with the Agreement, and taking into account the evidence obtained during the April 9, 2008 hearing.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1.    Qaudar, Inc., c/o Safdar Khan (Claim No. 1002755) is the rightful claimant as between these two disputing claimants.

2.    The claim of James W. Wilkerson (Claim No. 1031881), is hereby dismissed with prejudice. With the resolution of this dispute, Class counsel is permitted to advance the claim of Qaudar, Inc., c/o Safdar Khan (Claim No. 1002755), in the Claims Administration Process.

3.    The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: James W. Wilkerson (Claim No. 1031881). The Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim with respect to James W. Wilkerson (Claim No. 1031881).

**DONE AND ORDERED** in Miami, Florida this 10 day of August, 2008.[5]

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold

_____

[5] Any objections to the Order of the Special Master shall be filed with the District Court within fourteen (14) calendar days from the date of the Special Master's Order. Any responses to objections shall be filed within five (5) business days of the date the objection is filed with the court. The objector shall have three (3) business days to file a reply from the date the response is filed.