IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al.,

    Plaintiffs,

v.

EXXON CORPORATION,

    Defendant.

RUSSELL A. CLINE,

    Plaintiff,

vs.

THE GARDEN CITY GROUP, INC.,

    Defendant.

**CONSOLIDATED WITH
CASE NO.: 05-21338-CIV-GOLD /
SIMONTON**

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C6.6

THIS CAUSE is before the Special Master pursuant to Class Counsel's Sixth Motion for Adjudication of Conflicting Claims (Motion C6) **[D.E. 4128]**, and the materials submitted[1] by or on behalf of claimant Thomas M. Yoder (Claim No. 100538), and claimant Sichi Cedar Creek Exxon, Inc. c/o Eric Sichi (Claim No. 6189).

On April 9, 2008, the Special Master conducted an evidentiary hearing to resolve various unsettled conflicting claimant disputes contained in Class Counsel's C6 Motion, specifically

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants" respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

including dispute C6.6. The parties to this dispute are Thomas M. Yoder (hereinafter, "Yoder"), Claim No. 100538, and claimant Sichi Cedar Creek Exxon, Inc. c/o Eric Sichi (hereinafter, "Sichi"), Claim No. 6189. Yoder was represented at the hearing by his attorney, Louise Schrage, Esq. Sichi was represented at the hearing his attorney, Patrick Rega, Esq.

After analyzing the materials submitted by the claimants and their counsel, and having reviewed the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## I.   FINDINGS

1. Sichi Cedar Creek Exxon, Inc. c/o Eric Sichi (hereinafter, "Sichi"), Claim No. 6189 is the rightful claimant as between these two disputing claimants.

2. Yoder was the Exxon direct-served dealer of record during the time period which is the subject of this claim—i.e., March 1, 1983 through August 28, 1994. The question raised by this dispute is whether Yoder sold and transferred the subject claim to Sichi when the subject station was purchased by Sichi from Yoder. Sichi and Yoder executed an Asset Purchase Agreement dated November 18, 1999 (hereinafter, the "Purchase Agreement"), which is the controlling document in this dispute.

3. Yoder asserted, at the hearing on April 9, 2008, that Sichi has the "burden of proof" to establish an entitlement to the subject claim. Sichi disagreed with this position and argued that both claimants are on equal footing in this proceeding and each must establish his respective right to the claim. The undersigned agrees, and finds, that Sichi does not have the "burden of proof" vis-à-vis

Sichi and Yoder, and that both claimants are equally required to establish their right to the subject claim.

4. Yoder argued that the subject sale transaction between Yoder and Sichi was an "asset purchase transaction" and not a "stock purchase transaction." As argued by Yoder, in a stock purchase transaction, the buyer would step into the shoes of the seller—i.e., the buyer would obtain all the assets and all the liabilities of the seller. However, Yoder argues that an asset purchase transaction sells only certain specified assets. In this regard, Yoder argues that the Purchase Agreement states that Sichi purchased only those assets "specifically listed" therein, and that the Purchase Agreement does not specifically address the "Exxon settlement" (the claim at issue). Indeed, the Purchase Agreement is an "asset purchase transaction."

5. Yoder argued that when the sale was consummated in the year 2000, none of the sales documents on the date of closing (such as the bill of sale and the settlement statement) refer to the Exxon settlement (again, the claim at issue).

6. Sichi conceded and agreed that neither Yoder, nor Sichi, knew of the subject claim at the time of the sale when the parties entered into the Purchase Agreement. However, Sichi argued that it is more appropriate to analyze how the parties negotiated the Purchase Agreement, and how they, in effect, shifted or assumed risk relating to the transfer of any of the assets.

7. In this regard, Sichi argued that Yoder assumed a risk, when he transferred assets to Sichi, that the transfer and sale included all of Yoder's assets, **except** those specifically **excluded** (such as "cash" and/or "accounts receivable"). Sichi argued that Sichi assumed a risk, when he purchased the assets, that such assets may turn out to be worth less than what he paid—such as the

goodwill, which was one-half of the total purchase price.

8. It is Sichi's position, and the undersigned's finding as will be explained in more detail below, that, but for the specific exclusion, all assets were transferred and were intended to be transferred, as supported by the language of the Purchase Agreement.

9. Sichi further argued it is not uncommon for parties to negotiate, in these types of arrangements, for some sort of "look-back" provision in the event that events transpire or come to the knowledge of the parties subsequent to the deal and closing. Yoder did not do this. Whether or not this is true (and no "evidence" was provided by Sichi of such a "common practice"), the fact remains, as explained below, that all of Yoder's "Business Assets" and "Assets" were sold without limitation, except for "cash on hand."

10. Sichi further argued that the parties negotiated an agreement and arrived at a price. Sichi stated that he intended to purchase all of the business assets owned by Yoder.

11. Finally, Sichi argued that if there was any mistake, it was a unilateral mistake by Yoder—i.e., there was no mutual mistake—and that Sichi was not aware of Yoder's unilateral mistake. As such, Sichi argued, essentially, that there is no basis for reformation of the Purchase Agreement.

12. Neither claimant has disputed that the controlling agreement is the Purchase Agreement dated November 18, 1999. Within the first recital of the Purchase Agreement, it is stated (and, importantly, the term "Business Assets" is defined) as follows:

> **WHEREAS**, Seller owns and operates a gasoline service station and automobile repair business located at Route 51 and Concorde Lane, Belle Vernon, Westmoreland County, Pennsylvania ("Business") under a Retailed Motor Fuel Lease with Mon Valley Petroleum, Inc.,

> *which business is comprised of various assets including contractual rights and obligations and personal property ("Business Assets")...*

(emphasis added).

13. Thereafter, Paragraph 1 of the Purchase Agreement sets forth what was sold by Yoder to Sichi, and the term "Business Assets" is utilized, in part, therein, itself then defined as "Assets." Specifically, Paragraph 1 states, in pertinent part, as follows:

> 1. **SALE AND PURCHASE OF ASSETS**. On Closing Date...the Seller will sell, convey, transfer and deliver to Buyer, and Buyers shall purchase *all of Seller's right, title and interest in and to l of the Business Assets (hereinafter call the "Assets")* ...The *Assets include, without limitation*:
>
> a) All equipment, machinery, supplies and ancillary equipment set forth and described on Exhibit A attached hereto, except gasoline which shall be transferred as set forth herein. In addition, Seller gives and grants to Buyer, at no cost, license and permission to have possession and use of the Dell 486 and 386 Work Station with complete Software package (including work orders, G-site Interface, Accounts Receivable, Accounts Payable, Pool Margin Calculator, Payroll) for a period not to exceed six (6) months.
> b) Gasoline Inventory.
> c) Non-Gasoline Inventory.
> d) All Good Will and customer relations of the Business.
> e) All records, files, and lists of the Business including any and all contracts relating to the operation or administration of the Business, as set forth on Exhibit B attached hereto.

(emphasis added).

14. As a result of the above, Yoder (the Seller) transferred and assigned his "Business Assets" (later defined in Paragraph 1 as "Assets") to Sichi. Those Business Assets were "contractual rights and obligations and personal property" and included **<u>without limitation</u>** those items listed above. Again, the transfer of the assets was without limitation. As such, the specifically, and

generally, listed items above were not the exclusive assets transferred. Any and all assets relating to the business run by Yoder were transferred according to the language in the Purchase Agreement with only one specified exception.

15. The sole exception to transferred assets was cash, as set forth in Paragraph 2 of the Purchase Agreement. Paragraph 2 states as follows:

> 2. **RESERVATIONS, RETAINAGE AND EXCEPTIONS**.
> The Seller shall retain title to any cash on hand as of the Closing Date (as hereinafter defined).

16. Accordingly, based upon the totality of the language found within the Purchase Agreement, the **sole** asset which was **not** transferred by Yoder to Sichi was the "cash on hand" as of the Closing Date. All other assets, which would include the subject claim—or, rather, the right to assert the claim when it arose—despite it being "unknown" at the time of sale, were transferred to Sichi. This conclusion is supported by the language of the Purchase Agreement, as detailed above, including the definition of the terms "Business Assets" and "Assets," the non-limitation of Assets which were transferred, as set forth in Paragraph 1 of the Purchase Agreement, and the sole exception of one asset (cash on hand) not transferred.

## II.   CONCLUSION

Based upon the foregoing, the Special Master determines that the rightful claimant is claimant Sichi Cedar Creek Exxon, Inc. c/o Eric Sichi (Claim No. 6189). It is the Special Master's determination that Yoder transferred and sold all of his "Business Assets" and "Assets" with the exception of the "cash on hand." While the Agreement is clear that Yoder specifically excluded from the sale any of "cash on hand," said exclusion did not encapsulate any other asset of the subject

business, which would necessarily include the subject claim and/or the future right to asset the claim. But for this one specific exception, the Purchase Agreement sold and transferred all the "Business Assets" and "Assets" *without limitation*. Based upon the definition of the term "Business Assets" and "Assets" within the Purchase Agreement, the subject claim would be included. Further, since all assets were transferred *without limitation*, subject to the sole exception of the "cash on hand," the only reasonable conclusion is that the subject claim was transferred and sold as well, or at least the right to asset the claim once it presented itself subsequent to the subject sale. The undersigned was not presented with any other documentation or argument which changes this conclusion.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. Sichi Cedar Creek Exxon, Inc. c/o Eric Sichi (Claim No. 6189) is the rightful claimant as between these two disputing claimants.

2. The claim of Thomas M. Yoder (Claim No. 100538), is hereby dismissed with prejudice. With the resolution of this dispute, Class counsel is permitted to advance the claim of Sichi Cedar Creek Exxon, Inc. c/o Eric Sichi (Claim No. 6189), in the Claims Administration Process.

3. The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: Thomas M. Yoder (Claim No. 100538). The Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim with respect to Thomas M. Yoder (Claim No. 100538).

**DONE AND ORDERED** in Miami, Florida this ___ day of September, 2008.[2]

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

---

[2] Any objections to the Order of the Special Master shall be filed with the District Court within fourteen (14) calendar days from the date of the Special Master's Order. Any responses to objections shall be filed within five (5) business days of the date the objection is filed with the court. The objector shall have three (3) business days to file a reply from the date the response is filed.