IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al.,   )
                                               )
      Plaintiffs,                )
                                               )
v.                                                  )
                                               )
EXXON CORPORATION,          )
      Defendant.              )

RUSSELL A. CLINE,   )
      Plaintiff,                )    **CONSOLIDATED WITH**
                                         )    **CASE NO.: 05-21338-CIV-GOLD /**
vs.                                          )    **SIMONTON**
THE GARDEN CITY GROUP, INC.,   )
      Defendant.            )

### ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C6.12

THIS CAUSE is before the Special Master pursuant to Class Counsel's Sixth Motion for Adjudication of Conflicting Claims (Motion C6) **[D.E. 4128]**, and the materials submitted[1] by or on behalf of claimant Ed Brendel's, Inc. (hereinafter, "Brendel"), Claim No. 905, and claimant Petroleum Sales, Inc. (hereinafter, "PSI"), Claim No. 3596.

On June 25, 2008, the Special Master conducted an evidentiary hearing to resolve various unsettled conflicting claimant disputes contained in Class Counsel's C6 Motion, specifically

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

including dispute C6.12. The parties to this dispute are claimant Ed Brendel's, Inc., claim no. 905, and claimant Petroleum Sales, Inc., claim no. 3596. Brendel was represented at the June 25, 2008 hearing by his attorney, Martin J. Malkin, Esq. PSI was represented at the hearing by its attorney, Richard L. Perez, Esq. Additionally present at the hearing was Ed Brendel.

At the conclusion of the hearing, the claimants requested an opportunity to submit additional briefing on the issues for the Special Master's consideration. Accordingly, the undersigned granted the claimants an extension of time to submit additional memoranda, by Order dated June 25, 2008 [D.E. 5089]. Pursuant to D.E. 5089, the claimants were each allowed to simultaneously submit briefs by July 7, 2008. Brendel filed a "Closing Brief". D.E. 5143. PSI filed a "Brief" and a separate "Declaration of Ben Shimek". D.E. 5145. Additionally, pursuant to D.E. 5089, each claimant was allowed to file a corresponding reply brief by July 14, 2008, which Brendel did file. D.E. 5152.

Having analyzed the materials submitted by the claimants and/or their counsel, and having reviewed the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## FINDINGS AND CONCLUSIONS

1.      There is no dispute that the Exxon dealer-of-record during the subject claim period of March 1, 1983 through August 28, 1994 was Brendel. The only dispute, and ultimate issue to be resolved, is whether the subject "Exxon claim" was transferred, sold and/or assigned to PSI, pursuant

to February 29, 1996 "Agreement for Sale of Assets" (hereinafter, the "Agreement").

2. Brendel operated the subject station (number 77067) from 1965 until he sold his ownership of the station to PSI on March 15, 1996.

3. The subject sales transaction occurred at a time outside of the claim period (i.e., after August 28, 1994).

4. At the time the two claimants entered into Agreement, and closed the transaction on March 15, 1996, both Brendel and PSI were aware of the existence of the *Allapattah, et al. v. Exxon* class action litigation.[2]

5. PSI has argued that the Agreement is ambiguous. The undersigned disagrees and finds that the Agreement is unambiguous and clear.[3]

6. Brendel has consistently maintained that it is PSI who has the burden of proof to establish that Brendel sold, transferred and/or assigned his *Allapattah* rights. The undersigned disagrees and finds that both claimants have an equal burden to establish their superior right, as against the other.

7. Quite unlike other disputes in this Claims Administration Process, both claimants submitted themselves to deposition on January 4, 2007, from which significant facts were developed, having a bearing on the undersigned's deposition. Brendel highlights that Mr. Shimek, on behalf of PSI, testified at his deposition that it was his understanding, at the time of entering into the contract,

---

[2] However, the litigation was first certified as a class action on June 25, 1996, which was three months after the closing on the sale and Agreement.
[3] To the extent there is any ambiguity in the Agreement, such ambiguity is to be construed against PSI. The undersigned finds, based upon the documentation submitted, and other evidence received, that PSI is the party who

that if Brendel overpaid a supplier while owning the station, a refund after the sale should be paid to Brendel. *See, Deposition of Ben Shimek*, pgs. 52:15-25 and 53:1-2.

9. The Agreement does not specifically and clearly provide for a transfer of Brendel's right to recover the Exxon supplier overcharges as part of the *Allapattah* litigation. This fact, combined with Mr. Shimek's testimony, mentioned above, demonstrates that Mr. Shimek did not view (as of the time of the sales transaction) the potential recovery pursuant to *Allapattah* litigation as something PSI purchased; rather, it belonged to Brendel and the right to recovery was not transferred, sold or assigned to PSI. This should be the end of the analysis, however, for the sake of clarity, the undersigned addresses the remaining salient and material arguments advanced by the claimants.

10. Brendel argues that the subject claim would amount to accounts receivable, something which was specifically held back by Brendel as part of the sale. ¶16 of the Agreement states as follows:

> **16. Accounts Receivable / Operating Proceeds**. Seller shall be entitled to all proceeds from operation of said business until date of transfer; and Seller shall maintain full right, title and interest to all accounts receivable resulting from work completed prior to date of transfer...

11. Both Brendel and PSI cite to ¶1.D. of the Agreement, for opposite reasons—Brendel to highlight the specific reservation of accounts receivable from the sale, and PSI to highlight the inclusion of other assets "used in and constituting the Business." However, the undersigned finds that the subject *Allapattah* claim was not an "accounts receivable"; rather, it was a "chose in

---

drafted the Agreement (or had the Agreement drafted on its behalf, at PSI's direction and control).

action."[4]

12. ¶1.D. of the Agreement, setting forth, in pertinent part, as follows:

> The sale shall also include all other items, tangible or intangible, used in and constituting the Business, whether or not separately described above, provided, however, that all cash, accounts receivable for sales made prior to date of transfer (as provided in Paragraph 16 below) deposits, bank accounts and equipment not identified in Exhibit "A" shall remain the property of the Seller.

13. The term "Business" as referenced in ¶1.D. of the Agreement is established at the outset of the Agreement in the Recitals. "Business" is defined as "A motor fuel station located at 930 Del Presidio, San Rafael, Marin County, California…" PSI seemingly is arguing that ¶1.D. of the Agreement captures the *Allapattah* claim—a chose in action, which is an intangible asset.

14. However, the undersigned finds that ¶1.D. does not provide support for the assertion that the *Allapattah* claim was sold, transferred or assigned to PSI. The *Allapattah* claim was, and is, not some "other item" that was **used in and constituting** the Business (i.e., the physical plant of the motor fuel station located at 930 Del Presidio). As of February and March, 1996, the *Allapattah* claim did not "constitute" nor was it "used in" the subject "Business."

15. PSI was never assigned Brendel's rights under, or arising out of, the operative[5] motor fuel sales agreements with Exxon. Rather, PSI entered into new such agreement, as opposed to obtained an assignment under whatever motor fuel sales agreement Brendel had operated under in early 1996. The right to the *Allapattah* claim arises out of the motor fuel sales agreements which

---

[4] A "chose in action" is an intangible personal property asset, and is essentially a "right to sue"
[5] By "operative," the undersigned means the particular Motor Fuel Sales Agreement which was in effect at any time from March 1, 1983 up to and including August 28, 1994.

were in effect during the relevant period of time (March 1, 1983 through August 28, 1994), and pursuant to which an Exxon direct-served dealer participated in the Exxon Discount-For-Cash Program, but did not receive the promised reduction in the wholesale price of the motor fuel. PSI, by virtue of the Agreement, or the Bill of Sale relating to the same, never received any such assignment, nor is there any specific listing of the sale of the *Allapattah* claim as part of the March 15, 1996 sales transaction.

16. Additionally, Mr. Shimek asserted that both he and Brendel knew about the *Allapattah, et al. v. Exxon* litigation (the claims for overcharges). Mr. Shimek testified at his deposition that he understood the *Allapattah* claim to be an asset of the business that was being transferred under the Agreement. *See, Deposition of Ben Shimek*, pgs. 46:15 through 51:5. Yet, Mr. Shimek admits that, at no time, either prior to or after the execution of the Agreement did Mr. Shimek have any conversation with Brendel about the *Allapattah* claim. *Id.* at pgs. 49 through 50. *See also, Declaration of Ben Shimek* at D.E. 5145. Simply put, irrespective of the lack of written documentation contemplating any sale, transfer or assignment of Brendel's *Allapattah* claim, it is clear that there was on discussion between the two claims or consideration given or received for the same, as part of the Agreement and sales transaction.[6]

17. PSI argued that the *Allapattah* claim was an intangible asset that arose under

---

[6] It is additionally noted that Agreement makes a telling allocation of the purchase price, which allocation provides for nothing related to any intangible asset or other reference to the *Allapattah* claim. The purchase price was $280,000. The Agreement allocated $9,000 for all equipment described in Exhibit A to the Agreement, another $1,000 was allocated to all "Seller's accounts and contracts, licenses and agreement," and $270,000 for all leasehold improvements, the leasehold interest under the Motor Fuel Station Lease with Exxon and the Dealer Agreement with Exxon.

Brendel's contracts with Exxon, and as such Brendel sold it to PSI as part of ¶1 of the Agreement. The undersigned agrees (as does Brendel, apparently, as discussed below) that the subject claim was an intangible asset. However, it was an intangible asset *arising out of* a motor fuel sales agreement which was no longer operative at the time to the execution of the Agreement; rather, a different motor fuel sales agreement with a date postdating the class period was in effect (and in any event no motor fuel sales agreements were assigned by Brendel to PSI, with approval of Exxon; rather, PSI entered into its own new motor fuel sales agreements with Exxon).

18. The undersigned agrees with Brendel in his original responses to the Claimant Questionnaire, wherein he states that he did not assign his rights under the DFC program to PSI, as he could not assign them since the program ended in August of 1994 (and the sale here occurred in March of 1996). All that Brendel could have sold, transferred or assigned was the *right to collect the litigation proceeds* (if any, at that time), or a right to sue, relating to the DFC Program—namely, again, a "chose in action." No such sale, assignment or transfer appears within any of the documentation provided by the claimants.

19. As between the two competing claimants, Ed Brendel's, Inc. is the rightful and proper claimant in this process with respect to station number 77067, for the period of time from March 1,1983 through August 28, 1994.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. Ed Brendel's, Inc. is the rightful and proper claimant in this process with

respect to station number 77067, for the period of time from March 1, 1983 through August 28, 1994, as between the two competing claimants in C6.12.

2. The claim of Petroleum Sales, Inc., (Claim No. 3596, is hereby dismissed with prejudice. With the resolution of this dispute, Class counsel is permitted to advance the claim of Ed Brendel's, Inc. (Claim No. 905), in the Claims Administration Process.

3. The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: Petroleum Sales, Inc. (Claim Number 3596). The Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim with respect to Petroleum Sales, Inc. (Claim Number 3596).

**DONE AND ORDERED** in Miami, Florida this 8th day of October, 2008.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

Martin J. Malkin, Esq.
1000 Fourth Street, Suite 875
San Rafael, CA 94901
Fax: (415) 459-3668

Richard Perez, Esq.
Perez & Miller, P.C.
3730 Mt. Diablo Blvd., Suite 335
Lafayette, CA 94549
Fax: (925) 284-7789