IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al., )
)
    Plaintiffs, )
)
v. )
)
EXXON CORPORATION, )
)
    Defendant. )
_____)
)
RUSSELL A. CLINE, )
) **CONSOLIDATED WITH**
    Plaintiff, ) **CASE NO.: 05-21338-CIV-GOLD /**
) **SIMONTON**
vs. )
)
THE GARDEN CITY GROUP, INC., )
)
    Defendant. )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C6.28

THIS CAUSE is before the Special Master pursuant to Class Counsel's Sixth Motion for Adjudication of Conflicting Claims (Motion C6) **[D.E. 4128]**, and the materials submitted[1] by or on behalf of claimant Phil Mase, Inc. c/o Philip G. Masemer (hereinafter, "Masemer"), Claim No. 1003197, and claimant Estate of Theodore B. Simpson c/o Eric and George Simpson (hereinafter, "Simpson"), Claim No. 6589.

On April 10, 2008, the Special Master conducted an evidentiary hearing to resolve various

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

unsettled conflicting claimant disputes contained in Class Counsel's C6 Motion, specifically including dispute C6.28. The parties to this dispute are Phil Mase, Inc. c/o Philip G. Masemer (hereinafter, "Masemer"), Claim No. 1003197, and Estate of Theodore B. Simpson c/o Eric and George Simpson (hereinafter, "Simpson"), Claim No. 6589. Masemer appeared *pro se* at the April 10, 2008 hearing. The Estate of Theodore B. Simpson was represented at the hearing by attorney John Bellaschi. Additionally present were Eric Simpson and George Simpson.

Having analyzed the materials submitted by the claimants and/or their counsel, and having reviewed the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## FINDINGS AND CONCLUSIONS

1. There is no dispute that the Exxon dealer-of-record during the subject claim period of March 15, 1985 through August 28, 1994 was Masemer. The only dispute, and ultimate issue to be resolved, is whether the subject "Exxon claim" is deemed an "accounts receivable." *See*, pgs. 8 and 10, *Hearing Transcript*.

2. Both parties agree that depending upon that determination, so goes the determination of ownership of this Exxon claim pursuant to the April 10, 1999 *Contract for Purchase and Sale of a Business* (hereinafter, the "Contract"). The Special Master agrees, however, some background findings are necessary, such as what was exactly sold, and what was held back or retained by Masemer.

3. The Special Master finds that based upon the clear language of the Contract, that all assets, both tangible and intangible were sold to Simpson,[2] with the sole exceptions as follows: (1) cash on hand or in banks; (2) accounts receivable; (3) credit card receivables; and, (4) collateral or utility deposits. Other than those four categories of assets, all tangible and intangible assets of the subject station and business were sold pursuant to the Contract.

4. The Contract specifically states, in pertinent part, as follows:

> Recitals
> * * *
> B. Buyer desires to purchase, and Seller desires to sell, the Premises and **all the stock in trade, good will,** customer lists, selected equipment **and other tangible and intangible items used in the Business.**
>
> * * *
>
> 1. Sale of Assets. Seller agrees to sell and Buyer agrees to purchase **all of the Seller's right, title and interest in and to all of the assets of the Business, including good will** and that equipment listed at Exhibit "B" (the "Assets"). The Buyer agrees to purchase said equipment in its "as is" condition. This <u>**sale does not include any cash on hand or in banks, accounts receivable, credit card receivables and collateral or utility deposits.**</u> (emphasis added)

5. Clearly, the Contract[3] sets forth that the Seller was selling the entirety of the business

---

[2] The contracting party with Masemer for the purchase of the subject station and business was "Springhill Service, Inc." not Simpson, individually. It appears, from the records provided, that Theodore Simpson, Eric Simpson and George Simpson were all directors of Springhill Service, Inc. At some point, Theodore Simpson passed away causing an Estate to be opened. Theodore Simpson was the original claimant, individually, under claim number 6589. What is unclear is why the claim rests with the Estate of Theodore B. Simpson, as opposed to Springhill Service, Inc.

[3] Additionally, there was also a Bill of Sale, dated November 30, 1999, which supports, and refers to, the terms of the Contract. The Bill of Sale further buttresses the conclusion reached below. It states, in pertinent part, that Masemer sold, assigned, conveyed, transferred and delivered to "Simpson" (really, Springhill Service, Inc.) "a certain business and assets...including...all inventory, supplies, tools, furniture, fixtures, leasehold improvements, machinery, equipment, good will, licenses, the rights to use the trade name *and any other tangible or intangible*

*Order Regarding C6.28*
*Page* 4 of 7

and assets to the Buyer, with the sole exceptions of the four categories of assets listed above, one of which were "accounts receivable."

6. Thus, we get back to the issue that both claimants agree is determinative of this dispute, i.e., whether the subject Exxon claim is considered an accounts receivable.

7. The Special Master finds that the subject Exxon claim is **not** an "account(s) receivable"; rather, it is a "chose in action." While both are intangible assets, the distinction makes the ultimate difference pursuant to the terms of the Contract, and thus the determination of the legal ownership of the Exxon claim.

8. The Exxon claim was not an "account(s) receivable" based upon either a legal or factual analysis. Legally, this Exxon claim is considered a "chose in action" which is an intangible personal property asset, and is essentially a "right to sue". Clearly, the Contract did not provide an exception for such an asset, as it did for an account(s) receivable. Factually, from the testimony of Eric Simpson (and which was not disputed by Masemer), the accounts receivable identified by Masemer at the time of the sale merely consisted of such things as "house charges" or credit extended to local merchants, for example. These types of items, classified by Masemer as an accounts receivable, do not encompass the notion of the subject Exxon claim (which again was a "chose in action").

9. Accordingly, the Exxon claim at issue here is **not** (and was not) an account(s) receivable. It was (and is) a "chose in action" which is simply another type of intangible personal property asset—one which was not specifically retained by Masemer, pursuant to the terms of the

---

*assets connected with said business."* (emphasis added).

-4-

Contract. As such, the Exxon claim, or right to the same, was sold and transferred to Simpson as part of the sale, under the terms of the Contract.

10. The Estate of Theodore B. Simpson c/o Eric and George Simpson, Claim No. 6589 is the rightful claimant as between these two disputing claimants.[4]

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. The Estate of Theodore B. Simpson c/o Eric and George Simpson (Claim No. 6589) is the rightful claimant as between these two disputing claimants.[5]

2. The claim of Phil Mase, Inc. c/o Philip G. Masemer (Claim No. 1003197), is hereby dismissed with prejudice. With the resolution of this dispute, Class counsel is permitted to advance the claim of Estate of Theodore B. Simpson c/o Eric and George Simpson (Claim No. 6589), in the Claims Administration Process.

3. The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: Phil Mase, Inc. c/o Philip G. Masemer (Claim No. 1003197). The Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim with

---

[4] Again, see fn. 2, *supra*.
[5] Again, see fn. 2, *supra*.

*Order Regarding C6.28*
*Page 6 of 7*

respect to Phil Mase, Inc. c/o Philip G. Masemer (Claim No. 1003197).

**DONE AND ORDERED** in Miami, Florida this 8th day of October, 2008.[6]

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

John Bellaschi, Esq.
7115 Capital View Drive
McLean, VA  22101

---

[6] Any objections to the Order of the Special Master shall be filed with the District Court within fourteen (14) calendar days from the date of the Special Master's Order. Any responses to objections shall be filed within five (5) business days of the date the objection is filed with the court. The objector shall have three (3) business days to file a reply from the date the response is filed.