IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al.,  )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )
                                      )
EXXON CORPORATION,                    )
                                      )
    Defendant.                        )
_____)
                                      )
RUSSELL A. CLINE,                     )
                                      )                **CONSOLIDATED WITH**
    Plaintiff,                        )                **CASE NO.: 05-21338-CIV-GOLD /**
                                      )                **SIMONTON**
vs.                                   )
                                      )
THE GARDEN CITY GROUP, INC.,          )
                                      )
    Defendant.                        )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C9.4a & C9.4b[1]

THIS CAUSE is before the Special Master pursuant to Class Counsel's Ninth Motion for Adjudication of Conflicting Claims (Motion C9) **[D.E. 4611]**, and the materials submitted[2] by the claimants: (1) William W. Rogers, Claim No. 4688A, and Sandra Rose Thompson, Claim No. 4683A [Dispute C9.4a]; and, (2) Freeway Auto Care Division of Sanco, Inc. c/o William Rogers, Claim 4688B, and Freeway Auto Care Division of Sanco, Inc. c/o Sandra Rose Thompson, Claim

---

[1] While the Special Master acknowledges that it took some time to issue this order, as the order itself reflects, much time was devoted to considering this matter, due to the convoluted issues involved.

[2] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimants' Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

No. 4683B [Dispute C9.4b].

On July 2, 2008, the Special Master conducted an evidentiary hearing to resolve various unsettled conflicting claimant disputes contained in Class Counsel's C9 Motion, specifically including disputes C9.4a and C9.4b. For all intents and purposes, the essential parties to this dispute are William Rogers ("Rogers") and Sandra Rose Thompson ("Thompson"), both of whom were formerly married to one another—their divorce and terms and circumstances thereof are what largely dictate the outcome of these two disputes. However, specifically and technically, the parties to these two disputes are as follows:

**Dispute C9.4a**
1. William W. Rogers, Claim No. 4688A;
2. Sandra Rose Thompson, Claim No. 4683A;

**Dispute C9.4b**
1. Freeway Auto Care Division of Sanco, Inc. c/o William Rogers, Claim No. 4688B; and,
2. Freeway Auto Care Division of Sanco, Inc. c/o Sandra Rose Thompson, Claim No. 4683B.

At the hearing, William Rogers (in both disputes) was represented by his attorney, Mark Fischer, Esq. Thompson was represented by her attorney, Michael McKay, Esq. Both William Rogers and Sandra Thompson attended the hearing. Sandra Thompson's spouse, Patrick Thompson, also attended the hearing.

Having reviewed and analyzed the Court file and the file maintained by the Claims Administrator, and all the materials submitted by the claimants and/or their counsel, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the

*Order Regarding C9.4a & C9.4b*
*Page 3 of 13*

premises, the Special Master finds as follows:

## **FINDINGS AND CONCLUSIONS**

1. With regard to dispute C9.4a, the time period of the claim is from October 1, 1984 to September 1, 1985.[3] Rogers asserts that he was the individual owner and operator, which Thompson disputes and asserts that their corporation owned the subject station. The subject station is station number 76085, located at 303 North Black Canyon Hwy., Phoenix, Arizona, 85009.

2. With regard to dispute C9.4b, the time period of the claim is from September 1, 1985 to September 30, 1990. Each claimant is separately asserting a claim, for this time period through "Freeway Auto Care Division of Sanco, Inc."[4] Sanco, Inc. was dissolved on March 15, 1991. William Rogers seeks to recover in dispute C9.4b for the benefit of Sanco, Inc. as its former President, whereas Sandra Thompson seeks to recover on behalf of Sanco, Inc. pursuant to a Decree of Dissolution of Marriage, obtained prior to the corporate dissolution of March 15, 1991.

3. The issues in these two disputes boils down to whom is the proper claimant to assert present ownership of both damages awards in C9.4a and C9.4b, and whether the proper claimant is a corporate entity or the either or both of the claimants in their individual capacities.

### **Ownership of the Station *During* the Claims Time Periods**

4. Exxon's documentation shows William Rogers as the "key person" in or about 1985

---

[3] In actuality, the claim is from October 26, 1984, but for purpose of damages calculations, the time period is from October 1, 1984.
[4] Freeway Auto Care Division of Sanco, Inc. is also referred to, in various documents, as "Freeway Exxon" or even simply "Sanco, Inc." Sanco, Inc. is the true corporation and corporate owner.

and Sandra Rogers (now Sandra Rose Thompson) as the "key person" in 1989. The October 22, 1984 Sales Agreement (for the purchase of motor fuel) was between Exxon and "William Rogers d/b/a Freeway Exxon." Additionally, in accordance with an October 4, 1985 "Rider to Retail Sales Agreement" and "Key Person Clause," the owner of the subject station was a corporation, of which Williams owned 1300 of the total shares of stock and Thompson owned the remaining 1200 shares. This document also listed Rogers as the "key person." A similar document was executed on September 11, 1989, Sandra Rogers (Thompson) as the "key person" and acknowledging the ownership of shares of stock by Rogers and Thompson in the corporation which owned the subject station.

5. With regard to dispute C9.4a, William Rogers makes the claim in his individual capacity, based upon his assertion that he individually owned, at least initially, the station during the C9.4a time period, and "solely" operated Sanco, Inc. when the station went to "corporate" ownership.

6. However, Sandra Thompson asserts that for the period of time from October 26, 1984 through September 1, 1985,[5] the subject station was operated as Freeway Auto Care; it was not individually operated by William Rogers. Freeway Auto Care, according to Sandra Thompson, was a division of the wholly owned (by Rogers and Thompson) corporation, Sanco, Inc. Thompson states that William Rogers **never** operated the station as in individual, at least for the relevant periods of time in disputes C9.4a and C9.4b.

7. There exists documentation, provided by Thompson, showing a business license,

bearing a "reissue" date of July 5, 1989, for the station in the name of Sanco, Inc. "d/b/a Freeway Auto Care."

8. Additionally, a deed, as recorded on December 10, 1984, was produced to the undersigned showing the purchase of the subject property/station in the name of William Rogers and Sandra Rogers.

9. Further, documentation was submitted evidencing a small business loan application relating to the purchase of the subject property in the name of "William Rogers and Sandra Rogers d/b/a Freeway Auto Care." The application for this small business loan was dated June 23, 1984. Clearly, this date is prior to the October 1, 1984 beginning date of the claim period for C9.4a and lends credence to the position of Thompson that the subject station was operated as Freeway Auto Care (which again was a division of Sanco, Inc.), by Rogers and Thompson, during the period of C9.4a, and likely during the period of C9.4b.

10. Lastly, the undersigned was provided with a copy of Sanco, Inc.'s 1984 Federal Tax return, which shows that Thompson and Rogers were co-owners of Sanco, Inc. and the subject gas station. Sanco, Inc.'s address, per the tax return, is 303 North Black Canyon, Phoenix, Arizona—the same as that of the subject station. Another document, attached to the return, entitled "Annual Report and Certificate of Disclosure" shows that for the year ending October 31, 1985, Thompson (then "Sandra Rogers") was a shareholder, secretary, treasurer and director of Sanco, Inc.

11. Accordingly, based upon the evidence presented, and as weighed by the undersigned, the undersigned finds that the subject station was not owned, or even solely operated, by William

---

[5] *See,* fn. 2, *supra.*

Rogers. Rather, the undersigned finds that the subject station was owned and operated by Sanco, Inc. d/b/a Freeway Auto Care, during the time period relevant to disputes C9.4a and C9.4b, which involved both Rogers and Thompson.

### **Proper, *Present* Ownership of the Claims in C9.4a and C9.4b**

12.  Despite the finding above, the analysis is only partially concluded, as the next step is to determine who owns Sanco, Inc. and/or the right to assert a claim on its behalf. Sanco, Inc. was dissolved on March 15, 1991. Prior to that time, Rogers and Thompson went through divorce proceedings in the State of Arizona.

13.  Rogers has argued that he is entitled to 100% of the award for C9.4a based upon his sole ownership of the business, and that he is further entitled to 50% of the award for C9.4b as a result of him and Thompson co-owning the business (through the Sanco, Inc. entity). Thompson has argued that the subject station was always corporate owned during the periods of time for C9.4a and C9.4b. Clearly, the undersigned's finding above agrees with Thompson's argument.

14.  As such, without more, it would seem that Rogers is entitled to 50% of the awards for C9.4a and C9.4b (relating to his portion of stock shares of Sanco, Inc.) and that Thompson is entitled to the other 50% of the awards (for shares of Sanco, Inc.). This would also appear to be the case based upon the community property laws of the State of Arizona relative to a divorce—a divorce which occurred at a time subsequent to the end of the time period in C9.4b.

15.  However, this is not the case because, as part of the divorce proceedings, Thompson obtain a Decree of Dissolution of Marriage, effective as of February 26, 1990, from the Arizona

court relating to the divorce. Pursuant to the Decree of Dissolution of Marriage, Thompson was awarded all of the assets **and the liabilities** of Sanco, Inc., and thereby the subject Exxon station, and Rogers was divested of any right to Sanco, Inc., the subject station, and by extension the right to assert the *Allapattah* claim (which was, and is, a *chose in action*). In pertinent part, the February 26, 1990 Decree of Dissolution of Marriage states as follows:

> 3. Petitioner/Wife is awarded as her sole and separate property the following joint or community assets:...D. All of the parties' interest in that business known as SANCO, INC, which includes service stations located at 303 North Black Canyon Highway, Phoenix, Arizona..., including all corporate assets of any nature whatsoever, including bank accounts..., personal property, real property, accounts receivable, goodwill and other intangible assets, inventory, and including all liabilities of the corporation.
>
> * * *
>
> 7. Each party shall, upon the request of the other party or at any other time, execute and deliver to the requesting party or to a third party specified by the requesting party, any deeds, contracts, papers and/or instruments necessary or convenient to carry out the terms of this Decree.

16. The subject Exxon station bears the same address as the one set forth above in the Decree of Dissolution of Marriage. Accordingly, by the decree's terms, Rogers' claims (for C9.4a and C9.4b) were extinguished and Thompson received all of the rights **and liabilities** associated with the subject station.[6] Moreover, for approximately eighteen years, Rogers never challenged the Decree of Dissolution of Marriage.

---

[6] Additionally, evidence was taken of the amount of liabilities that Thompson endured, subsequent to the Decree of Dissolution of Marriage, relative to the station and which Rogers apparently wanted no part of, assuming he had no responsibilities for the liabilities. As such, and alternatively, it would be inequitable to find that Rogers is entitled to any of the awards which may eventually be generated out of disputes C9.4a and C9.4b.

Case 1:91-cv-00986-ASG   Document 5489   Entered on FLSD Docket 12/09/2008   Page 8 of 13

*Order Regarding C9.4a & C9.4b*
*Page 8 of 13*

17.   Yet, in the two present disputes, and as further expounded upon during the hearing on July 2, 2008, Rogers argues that these *Allapattah* claims are "new evidence" which were not before the court in the divorce proceedings, and thus were not contemplated by the February 26, 1990 Decree of Dissolution of Marriage. Rogers further attacks, collaterally as part of this proceeding, the divorce proceedings (which were finalized in 1990) and the Decree of Dissolution of Marriage because he did not have an opportunity to defend himself in those proceedings.[7]

18.   In this regard, within the papers filed for the Special Master's consideration, counsel for Rogers argues that Rogers is seeking relief under a theory similar to the "procedural codes" allowing relief based upon newly discovered evidence. Rogers asserts that generally there is three part test for allowing the court to review a prior decree based upon newly found evidence, which is: (1) the evidence does not become known to either party until expiration of the time period allowed under the various procedural statutes; (2) a motion is available to be filed; and, (3) such motion would be filed within a reasonable time.

19.   Rogers argues that *this proceeding* before the Special Master is such a "motion being made within a reasonable time." Rogers claims that he was unaware of the proceeding (divorce proceeding filed by his ex-wife) and thus the Decree was entered in the dissolution without the

---

[7]This argument is wholly contradicted by the evidence presented and Rogers' own testimony at the hearing. Rogers was, admittedly, represented by an attorney in the divorce proceedings. Furthermore, Rogers knew of the Decree of Dissolution, and that it was entered against him as he failed to appear for the hearing, of which he received notice. Moreover, Rogers admits that he did not challenge the Decree of Dissolution of Marriage at that time, simply because he did not believe he had the financial resources to challenge it. Based upon the record and testimony before the undersigned, it seems quite clear that Rogers willingly failed to properly appeal or challenge the underlying divorce proceedings and the final February 26, 1990 "Decree of Dissolution of Marriage" within the proper legal framework provided within the rules of procedure for the civil court system in the State of Arizona. Rather, Rogers waited for approximately eighteen years to collaterally attack the decree and results of those proceedings, as part of this dispute.

opportunity of Rogers to present a proper defense. *See*, fn. 6, *supra*. The undersigned rejects Rogers' argument that these *Allapattah* claims are "newly discovered evidence." The right to assert these claims, or *choses in action*, rested in Sanco, Inc. as a result of its ownership of the subject Exxon station and thus the rights pursuant to the relevant motor fuels sales agreements—full ownership of which was vested in Thompson, and divested of Rogers, on February 26, 1990. The undersigned further rejects Rogers' argument this his "motion" has been made "within a reasonable time."[8]

---

[8] Moreover, the undersigned accepts the argument advanced, in opposition, by Thompson in the memorandum she filed on June 16, 2008, which states, in pertinent part, as follows:

> First, under Arizona law, motions to set aside a court order must be brought within six months after the order was entered. See Ariz. R. of Civ. Proc., Rule 60(c). The Rule in Arizona is similar to the Rule in the Federal Rules of Civil Procedure which limit motions to set aside or amend court orders based on "newly discovered evidence" to a period of not more than one year. See Fed.R.Civ. Proc. Rules 59 and 60. Accordingly, Rogers' assertion that so-called "newly discovered evidence" entitles him to pierce a court order after nearly twenty years, is time barred.
>
> Second, the *Allapattah* settlement proceeds are not "newly discovered evidence." Newly discovered evidence must be of facts existing at the time judgment was entered. And the moving party must have been excusably ignorant of the facts despite using due diligence to learn about them. *Schmidt v. Schmidt*, 158 Ariz. 496, 763 P.2d 992 (1988). Here, the *Allapattah* lawsuit was not even filed until 1991. As such, because the lawsuit was not even in existence when the divorce decree was entered, it cannot be considered newly discovered evidence. This argument is a non sequitur. The *Allapattah* lawsuit is actually an unrelated, after-occurring event...
>
> Third, the divorce decree should not be set aside because Arizona has a compelling interest in favoring the finality of property settlement agreements in divorce decrees. The Arizona Supreme Court's decision in *DeGryse v. DeGryse*, 135 Ariz. 335, 661 P.2d 185 (1983) is instructive. In that case, the trial court entered a decree of dissolution, a part of which awarded the wife a one-third interest in the husband's military retirement pay in conformance with the law as it existed at the time of the decree. *See Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977). Shortly after the decree was entered, the United States Supreme Court issued its opinion in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that there were no community property rights in military retirement benefits. The husband then filed a motion seeking modification of the decree which

20.     Similarly, Rogers claims that pursuant to Arizona statute A.R.S. §25-318(B), he is entitled to this claim because neither Thompson nor Rogers knew of this claim at the time the Decree of Dissolution of Marriage was entered.

21.     At the July 2, 2008 hearing, counsel for Rogers asserted that Arizona Revised Statutes Annotated, §25-318(B) provides Rogers with a basis for why Rogers still has a claim(s) to assert, irrespective of the Decree of Dissolution of Marriage. Specifically, Rogers' counsel stated that §25-318(B), *A.R.S.* pertains to "after-discovered" property, allowing for a modification of the Decree of Dissolution of Marriage. §25-318(B), *A.R.S.* (2008) states, in pertinent part, as follows:

> B. The community, joint tenancy and other property held in common for which no provision is made in the decree shall be from the date of the decree held by the parties as tenants in common, each possessed of an undivided one-half interest.

Rogers' counsel did not indicate what version or enactment of the statute he was relying upon. However, the undersigned's review of §25-318(B) reveals that both the 1990 and 2008 versions of the statute are similar.[9]

---

the Arizona Supreme Court noted was properly treated by the trial court as a motion for relief from judgment. *DeGryse*, 135 Ariz. At 336, n.1, 661 P.2d at 186. In reviewing the denial of the husband's motion, the *DeGryse* court said that the trial court order would be sustained unless the record demonstrated a clear abuse of discretion. The court further held that it was not a clear abuse of discretion of the trial court's discretion to find no justification for the reopening of the decree in light of Arizona's compelling policy interest favoring the finality of property settlements. *Id.* at 338, 661 P.2d at 188.

[9] The 1990 version (since the Decree of Dissolution of Marriage was executed in 1990) of A.R.S. 25-318(B) states as follows:

> B. The community, joint tenancy and other property held in common for which no provision is made in the decree shall be from the date of the decree held by the parties as tenants in common, each possessed of an undivided one-half interest.

22.    The undersigned finds that the above statute is inapplicable to the situation at bar. Rogers is attempting to utilize the language *"for which no provision is made in the decree"* to argue that these *Allapattah* claims are something which were not specifically addressed in the Decree of Dissolution of Marriage. However, the statute addresses "[t]he community...property held in common for which no provision is made in the decree..." The February 26, 1990 Decree of Dissolution of Marriage clearly <u>*did make provision*</u> for the subject *Allapattah* claims, in the sense that the entire ownership and interest of Sanco, Inc. was given to Thompson. Rogers was fully divested of any interest in the corporation, and the subject station. Again, the Decree of Dissolution of Marriage provides, in pertinent part,

> 3. Petitioner/Wife is awarded as her sole and separate property the following joint or community assets:...D. All of the parties' interest in that business known as SANCO, INC, which includes service stations located at 303 North Black Canyon Highway, Phoenix, Arizona..., including all corporate assets of any nature whatsoever, including bank accounts..., personal property, real property, accounts receivable, goodwill and other intangible assets, inventory, and including all liabilities of the corporation.

23.    The subject Exxon station is the one set forth in the decree. Accordingly, by the terms of the Decree of Dissolution of Marriage, Rogers' claim(s) was fully extinguished and Thompson received all of the rights and liabilities associated with Sanco, Inc., including the subject station. §25-318(B), *A.R.S.* (2008) does not breathe new life into Rogers' assertions. Rogers' admitted timely knowledge of the entry of the Decree of Dissolution of Marriage and his willing and knowing failure to challenge the same in a proper and timely manner (as opposed to waiting for about eighteen

*Order Regarding C9.4a & C9.4b*
*Page 12 of 13*

years to first do so) cause his assertions about "newly discovered evidence" or assets not contemplated by the Decree of Dissolution of Marriage to fall flat.

24. Lastly, Thompson's counsel affirmed at the hearing on July 2, 2008 that any and all debts of Sanco, Inc. have been paid, before it was dissolved on March 15, 1991. However, the claims rest in Sanco, Inc. and as such, the undersigned finds that the rights to the claim in C9.4a and C9.4b are in the name of Sanco, Inc. d/b/a Freeway Auto Care.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. With regard to C9.4a, the rightful claimant, as between the two disputing claimants is Sandra Rose Thompson (Claim No. 4683A). However, the claim is properly held in the name of Sanco, Inc. c/o Sandra Rose Thompson, not Sandra Rose Thompson, individually, though Sandra Rose Thompson is determined to be the full and sole 100% owner of Sanco, Inc., and all rights and claims of Sanco, Inc.
2. With regard to C9.4a, the claim of William Rogers (Claim No. 4688A) is hereby dismissed with prejudice. With the resolution of dispute C9.4a, Class Counsel is permitted to advance the claim of Sandra Rose Thompson (Claim No. 4683A) in the Claims Administration Process provided that the claim is advanced in the name of Sanco, Inc. c/o Sandra Rose Thompson.
3. The Garden City Group, Inc. is hereby ordered to make the appropriate updates to the claim files, including conversion of the claimant name from Sandra Rose Thompson to "Sanco, Inc. c/o Sandra Rose Thompson" for (Claim No. 4683A), and The Garden City Group shall distribute the Special Master's Order to: William Rogers (Claim No. 4688A). The Garden City Group, Inc. is directed to treat the Special Master's Order as denying the claim of William Rogers (Claim No. 4688A).
4. With regard to C9.4b, the rightful claimant, as between the two disputing claimants is Freeway Auto Care Division of Sanco, Inc. c/o Sandra Rose Thompson (Claim No. 4683B). However, the claim is properly held in the name of Sanco, Inc. c/o Sandra Rose Thompson (as Thompson is the full and sole 100% owner of Sanco, Inc. and all rights and claims of Sanco, Inc.).
5. With regard to C9.4b, the claim of Freeway Auto Care Division of Sanco,

       Inc. c/o William Rogers (Claim No. 4688B) is hereby dismissed with prejudice. With the resolution of dispute C9.4b, Class Counsel is permitted to advance the claim of Freeway Auto Care Division of Sanco, Inc. c/o Sandra Rose Thompson (Claim No. 4683B) in the Claims Administration Process, provided that the claim is advanced in the name of Sanco, Inc. c/o Sandra Rose Thompson.

6.     The Garden City Group, Inc. is hereby ordered to make the appropriate updates to the claim files, including conversion of the claimant name from Freeway Auto Care Division of Sanco, Inc. c/o Sandra Rose Thompson for Claim No. 4683B, to "Sanco, Inc. c/o Sandra Rose Thompson", and The Garden City Group shall distribute the Special Master's Order to: Freeway Auto Care Division of Sanco, Inc. c/o William Rogers (Claim No. 4688B). The Garden City Group, Inc. is directed to treat the Special Master's Order as denying the claim of Freeway Auto Care Division of Sanco, Inc. c/o William Rogers (Claim No. 4688B).

**DONE AND ORDERED** in Miami, Florida this ___ day of December 2008.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record