IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al.,

    Plaintiffs,

v.

EXXON CORPORATION,

    Defendant.

_____

RUSSELL A. CLINE,

    Plaintiff,

vs.

THE GARDEN CITY GROUP, INC.,

    Defendant.

**CONSOLIDATED WITH
CASE NO.: 05-21338-CIV-GOLD / SIMONTON**

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C8.3

This cause is before the Special Master pursuant to Class Counsel's Eighth Motion for Adjudication of Conflicting Claims (Motion C8) **[D.E. 4394]**, and the materials submitted[1] by or on behalf of claimant North Elizabeth Service Center, Inc. c/o Miriam Nieto (Claim No. 1011204), and claimant Unlimited Tiger Service, Inc. (Claim No. 104134).

On August 12, 2008, the Special Master conducted an evidentiary hearing to resolve the unsettled conflicting claimant dispute C8.3. The parties to this dispute are North Elizabeth Service

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

Center, Inc. c/o Miriam Nieto (Claim No. 1011204), and claimant Unlimited Tiger Service, Inc. (Claim No. 104134). Richard J. Diaz, Esq. appeared on behalf of North Elizabeth Service Center, Inc. and Miriam Nieto. James E. Mackevich, Esq. appeared on behalf of Unlimited Tiger Service, Inc.

After analyzing the materials submitted by the claimants and their counsel, and having reviewed the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## I.     FACTUAL BACKGROUND

### A.     *Facts Presented by North Elizabeth Service Center, Inc. / Miriam Nieto*

Miriam Nieto ("Nieto"), the 100% shareholder in North Elizabeth Service Center, Inc. ("North Elizabeth"), operated the subject station—Station 34285—from 1973 through May 1, 1995. On May 1, 1995, the service station was sold by Nieto and North Elizabeth to Unlimited Tiger Service, Inc. ("Unlimited").

According to Nieto's October 9, 2007 Affidavit, she did not intend to transfer her Exxon claim to Unlimited as part of the sale of the station. She attests that there were no discussions or understandings that Unlimited had any intention to acquire the right to the Exxon claim.

Nieto provided a copy of the May 1, 1995 Bill of Sale which shows that North Elizabeth was sold for $400,000 to Unlimited, and that North Elizabeth

> sells, transfers, sets over and assigns to [Unlimited] the following described business, Gasoline Service Station and Convenience Store and Car Wash, commonly known as North Elizabeth Exxon...including the stock in trade, fixtures, equipment, good- will, trade name, licenses, lease and all rights under any contracts

-2-

for vending machines, public telephones or any other rental or use of equipment at the said premises, more particular described and mentioned in the Schedule herein.

The Schedule, to which reference is made in the Bill of Sale, lists sixteen different items, or categories of items, as follows:

1. PC Computer
2. Servistat Serv. Station Software
3. Okidata 180 printer
4. Alarm System (Union County Security)
5. Two calculators
6. One desk
7. One chair
8. One locker
9. All telephone equipment
10. Display cabinet
11. All sprinklers and hoses
12. Hand truck
13. Fax machine
14. Dollar bill counter
15. Time punch clock
16. All gas and fuel hoses and nozzles[2]

Additionally, Nieto states that there was an addendum to the contract, also dated May 1, 1995 (Addendum No. 1).[3] Nieto argues that the addendum allocates the $400,000 purchase price as follows:

a. Equipment - $50,000
b. Covenant not to compete - $150,000
c. Goodwill - $200,000
d. Inventory – actual adjustment

Nieto argues that nowhere within the Bill of Sale, the contract, or Addendum No. 1, is there

---

[2] The motor fuel which was transferred to Unlimited as part of the sale, was transferred in May of 1995, whereas the class period ended on August 28, 1994. It seems to be without question that the motor fuel which was transferred was purchased sometime after the close of the Class period on August 28, 1994.

[3] Apparently there was an Addendum No. 2 which Nieto did not provide to the Special Master, or acknowledge until the hearing on August 12, 2008. As will be discussed, *infra*, Addendum No. 2 provided that Nieto would receive an

any mention of the transfer of the Exxon claim. At the hearing on August 12, 2008, Nieto asserted that she was "aware" of the potential Exxon claim some time prior to the sale to Unlimited. Lastly, Nieto points out that only certain assets of the business were sold, as enumerated within the sales documents. Nieto says she did not sell the stock of North Elizabeth, which stock was retained by Nieto.

### B.  *Facts Presented by Unlimited Tiger Service, Inc. / Kamaljit S. Ahluwalia*

Essentially, Unlimited asserts that it owns the subject claim as a result of its purchase of the subject station on May 1, 1995 from North Elizabeth. Unlimited claims 100% ownership.

Unlimited says that the actual purchase price was $700,000, not $400,000 as North Elizabeth has indicated. Indeed, Unlimited has provided the Special Master with Addendum No. 2 to the subject contract, which shows that Unlimited was to pay an additional $300,000 (thus a total purchase price of $700,000). Addendum #2 was signed on May 1, 1995, just like the contract and Addendum No. 1. Interestingly, North Elizabeth **made no mention** of this Addendum No. 2, nor of the additional $300,000 it was paid by Unlimited for the subject station as part of its response to the Conflicting Claimant Questionnaire. In fact, North Elizabeth argues (in its Conflicting Claimant Questionnaire) that the full purchase price of the station was allocated within the Addendum No. 1 (as discussed *supra*).

The Special Master notes parenthetically that this additional $300,000, which was paid over and above the contract price, could be consideration for the subject Exxon claim. While total damages for this claim are approximately $813,000, the majority of that amount relates to prejudgment interest, whereas the total gross compensatory damages for this claim are $343,231.78.

---

additional $300,000 over and above the $400,000 contract price.

This amount is very close to the additional consideration paid by Unlimited, factoring in a reasonable time value of money discount on the true, full compensatory damages claim.

Unlimited argues that there was no carve-out or retention of any station assets on the part of North Elizabeth when the station was sold. However, as argued by North Elizabeth, the subject claim would rest with the corporate entity North Elizabeth, not with the personal or real property of the subject station. Even so, Unlimited points out that in connection with the closing and transfer of title, North Elizabeth executed and delivered to Unlimited a Corporate Resolution, which provided in part as follows:

> …[t]he corporation President and Corporate secretary of this corporation be…authorized…to execute…such documents…as may be legally, properly and reasonably required or necessary for the purpose of conveying ***all rights, title and interest*** in a Gasoline Service Station and Convenience Store and Car Wash commonly known as North Elizabeth Exxon.

*See, Corporate Resolution*, dated May 1, 1995 (emphasis added). Based upon this language, Unlimited argues that it is "clear" that the intent and purpose of the sale transaction was to convey *all rights, title and interest* held by North Elizabeth in the subject station and all the assets.

Unlimited further contends that another document states that North Elizabeth unconditionally transferred and assigned its lease with Exxon, providing a basis for Unlimited's claim. Unlimited points out that pursuant to the "Consent to Assignment of Dealer Agreements and Agreement" dated May 1, 1995 (hereinafter, the "Consent to Assignment") between Exxon, North Elizabeth (the Assignor) and Unlimited (the Assignee), North Elizabeth assigned all of its rights under the "Franchise Agreements" with Exxon to Unlimited. The Consent to Assignment provides as follows, in pertinent part:

> 2. Assignor hereby assigns to Assignee and Assignee hereby accepts such assignment of all of Assignor's rights, duties, obligations and debts under each of the Franchise Agreements. Assignor specifically acknowledges and agrees that, as of the effective date of this Agreement, Assignor does not retain and shall have no rights in the Franchise or under any of the Franchise Agreements.

While the Consent to Assignment does not specifically define the term "Franchise Agreements," it states that the agreements referred to in the Consent to Assignment were the Retail Service Station Lease and the Sales Agreement; however, only for the period of January 1, 1993 through January 1, 1996 (i.e., it is limited to this date range, not the full range of time that North Elizabeth operated the subject station). Accordingly, if Unlimited's reading of the Consent to Assignment is correct, the only rights that North Elizabeth transferred under the Consent to Assignment would be those pursuant to the Sales Agreement for the period from January 1, 1993 through January 1, 1996 (or, the purpose of this proceeding, it would only be through August 28, 1994, which is the end of the Class period). Thus, North Elizabeth would be the owner of the subject claim from March 1983 through December 31, 1992 and Unlimited would own the claim from January 1, 1993 through August 28, 1994.

## II.   ANALYSIS

Based upon the inclusion of Addendum No. 2 to the subject contract, it appears that North Elizabeth received an additional $300,000 in consideration, for a total purchase price of $700,000. It is unclear what that additional $300,000 was supposed to represent over and above the original $400,000 purchase price; however, the additional $300,000 is very close to what the actual compensatory damages were worth, as of the date of the subject sale on May 1, 1995.

It is true that the neither the sales contract, the Bill of Sale, nor any of the addenda set forth

that a chose in action, and specifically this Exxon claim, was contemplated or intended as part of the sale between North Elizabeth and Unlimited. Rather, certain assets of the subject station, and some goodwill, were transferred, as delineated in the sales documents.

Unlimited points to the Corporate Resolution provided by North Elizabeth which states that purpose was to convey ***all rights, title and interest*** in a Gasoline Service Station and Convenience Store and Car Wash commonly known as North Elizabeth Exxon. That may be; however, that does not include the specific chose in action which remained in North Elizabeth's possession, which chose in action was not, seemingly, transferred or included in the sale.

The Consent to Assignment appears to be the only document which truly and clearly provides Unlimited with ***partial ownership*** of the subject claim. Specifically, paragraph 2 of the Consent to Assignment does indeed transfer North Elizabeth's Exxon claim, or part of it, to Unlimited. Basically, paragraph 2 of the Consent to Assignment states that North Elizabeth is transferring to Unlimited all its rights, and retaining none, under the Franchise Agreements. While the term "Franchise Agreements" was not specifically defined in the Consent to Assignment, that term refers to both the Retail Service Station Lease Agreement and the Sales Agreement (which would be for the delivery of the motor fuel) solely for the period of time from **January 1, 1993 to January 1, 1996**. *See Consent to Assignment*, pg. 1.

### III.   CONCLUSION

Accordingly, based upon the Consent to Assignment alone, it the **claim should be split**. North Elizabeth should take the claim from March 1, 1983 to December 31, 1992. Unlimited should take the claim from January 1, 1993 to August 28, 1994. This conclusion is supported by the

following analysis. There is no sales document which clearly shows that this Exxon claim (a chose in action), belonging to North Elizabeth, was transferred as part of the sale to Unlimited,[4] yet, the additional $300,000 in consideration paid to North Elizabeth (as part of Addendum No. 2) is unexplained. Since no sales documents clearly shows the transfer of North Elizabeth's claim for the period from March 1, 1983 to December 31, 1992, and based upon the notion that this proceeding is an equitable one, the Special Master concludes that a proper solution would be to award the claim to North Elizabeth for the period from March 1, 1983 to December 31, 1992. Additionally, Unlimited should be awarded the claim for the period from January 1, 1993 to August 28, 1994, based upon the assignment in paragraph 2 of the Consent to Assignment.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. North Elizabeth Service Center, Inc. c/o Miriam Nieto (Claim No. 1011204) is the rightful owner of the subject claim for the period of time from March 1, 1983 through December 31, 1992. Unlimited Tiger Service, Inc. is the rightful owner of the subject claim for the period of time from January 1, 1993 to August 28, 1994.

2. The claim of North Elizabeth Service Center, Inc. c/o Miriam Nieto (Claim No. 1011204) is granted for the time period of March 1, 1983 through December 31, 1992. However, the claim of North Elizabeth Service Center,

---

[4] Unlimited argues that "all rights" in the subject station were transferred. While that may be, all rights and interest of North Elizabeth were not necessarily transferred, nor was the stock of North Elizabeth. What was transferred was what was set forth in the contract, the bill of sale and the two addenda. None of those documents mention this specific Exxon claim or chose in action, and as such those documents do not *clearly* demonstrate that the subject claim was transferred. However, the document which does provide Unlimited with partial ownership of the claim is

Inc. c/o Miriam Nieto (Claim No. 1011204) is dismissed with prejudice for the time period of January 1, 1993 through August 28, 1994.

3. The claim of Unlimited Tiger Service, Inc. (Claim No. 104134) is granted for the time period of January 1, 1993 through August 28, 1994. However, the claim of Unlimited Tiger Service, Inc. (Claim No. 1011204) is dismissed with prejudice for the time period of March 1, 1983 through December 31, 1992.

4. With the above resolution, Class counsel is permitted to advance the claim of North Elizabeth Service Center, Inc. c/o Miriam Nieto (Claim No. 1011204) for the time of period of March 1, 1983 through December 31, 1992. For the time period of January 1, 1993 through August 28, 1994 **only**, the Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim No. 1011204.

5. With the above resolution, Class counsel is permitted to advance the claim of Unlimited Tiger Service, Inc. (Claim No. 104134) for the time period of January 1, 1993 through August 28, 1994. For the time period of March 1, 1983 through December 31, 1992 **only**, the Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim No. 104134.

6. The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to both

---

the Consent to Assignment.

claimants and their counsel.

**DONE AND ORDERED** in Miami, Florida this 9 day of December 2008.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record