IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

| | |
|---|---|
| ALLAPATTAH SERVICES, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EXXON CORPORATION, )<br>)<br>Defendant. )<br>_____)<br>)<br>RUSSELL A. CLINE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE GARDEN CITY GROUP, INC., )<br>)<br>Defendant. )<br>_____) | **CONSOLIDATED WITH**<br>**CASE NO.: 05-21338-CIV-GOLD /**<br>**SIMONTON** |

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C9.8

THIS CAUSE is before the Special Master pursuant to Class Counsel's Ninth Motion for Adjudication of Conflicting Claims (Motion C9) **[D.E. 4611]**, and the materials submitted[1] by claimant American Famous Tiger Service Station, Inc. c/o Amgad Hamed (hereinafter, "Hamed"), Claim No. 1015845, claimant American Famous Tiger Service Station, Inc. d/b/a Sunset Exxon, c/o Mohammed Aminedolleh (hereinafter, "Aminedolleh"), Claim No. 103980, and claimant Kewal K. Gupta (hereinafter, "Gupta"), Claim No. 4871.

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimants' Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

On July 2, 2008, the Special Master conducted an evidentiary hearing to resolve various unsettled conflicting claimant disputes contained in Class Counsel's C9 Motion, specifically including dispute C9.8. The parties to this dispute are American Famous Tiger Service Station, Inc. c/o Amgad Hamed (Claim No. 1015845), American Famous Tiger Service Station, Inc. d/b/a Sunset Exxon, c/o Mohammed Aminedolleh (Claim No. 103980), and Kewal K. Gupta (Claim No. 4871). Hamed appeared at the hearing *pro se*. Elena Aminedolleh appeared at the hearing as representative of Mohammed Aminedolleh. Gupta did not appear for the hearing, nor did he submit the required answers to the Claimant Questionnaire, or any documentation in support of his claim.

Having reviewed and analyzed all the materials submitted by the claimants and/or their counsel, the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

### FINDINGS AND CONCLUSIONS

1.  Through their original filings of replies, all three claimants concur that the correct dealer of record for the time period of the claim (i.e., from September 24, 1992 to August 28, 1994) was "American Famous Tiger Service Station, Inc" (hereinafter, the "Station").

2.  Aminedolleh has asserted, in his filings, that he was a 50% stockholder in the Station for the one-half of the entire time period of this claim and that the other 50% stockholder was Hamed (but, further that he is entitled to 100% of the claim as a result of a later stock purchase). Aminedolleh provided a copy of the Key Person Clause dated August 2, 1993 which states the shared

ownership of the Station between Aminedolleh and Hamed.

3.  In opposition, Hamed stated at the hearing that he was 100% owner of the Station from September 24, 1992 until August 30, 1993. In or about August, 1993, Hamed sold 50% of the stock in the Station to Aminedolleh, acknowledging that Hamed and Aminedolleh were equal co-owners of the Station from August 30, 1993 through August 28, 1994.[2]

4.  However, there is also another Key Person Clause, dated August 2, 1993, which Aminedolleh has provided, stating that the ownership of the Station was 50/50 between Aminedolleh and Hamed. Additionally, other internal documents of Exxon, which were provided by Aminedolleh, show that Aminedolleh was listed as an "alternate corp. keyperson" starting on August 2, 1993.

5.  Accordingly, based upon the documents and testimony provided, the undersigned finds that:

    a.  Hamed was the sole 100% owner of the Station from September 24, 1992 up to and ending on August 1, 1993; and,

    b.  Hamed and Aminedolleh were each equal 50% stockholders of the Station from August 2, 1993 up to and ending (for the purposes of the damages calculations) on August 28, 1994.

6.  Yet, that does not end the analysis of whom ultimately owns the right to assert, and collect upon, the subject claim (as between the three disputing claimants).

---

[2] Note, Hamed actually testified that he sold his remaining 50% interest in the Station to Aminedolleh on November 1, 1994. However, the August 28, 1994 date is mentioned above, since that is the cutoff of the damage claim.

7. Hamed testified that on November 1, 1994 he sold his remaining 50% stockholder interest in the Station to Aminedolleh. In this regard, Aminedolleh has produced a copy of an October 12, 1994 contract documenting Aminedolleh's purchase of Hamed's remaining 50% interest in the Station. Closing on this stock purchase occurred on November 1, 1994 as is reflected by the Statements of Closing Title.

8. As of November 1, 1994, Aminedolleh was 100% owner and holder of the stock in the Station. The question becomes whether the complete sale of the stock by Hamed to Aminedolleh also transferred any and all of Hamed's rights to assert the *Allapattah* claim (including his rights for the period of time from September 24, 1992 to August 1, 1993 when he was the sole stockholder).

9. The undersigned finds that the answer to the question is in the affirmative, as the complete sale of all remaining stock by Hamed to Aminedolleh also transferred any and all of Hamed's rights to assert the *Allapattah* claim.

10. Aminedolleh has provided a copy of a "Release" dated December 7, 1995, executed by Hamed, which states as follows:

> I release and give up any claims and rights which I may have against you. This releases all claims including those of which I am not aware and those not mentioned in the release. This release applies to claims resulting from anything which has happened up to now. I specifically release the following claims:
>
> Any and all adjustments or claims arising from my sale to you of stock in C&H Parkway, Inc. and American Famous Tiger Service Station, Inc.

11. Though it was not discussed in the filings or at the hearing, it appears that the above

release was not signed until December 7, 1995, almost a year after the closing of the remaining stock sale in the Station, because the original October 12, 1994 agreement called for monthly payments of $2,000 to Hamed, over the course of approximately ten (10) months (for a total of $20,000). The undersigned surmises that sometime in October to November of 1995, the payments were all completed pursuant to the October 12, 1994 contract, and thus at the conclusion of those payments the December 7, 1995 Release was executed in favor of Aminedolleh.

12. Additionally, it is noted that, for the first time, at the hearing, on July 2, 2008, Hamed stated that he has an exactly similar release from Aminedolleh, though dated November 30, 1995. Yet, this document was never provided to the Special Master, which should have been provided along with the answers to the required Claimant Questionnaire that Hamed failed to complete and return. Nonetheless, the purported November 30, 1995 release from Aminedolleh to Hamed, to the extent it exists, does not accomplish the same as the release from Hamed to Aminedolleh.

13. Aminedolleh purchased the entire corporation from Hamed (the remaining 50% of the total stock). The *Allapattah* claim is vested in the corporation, not in Hamed individually. Even still, to the extent that Hamed had any individual claim which lingered as a result of his personal ownership of the stock of the Station, that claim was transferred when he sold the stock to Aminedolleh, and most certainly, when he executed the December 7, 1995 Release. While the December 7, 1995 Release may be similar in language to the one purportedly given (separately) by Aminedolleh to Hamed, Hamed's release extinguished any remaining rights (such as secured interests which he previously filed), subsequent to Aminedolleh's completing payment of the $2,000

per month for ten months pursuant to the October 12, 1994 contract. The purported release from Aminedolleh to Hamed could not possibly accomplish the same, when viewed in context of the facts and circumstances, since Aminedolleh bought the stock and did not sell anything, and there was nothing to release with respect to the *Allapattah* claim, or the right to assert the same..

14. Accordingly, the undersigned finds that the complete sale of stock in the Station by Hamed to Aminedolleh pursuant to the October 12, 1994 contract (with November 1, 2004 closing date) transferred any and all rights that Hamed had to assert the *Allapattah* claim, or any such similar "chose in action" since the right to the *Allapattah* claim was vested in the Station (the corporation) and ownership of a corporation is determined by ownership of stock shares.

15. With regard to Gupta, the undersigned finds that Gupta has no valid rights to the subject claim. The undersigned makes this finding based upon the documentation that is on file with the Claims Administrator, as Gupta has not separately responded to the required Claimant Questionnaire, nor did he attend the hearing in this matter.

16. In 1996, Gupta entered into an agreement with American Famous Tiger Service Station, Inc. (at that time owned 100% by Aminedolleh) purportedly to purchase the stock of the Station. However, the agreement[3] demonstrates that it was more for the purchase of various assets of the Station, and less in the form of a complete stock purchase.[4] Gupta's agreement did not

---

[3] The agreement was provided by States' counsel as Exhibit 9.8.2 to *States' Counsel's Position Paper on Outstanding C9 Disputes* [D.E. 4987].

[4] Also, according to statements made by Aminedolleh within the Claims Administrator's files, when the Station was sold to Gupta, Aminedolleh (not Gupta) dissolved the American Famous Tiger Service Station, Inc. on October 15, 1996. Had Gupta actually purchased the stock of the Station, it would be Gupta, not Aminedolleh, who had the right and the legal ability to dissolve the corporation. Accordingly, this lends further credence to the view that the transaction with Gupta was not a stock sale, but rather an asset sale (and specified assets at that).

specifically provide for the *Allapattah* claim, "choses in action" in general, or for the assignment and assumption of the Station's rights under past motor fuels sales agreement (from which the *Allapattah* claim arose). As such, Gupta has no valid right to the subject claim.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. American Famous Tiger Service Station, Inc. d/b/a Sunset Exxon, c/o Mohammed Aminedolleh (Claim No. 103980) is the rightful claimant as between these three disputing claimants.

2. The claims of American Famous Tiger Service Station, Inc. c/o Amgad Hamed (Claim No. 1015845) and Kewal K. Gupta (Claim No. 4871) are hereby dismissed with prejudice. With the resolution of this dispute, Class counsel is permitted to advance the claim of American Famous Tiger Service Station, Inc. d/b/a Sunset Exxon, c/o Mohammed Aminedolleh (Claim No. 103980) in the Claims Administration Process.

3. The Garden City Group, Inc. is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: American Famous Tiger Service Station, Inc. c/o Amgad Hamed (Claim No. 1015845) and Kewal K. Gupta (Claim No. 4871). The Garden City Group, Inc. is directed to treat the Special Master's Order as denying the claims of American Famous Tiger Service Station, Inc. c/o Amgad Hamed (Claim No.

*Order Regarding C9.8*
*Page 8 of 8*

1015845) and Kewal K. Gupta (Claim No. 4871).

**DONE AND ORDERED** in Miami, Florida this 9 day of December 2008.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record