IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al., )
)
    Plaintiffs, )
)
v. )
)
EXXON CORPORATION, )
)
    Defendant. )
_____)
)
RUSSELL A. CLINE, )
) **CONSOLIDATED WITH**
    Plaintiff, ) **CASE NO.: 05-21338-CIV-GOLD /**
) **SIMONTON**
vs. )
)
THE GARDEN CITY GROUP, INC., )
)
    Defendant. )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C7.18

THIS CAUSE is before the Special Master pursuant Class Counsel's Seventh Motion for Adjudication of Conflicting Claims (Motion C7) **[D.E. 4270]**, and the materials submitted[1] by or on behalf of claimant Nikiforos Nick Spiropoulos (hereinafter, "Spiropoulos"), Claim No. 1008053, and claimant Stylianos Bouboudakis (hereinafter, "Bouboudakis"), Claim No. 1023302.

On June 25, 2008, the Special Master conducted an evidentiary hearing to resolve various unsettled conflicting claimant disputes contained in Class Counsel's C7 Motion (as well as other

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimants' Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

conflicting claimant and disputed claimant motions), specifically including dispute C7.18. The parties to this dispute are Nikiforos Nick Spiropoulos (Claim No. 1008053), and Stylianos Bouboudakis (Claim No. 1023302). Spiropoulos was represented at the hearing by his attorney, Anastassios Triantaphyllis, Esq. Bouboudakis was represented at the hearing by his attorney Joseph A. Scamardi, Esq. At the conclusion of the hearing, Spiropoulos requested additional time to submit a memorandum of law in support of his position. Accordingly, the undersigned granted this request by Order dated June 25, 2008 **[D.E. 5088]**, and additionally granted Bouboudakis additional time to submit a reply in opposition to the memorandum eventually filed by Spiropoulos.

Having analyzed all the materials submitted by the claimants and/or their counsel,[2] and having reviewed the Court file and the file maintained by the Claims Administrator, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## I.   SUMMARY OF THE ARGUMENTS

1.   Spiropoulos argues that he was the party to the subject and relevant Exxon motor fuel sales agreements, which gave rise to the *Allapattah* claim. He admits that he entered into a contract with Bouboudakis on or about March 26, 1995, which was executed in the State of Texas, for the sale of his Exxon station business (hereinafter, the "Contract"). The purchase price was $156,000 plus the actual cost of gasoline in storage on the date of closing.[3] Spiropoulos asserts that he was the

---

[2] This includes the supplemental memoranda submitted by both claimants. *See,* **D.E. 5146** (and **D.E. 5154**, which is the same) and **D.E. 5152** (and **D.E. 5166**, which is the same).
[3] Though, Bouboudakis has asserted that the price was as high as $210,000, which the undersigned assumes was after adding in all the adjustments to the original purchase price of $156,000.

owner of the station and the dealer of record for the period of time relating to the claim (i.e., - from August 11, 1986 to August 28, 1994). Spiropoulos argues that he retained the *Allapattah* claim, and did not sell, transfer, or assign the same, to Bouboudakis as part of the Contract.

2. In his supplemental memorandum, Spiropoulos additionally argues that the contract is ambiguous, and thus there is need for interpretation and resort to parol evidence for the same. He additional argues that the subject *Allapattah* claim could not be included in the general phrase "all other business assets" under the principle of *ejusdem generis*, as adopted under Texas law. Alternatively, Spiropoulos argues that the was a mutual mistake rendering the Contract voidable. Finally, Spiropoulos argues that, as a matter of equity, the claim should be awarded to him because Bouboudakis paid no consideration for the *Allapattah* claim.

3. Bouboudakis asserts that the *Allapattah* claim was sold by Spiropoulos as part of the Contract, and, thus, that Bouboudakis is the rightful owner of this claim. Bouboudakis points to the Contract which states, *inter alia*, that Spiropoulos "agrees to sell, transfer and assign or cause to be sold, transferred or assigned to [Bouboudakis] the equipment, goodwill and **all other assets of the business** known as Exxon by the Galleria…" *See*, Contract (emphasis added).

4. It is primarily based upon the above-emphasized language through which Bouboudakis rests his argument that Spiropoulos sold, transferred or assigned the *Allapattah* claim, retaining nothing for himself once the business was sold. Bouboudakis additionally argues the Contract clearly states that the parties agreed to comply with all provisions of the "Texas Business and Commerce Code," and, thus, Texas law should apply to the transfer of assets.

5. In this regard, Bouboudakis argues that Texas law states that a "chose in action"[4] is a conveyable interest and/or asset under Texas law, and, therefore, the "all other assets" provision in the Contract includes the *Allapattah* claim (since the provision is intended to include any and all assets of the business).

6. Bouboudakis separately argues matters for equitable consideration such as the anecdotal evidence[5] that following the sale Bouboudakis was faced with at least two separate vehicles (and their owners) needing "warranty work" relative to services provided previously by Spiropoulos. However, when Bouboudakis contacted Spiropoulos about these two customers, Spiropoulos refused to deal claiming that Bouboudakis bought the station and now "everything belonged to him." The argument being that, following the sale, Spiropoulos wanted nothing to do with any of the liabilities of the station, assuming that he fully sold all assets and liabilities to Bouboudakis, and thus, as a matter of equity, Spiropoulos should not be allowed to now come back in and obtain the benefit of the *Allapattah* claim.

7. As Spiropoulos argued, in his supplemental memorandum, the "claim and [motor fuel] Sales Agreement go hand in hand and whoever has the ownership of the Sales Agreement is the owner of the claim." He further argues that since the relevant motor fuel sales agreement was terminated prior to the sale of the station to Bouboudakis, said rights under that Sales Agreement were not transferred as part of the sale to Bouboudakis, because the Sales Agreement was no longer an asset of the station.

---

[4] The Special Master agrees, and finds, that this *Allapattah* claim is, indeed, a "chose in action" or a "right to sue".
[5] This evidence was not disputed by Spiropoulos at the hearing.

8.     The subject claim has a gross value of $180,765.53 and a net value, after all required reductions, of $127,025.15.

## II.     FINDINGS AND CONCLUSIONS

1.     The undersigned agrees with Spiropoulos' distillation of the issue—namely, that the subject claim and the motor fuels Sales Agreement go hand in hand, and whoever has ownership of the Sales Agreement, or, rather, rights to, or arising out of, the same, is the owner of the claim—however, the undersigned does not agree with Spiropoulos' ultimate conclusion.

2.     Based upon the arguments and submissions of the claimants, the undersigned finds that the Contract did, in this instance, sell, transfer and/or assign any and all assets of the station, including what became the *Allapattah* claim.[6] Specifically, the language in the Contract, as cited above, leaves little to chance, and the undersigned does not find it to be ambiguous based upon the four corners of the document itself.[7]

3.     Under Texas law, a chose in action, or the right to sue to recover a debt, money or thing, is an asset like any other and is transferable. *See, Allen v. United of Omaha*, 236 S.W. 3d 3314, 320 (Tex.App.—Ft. Worth 2007); *Daughters of Charity Health Services of Waco v. Linnstaedter*, 226 S.W. 3d 409, 411 (Tex. 2007). The *Allapattah* claim is a chose in action which is

---

[6] While the Contract did not actually assign the past, terminated Sales Agreement, the Contract did inclusively assign all "other assets of the business" which would include rights arising from the past terminated Sales Agreements, such as the right to assert claims for damages (a chose in action), such as the *Allapattah* claim.

[7] The undersigned does not, and will not, take into account supposed ambiguities created by Spiropoulos' testimony attempting to create ambiguities and thus using parol evidence to create said ambiguities; however, that evidence was taken into account with respect to Spiropoulos' mutual mistake argument, as discussed below.

transferable like any other asset.

4.	In this instance, the station was owed by Spiropoulos, individually, who operated the subject station as a sole proprietorship. Spiropoulos was the individual party with whom Exxon contracted,[8] and thus one could argue that the *Allapattah* claim was held by Spiropoulos in his individual capacity and that it was not an "asset of the business." The undersigned find that this argument fails. Under Texas law, a sole proprietorship has no legal existence outside of its owner, or sole proprietor. *CU Lloyd's of Texas v. Hatfield*, 126 S.W. 3d 679, 684 (Tex.App.—Houston [14th Dist.] 2004); *Ideal Lease Service, Inc. v. Amoco Production Co., Inc.*, 662 S.W. 2d 951, 952 (Tex. 1984); *Holberg & Co. v. Citizens Nat'l Assur. Co.*, 856 S.W. 2d 515, 518 (Tex.App.—Houston [1st Dist.] 1993). Thus, the *Allapattah* claim would be considered an asset of the subject business either in Spiropoulos' individual name, or in the name of "Exxon by the Galleria."[9]

5.	Spiropoulos argued that ¶7 of the Contract would contradict any assertion that legal claims were transferred to Bouboudakis. ¶7 of the Contract states as follows:

> Seller shall discharge any and all business indebtedness on or prior to date of closing. Buyer shall be solely responsible and liable for business debts after date of closing.

6.	Spiropoulos argues that this provision of the Contract contradicts Bouboudakis' position that the *Allapattah* claim was transferred, since it is Spiropoulos' present interpretation that ¶7 of the Contract requires Spiropoulos to be liable for all debts and obligations which occur prior

---

[8] As reflected the "Mutual Termination Agreement and General Release Agreement" between Exxon and Spiropoulos, with effective date of July 5, 1995.
[9] Indeed, the Contract states that it was made by and between Spiropoulos "doing business as Exxon by the Galleria" and Bouboudakis.

closing, and if it were otherwise then Bouboudakis could potentially be liable for counterclaims and other potential liabilities. Yet, it appears that Spiropoulos interpreted this provision differently soon after the sale of the business.

7. According to Bouboudakis, after the sale he was faced with at least two separate vehicles (and their owners) needing "warranty work" relative to services provided previously by Spiropoulos. However, when Bouboudakis contacted Spiropoulos about these two customers, Spiropoulos refused to deal claiming that Bouboudakis bought the station and now "everything belonged to him." Thus, at that time, it appears Spiropoulos interpreted ¶7 of the Contract 180 degrees different from the manner in which he is now interpreting it, when the *Allapattah* claim is at stake. The undersigned finds that Spiropoulos' actions, and earlier apparent interpretation of ¶7 of the Contract, is consistent with all claims and liabilities, and all "other business assets", having been transferred to Bouboudakis as part of the sale, which would include Bouboudakis' right to, and ownership of, the *Allapattah* claim.[10]

8. Spiropoulos further argues that the rule of *ejusdem generis* as adopted in the State of Texas precludes the inclusion of the *Allapattah* claim as part of the "all other business assets" portion of the Contract, citing *Erwin v. Steele*, 228 S.W. 2d 882, 884 (Tex.Civ.App.—Dallas 1950, writ ref, n.r.e.) and *Bloom v. Hearst Entertainment, Inc.*, 33 F.3d 518 (5th Cir. 1994). *Ejusdem generis* states that the meaning of "general" words that follow an enumeration of "particular" or

---

[10] As a matter of pure equity, it would be inequitable to allow Spiropoulos to now change his position with regard to what was transferred or what was not, when he previously took the position, and actions in accordance therewith, that once the station was sold to Bouboudakis, Bouboudakis was liable for the obligations of the business which took place prior to the sale (such as demonstrated by the anecdotal evidence of the warranty work).

"specific" things should be confined to things of the same kind or same.[11] *City of San Antonia v. City of Boerne*, 111 S.W. 3d 22 (Tex. 2003). Spiropoulos argues that the *Allapattah* claim is not included in the phrase "all other business assets" which is a "word" of a general nature following the particular words of designation—namely, "equipment" and "goodwill". Further, it was argued that a legal claim is not of the same kind or class as "goodwill" or "equipment." Therefore, under the principle of *ejusdem generis*, the *Allapattah* claim was not included in the sale, as it could not possibly be included within the transfer of "all other business assets."

9.  Bouboudakis response is that the principle of *ejusdem generis*, when applied to the facts of this case, actually supports the inclusion of the *Allapattah* claim, as the claim does fall into the same kind or class as equipment and goodwill. Equipment is a business asset classified as "tangible personal property." *See*, Black's Law Dictionary 537 (6th ed. 1990) (equipment is tangible personal property used or bought for use primarily in business). "Personal property" is defined as "everything that is subject to ownership not falling under the definition of real estate." *San Antonio Area Foundation v. Lang*, 35 S.W. 3d 636, 640 (Tex. 2000); Tex.Prob.Code §3(z) (personal property is "interests in goods, money, choses in action, evidence of debts and chattels real"). An "asset" is "property." *See*, Tex. Bus. & Comm. Code §24.002(2). Goodwill, too, is a business asset. It is personal property that is "intangible." *See, e.g., Howell v. Bowden*, 368 S.W. 2d 842, 848 (Tex.Civ.App. 1963, writ ref'd, n.r.e.) (goodwill is property); *Black's Law Dictionary*, 695 (6th ed. 1990) (goodwill is an intangible asset). The undersigned agrees with this analysis.

---

[11] "Ejusdem generis" means "of the same kind, class or nature." *Thomas v. State*, 65 S.W. 3d 38 (Tex. Crim. App. 2001).

10. Accordingly, the undersigned finds that the *Allapattah* claim, a chose in action, an intangible asset of personal property, is of the same kind or class as equipment and goodwill which were specifically mentioned in the Contract, and, therefore, the phrase "all other business assets" includes the *Allapattah* claim.

11. Spiropoulos alternatively argues that since neither Spiropoulos nor Bouboudakis knew of the pending Exxon litigation or claim at the time of the sale, there was a "mutual mistake" impacting the same. The undersigned disagrees, based upon the evidence provided (even the extrinsic evidence provided by Spiropoulos and as considered by the undersigned). As such, the undersigned, finds no mutual mistake has been proven by Spiropoulos. *See, e.g., Green v. Morris*, 43 S.W. 3d 604 (Tex.App.—Waco 2001); *see also, White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987).

12. The undersigned makes the findings, hereinabove, based upon both legal and equitable principles, and as such finds for Bouboudakis as the rightful owner of the claim, both in law and in equity.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. Stylianos Bouboudakis (Claim No. 1023302) is the rightful claimant as between these two disputing claimants.

2. The claim of Nikiforos Nick Spiropoulos (Claim No. 1008053) is hereby dismissed with prejudice. With the resolution of this dispute, Class counsel

is permitted to advance the claim of Stylianos Bouboudakis (Claim No. 1023302, in the Claims Administration Process.

3. The Garden City Group, Inc. is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: Nikiforos Nick Spiropoulos (Claim No. 1008053). The Garden City Group, Inc. is directed to treat the Special Master's Order as denying Nikiforos Nick Spiropoulos' Claim No. 1008053.

**DONE AND ORDERED** in Miami, Florida this 4th day of May 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

Joseph A. Scamardi, Esq. (via fax: 713-520-8991)
Anastassios Triantaphyllis (via fax: 713-520-8991)