IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al., )
)
    Plaintiffs, )
)
v. )
)
EXXON CORPORATION, )
)
    Defendant. )
_____)
)
RUSSELL A. CLINE, )
) **CONSOLIDATED WITH**
    Plaintiff, ) **CASE NO.: 05-21338-CIV-GOLD /**
) **SIMONTON**
vs. )
)
THE GARDEN CITY GROUP, INC., )
)
    Defendant. )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C11.6

This cause is before the Special Master pursuant to Class Counsel's Eleventh Motion for Adjudication of Conflicting Claims (Motion C11) **[D.E. 5216]**, and the materials submitted[1] by or on behalf of claimant Forest Park Service, Inc. c/o Paul Weiss (Claim 2541) (hereinafter, "FPS") and claimant Vincent Lopilato (Claim No. 1027745A & B) (hereinafter, "Lopilato").[2]

On January 20, 2009, the Special Master conducted an evidentiary hearing to resolve the

---

[1] Such materials include the original Reply and the responses and documentation attached to the claimants'' respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action."

[2] Vincent Lopilato's claim is split into A & B. For the "B" claim (1027745B), Vincent Lopilato is only claiming 33.33% of the total damage award, whereas Forest Park Service, Inc. is claiming 100% ownership for that time period (11/1/90 to 8/28/94). In fact, Forest Park Service, Inc. is claiming 100% ownership from 5/1/87 through 8/28/94.

conflicting claimant dispute contained in Class Counsel's Motion C11 – specifically, dispute C11.6. The parties to this dispute were FPS and Lopilato. FPS was represented by Todd Steckler, Esq. and Lopilato was represented by Ted May, Esq.

After analyzing the materials submitted by the claimants and their counsel, and having reviewed the Court file, conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

Both claimants, and Exxon, agree that FPS was the direct-served dealer of record for the time period at issue (May 1, 1987 through August 28, 1994). Originally, FPS was fully owned by Vincent Lopilato and Perry Lopilato. Then, on November 1, 1990, pursuant to a Stock Purchase Agreement, Elvin Goris and Paul Weiss each purchased a 1/3 interest in FPS, with the remaining 1/3 interest owned by Vincent Lopilato. Then, on January 19, 2000, pursuant to another Stock Purchase Agreement, Goris and Weiss purchased Lopilato's remaining interest in FPS. Thus, as of January 19, 2000, Goris and Weiss together were 100% total shareholders of FPS. Lopilato owned no remaining shares of FPS after January 19, 2000.

Therefore, the issues presented are whether: (a) Lopilato retains or retained any right to assert a claim to the *Allapattah* damages by virtue of his prior stock ownership of FPS; or (b) Goris and Weiss are the proper individuals who can assert a claim on behalf of FPS because they purchased all of the stock from Lopilato in 1990 and 2000.

Based upon the record, FPS is the rightful claimant and therefore it is the proper entity to receive the award. Moreover, from the documents available, it appears that Goris and Weiss are the only two shareholders who control FPS and in whom rests the right to collect the subject award on behalf of FPS and to direct payment from FPS to its current stockholders. Lopilato did not retain any

personal interest in the subject claim as he sold the entirety of his interest and ownership in the FPS shares.

This conclusion is buttressed by the record which demonstrates that the two Stock Purchase Agreements (dated November 1, 1990 and January 19, 2000) do not reserve or hold back any claims in favor of Lopilato relating to the *Allapattah* claim, or any other claim for that matter. Rather, the agreements make clear that the seller (Lopilato) of the shares retained no claims or interest. For example, at Paragraph 1 "Transfer of Shares" from the November 1, 1990 Stock Purchase Agreement, it is stated, in pertinent part, as follows:

> Said certificates shall be accompanied by stock powers duly executed by Seller in blank, together with such other documents necessary to deliver to Buyer good and valid title to the Shares, free and clear of any security interests, claims, liens, pledges, options, encumbrances or restrictions whatsoever.

Additionally, Paragraph 11 (Representations and Warranties of Seller) states, in pertinent part, as follows:

> Seller represents and warrants to and agrees with Buyer that except as otherwise set forth or referred to in this Agreement:
> * * *
> (b)(ii) Except as set forth in Schedule "C" hereof, the Seller is the sole record and beneficial owner of the issued and outstanding shares of the Corporation, in each case free and clear of all liens, claims, charges, equities, encumbrances, restrictions, options and voting or other agreements of every kind.

For further example, the January 19, 2000 Stock Purchase Agreement, at Paragraph 5 (Representations and Warranties), recites, in pertinent part, as follows:

> The Seller represents and warrants as follows: (a) he is the owner, free and clear of any encumbrances, of the Shares; (b) he makes no claim (x) to the assets presently owned or to be acquired in the future

> of the Corporation and (y) specifically to a loan allegedly due him as
> set forth on the financial records of the Corporation...

As a final note, Lopilato raises two good questions in papers he filed prior to the hearing and which he raised at the hearing in one form or another. He asserts that the Stock Purchase Agreements of 1990 and 2000 do not answer the following two questions:

> a. Whether a transfer of the shares of a corporation automatically effect a transfer of rights (choses in action) which accrued prior to the transfer where the chose in action is a claim for damages sustained by the corporation and its shareholders prior to the transfer and the sales agreement is silent on this issue; and,
>
> b. Is the answer to the above affected by the fact that the shares were held in escrow pending payment of the sales price and that the final payment and the release of the shares from escrow followed the accrual of the right to the payment to the corporation?

In response to the first question, the Stock Purchase Agreements do address this issue, in the sense that the stock is represented to be free of all claims, encumbrances, etc. and there was no reservation of any rights by Lopilato.

In response to the second question, if the shares were still in escrow while both parties were battling the present issue and a payment was ordered as part of this process, then any such payment would be made to the escrow agent who would hold the money in escrow pending completion of the Stock Purchase Agreements (in accordance with the terms of those agreements). However, since all payments have admittedly been made as of March 2007 and there does not appear to be any default of either of the Stock Purchase Agreements, then the stock certificates were presumably transferred (or should have been) by the escrow agent to Goris and Weiss on or near March 2007. *See*, ¶¶1 and 6A of the November 1, 1990 Stock Purchase Agreement and ¶3 of the January 19, 2000 Stock

Purchase Agreement.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. Forest Park Service, Inc. c/o Paul Weiss (Claim 2541) is the rightful claimant as between these two disputing claimants.

2. The claim of Vincent Lopilato (Claim No. 1027745A & B) is hereby dismissed with prejudice. With the resolution of this dispute, Class Counsel is permitted to advance the claim of Forest Park Service, Inc. c/o Paul Weiss (Claim 2541) in the Claims Administration Process.

3. The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: Vincent Lopilato (Claim No. 1027745A & B). The Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim with respect to Vincent Lopilato (Claim No. 1027745A & B).

**DONE AND ORDERED** in Miami, Florida this ___ day of May, 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record