IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al.,   )
                                      )
                                      )
       Plaintiffs,                    )
                                      )
v.                                    )
                                      )
EXXON CORPORATION,                    )
                                      )
Defendant.                            )
_____)
                                      )
RUSSELL A. CLINE,                     )
                                      )                **CONSOLIDATED WITH**
       Plaintiff,                     )                **CASE NO.: 05-21338-CIV-GOLD/**
                                      )                **SIMONTON**
vs.                                   )
                                      )
THE GARDEN CITY GROUP, INC.,          )
                                      )
Defendant.                            )
_____)

## ORDER REGARDING REQUEST FOR POSITION PAPERS REGARDING THE FIVE PERCENT RESERVE AND RELATED ISSUES

THIS CAUSE is before the Special Master upon the Plaintiffs' *Motion for Authorization to Distribute 5 Percent Reserve and Interest* **[D.E. 5613]**; the District Court's *Order of Reference to the Special Master* **[D.E. 5622]**; States' Counsel's *Motion Relating to Special Master's Report and Recommendation for the Court to Issue a Clarification of the Disposition of Forfeited Funds, and Agreed Request to Set a Briefing Schedule* **[D.E. 5507]**; States' Counsel's *Position Paper Regarding the Distribution of the Forfeited Funds* **[D.E. 5532]**; *Omnibus Order Regarding Distribution of the 5 Percent Reserve and Interest* **[D.E. 5541]**; Class Counsel's *Position Paper Regarding the*

*Disposition of Forfeited Fees and Award* on March 12, 2009 **[D.E. 5634]**; *States' Counsel's Supplemental Position Paper Regarding the Distribution of the Forfeited Funds* **[D.E. 5641]**; *Allied Esquire Group, Inc.'s Memorandum Regarding Disposition of Partially Forfeited Fees Award of Bowen and Forfeited Incentive Award of William McGillicuddy* **[D.E. 5639]**; *States' Counsel's Response to Allied Esquire Group's Memorandum Regarding Disposition of Partially Forfeited Fee Award of Bowen and Forfeited Incentive Award of William McGillicuddy* **[D.E. 5655]**; and, *States' Counsel's Response to Order Regarding Plaintiffs' Motion for Authorization to Distribute Five Percent Reserve and Interest and Regarding the Issue of the Proper Disposition of the Partially Forfeited Attorneys' Fees and Forfeited Incentive Award* **[D.E. 5705]**.

During the undersigned's review of the materials relating to the request for authorization to pay the 5% Reserve and the States' motion for distribution of the forfeited fees and award, potentially significant issues arose: (1) First, it would appear that the Fund bears an obligation to pay a "2% Reduction" amount to the States (approximately $21.2 million) for the benefit of all non-filing dealers, prior to the Fund's payment of the 5% Contingency Reserve and Interest (pending availability of funds); and, (2) Second, with regard to the forfeited fees and award issue, the undersigned still needs additional information from States' Counsel before making any recommendation to the District Court that the July 6, 2006 Order should be clarified, or otherwise modified due to equitable considerations, regarding the proper disposition of the forfeited fees and award.

Returning to the main issue about the 2% Reduction and the 5% Contingency Reserve, it is acknowledged that neither Class Counsel nor (more importantly) States'

Counsel have previously raised the 2% Reduction amount as an issue. The specific issue in this regard is whether the 2% Reduction amount must be distributed to the States – for the benefit of non-filing dealers – before considering whether there will be sufficient funds to pay the full amount of the 5% Contingency Reserve (and interest) to the participating claimants. Irrespective of the fact that neither Class Counsel nor States' Counsel have raised this issue, the undersigned has his own duty to the Settlement Fund and the Class Members as a whole to make all possible best and good faith efforts to ensure that the intentions of the Settlement Fund are properly realized and effectuated. Accordingly, the undersigned now raises this issue as one which must be resolved before payment of the 5% Contingency Reserve is authorized, so as to ensure available funds to pay the 2% Reduction.

### A. 5% Contingency Reserve and 2% Reduction

With regard to the 2% Reduction consideration, the undersigned has reviewed, in detail, the Settlement Agreement, the January 30, 2006 Amended Report and Recommendation **[D.E. 2607]**, and the District Court's Order based upon the same **[D.E. 2773]**. Additionally, undersigned has reviewed the numerous early financial estimate projections for the Fund, as well as certain Proforma statements provided to the Court, in which the 2% Reduction was clearly a separate and distinct figure, and accounted for (initially) in a separate manner.

Based upon the undersigned's review, it seems clear that a 2% Reduction amount of the total Fund (approximately $21.2 million) was required to be set aside for the benefit of the non-filing dealers and the States (on the non-filing dealers' behalf). Further, it appears that the intent was for the 5% Reserve Contingency (as its name

implies) to be used to offset any shortfall which existed (and which might increase during the claims process) between the amount of available settlement funds, as initially deposited, and the total filed claims made during the process. *See*, D.E. 2607, pgs. 14 – 18. For each claim, the total 100% value would first be reduced by 2%, then by 5% for the Contingency Reserve leaving a total of 93% of the claims value to be paid during the initial payment process. *See*, ¶4(g)(ii), *Settlement Agreement*.

It is noted that certain decisions to be made in the future[1] will have a direct effect upon whether to pay the 2% Reduction and the 5% Contingency Reserve. It is very possible that at the end of this entire process (following a potential recovery from the IRS), there will be sufficient funds to pay the 2% Reduction and the 5% Contingency Reserve (with interest). However, at present, if the 2% Reduction is indeed a direct, superseding obligation of the Fund, an issue exists whether the 5% Contingency Reserve should be paid at this time, so that there are available funds to pay the 2% Reduction to the States at the end of the process. At the very least, a delay in payment of the 5% Contingency Reserve, or some part thereof, must be considered. The undersigned acknowledges that the April 14, 2009 Order **[D.E. 5682]** indicated that sufficient monies existed. To that extent, this determination was my initial decision before the issue regarding the 2% Reduction was fully realized.

Accordingly, the undersigned will need position papers to be filed by both Class Counsel and States' Counsel on the issues raised regarding the 2% Reduction and payment of the 5% Contingency Reserve. Following receipt of these position papers, the

---

[1] For example, the status and eventual outcome of the IRS tax litigation with the Fund (and any potential refund associated therewith), the amount of interest (if any) to be award to Class Counsel, and the disposition of the forfeited fees and award.

undersigned will conduct a hearing and will thereafter issue a Report and Recommendation to the District Court for consideration and approval.[2]

### B.   States' Motion for Distribution of Forfeited Fees and Award

Following the hearing on April 14, 2009, the undersigned issued an order seeking additional information from States' Counsel in support of their request. *See*, **D.E. 5682**. On or about May 12, 2009, States' Counsel filed their response. See, **D.E. 5705**. The materials and arguments provided in the response do not fully address or suggest that the non-filing dealers will, or can, be identified such that the forfeited fees and award have a high or best likelihood of being distributed to the non-filing dealers' hands.

States' Counsel has taken some initial steps to identify certain non-filing dealers who might receive these funds, but a more complete identification[3] is needed (to show that a significant portion of these dealers can be identified and money actually distributed to them). The procedures described in States' Counsel's response **[D.E. 5705]** are a good start.   In this regard, the States propose to send notice to the individual or entity associated whom they can identify as a non-filing or non-participating dealer.[4] A copy of a proposed notice was not provided. The undersigned would like to consider this notice. Additionally, there should be some discussion whether the draft notice would be the same for all thirty-five (35) states (and if not, there should be a discussion of how exactly the

---

[2] After receiving the position papers requested and hearing argument on the same, if the undersigned determines that the 2% Reduction is (and was) not a sacrosanct amount to be reserved to the States, then the Report and Recommendation will include a recommendation for authorization to pay the 5% Contingency Reserve and interest. However, if the undersigned still views the 2% Reduction as an amount which is (and was) sacrosanct and was not subject to depletion (prior to any depletion of the 5% Contingency Reserve), then the Report and Recommendation to the District Court will pertain solely to the 2% Reduction issue with a recommendation that the payment of the 5% Contingency Reserve wait until the Fund can ensure that the 2% Reduction amount is fully funded and paid.

[3] By "identification," I mean specific identification of individuals and/or entities who have a claim, not simply identification by total unclaimed gallonage, if possible.

[4] The States report that there are still unclaimed gallons at 2,656 stores involving 3,066 dealer account numbers, and the States propose to send notice to each of these 3,066 dealer account numbers.

notices will differ). Furthermore, the undersigned needs to understand the proposal of the states when no response is initially received, or if the states are advised of a bad address.

Additionally, there are a number of claimants, known to States' Counsel, who tried to file a claim in this matter but who were dismissed as untimely, non-responsive, or otherwise simply did not file because they were told it was too late. To the extent those types of claimants exist and the amount of their claim is known or estimable, then it would be helpful to have those claimants identified separately on the final list of identifiable dealers who might receive these funds.

Further, States' Counsel advises that they are "of the belief" that: (a) most if not all of the unclaimed property statutes **mandate** the inclusion of identifying information in connection with the transfer of unclaimed funds to the particular States' unclaimed property department;[5] and, (b) the holder of the unclaimed property (at least under the Florida statutes) is obliged to use due diligence to attempt to locate owners of the unclaimed property **prior to** its transfer to the state. The undersigned is obligated to inquire what other states have a similar requirement, and whether this identification process is an obligation of the Fund. If so, and if this expense is to be borne by the Fund, then these additional expenses need to be taken into consideration in the projected financial estimates, before any payment of the 5% Contingency Reserve. States' Counsel indicates that they are best situated to provide the notice required, etc., as opposed to the Claims Administrator.

---

[5] Incidentally, based upon this statement by counsel, if there is any "Remaining Balance" after payment of all Fund obligations, it appears that the States would need to identify particular claimants along with a particular States' pro rata distribution. As of this date, it does not appear a methodology has been determined or approved by the 35 States (I acknowledge sufficient time has not been allowed for this, at this point). It is this same methodology that I want to see with respect to those claimants who might get the forfeited fees and awards.

Accordingly, it is hereby:

**ORDERED and ADJUDGED** as follows:

1. Within thirty (30) days of the date of this Order, Class Counsel and States' Counsel shall file their respective position papers, directed to the issues set forth and described above.

2. The Garden City Group, Inc. shall post this order, in a prominent manner, on the Exxon Dealer Class Action website so that any and all interested parties and claimants are put on notice of the issues raised herein.

3. Upon receipt of the various position papers, the undersigned will set a hearing on the above-described issues by separate order. Any and all interested parties and claimants will be allowed to attend.

4. Following the hearing, a Report and Recommendation will be issued to the District Court.

**DONE AND ORDERED** in Miami, Florida this 23rd day of June, 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
The Garden City Group, Inc.
All counsel of record