IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

| | |
|---|---|
| ALLAPATTAH SERVICES, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EXXON CORPORATION, )<br>)<br>Defendant. )<br>_____ )<br>)<br>RUSSELL A. CLINE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE GARDEN CITY GROUP, INC., )<br>)<br>Defendant. )<br>_____ ) | **CONSOLIDATED WITH**<br>**CASE NO.: 05-21338-CIV-GOLD /**<br>**SIMONTON** |

## AMENDED ORDER REGARDING DISPUTED CLAIM D4.9 (CLAIM # 2555)

THIS CAUSE is before the Special Master upon Class Counsel's *Second Amended Fourth Motion for Adjudication of Disputed Claims (Motion D4)* **[D.E. 5237]**; the Special Master's *Amended Order Setting Hearings for D4 Claims* **[D.E. 5249]**; *Memorandum in Opposition to Claim 2555 (Dispute D4.9)* **[D.E. 5383]**; *Memorandum in Support of Claim of Betty Murphy Claim #2555 Station #55550* **[D.E. 5619]**; *Reply to Memorandum in Opposition of Claim of Betty Murphy Claim #2555 Station #55550* **[D.E. 5451]**; *Order Regarding Disputed Claim D4.9 (Claim #2555)* **[D.E. 5474]**; *Supplemental and Amended Reply to Memorandum in Opposition of Claim of Betty Murphy Claim #2555 Station #55550* **[D.E. 5569]**; *Sur-Reply Regarding Claim 2555 (Dispute D4.9)* **[D.E. 5522]**; and any and all additional materials filed of

record and/or as contained within the database maintained by the Claims Administrator.

I.   **Background and Arguments of Claimant and States' Counsel**

On November 19, 2008, the undersigned conducted an evidentiary hearing regarding dispute D4.9. The claimant in this dispute is Betty Murphy (Claim No. 2555). The States oppose the claim. The claimant was represented at the hearing by Sarah Sheppeard, Esq. The States were represented by Kenneth Winters, Esq.

Following the hearing, the undersigned took the matter under advisement to further review the submissions of the parties, the arguments made at the hearing, and the post-hearing supplemental arguments and documentation submitted by the claimant and States' Counsel.

Thereafter, on November 26, 2008, the claimant requested additional time to provide the supplemental documentation and memorandum. Pursuant to the undersigned's *Order Regarding Disputed Claim D4.9 (Claim #2555)* **[D.E. 5474]**, the claimant was allowed an extension until December 11, 2008 to submit supplemental documentation and an optional memorandum "**evidencing the position [taken at the hearing] that G&B, Inc. paid for the subject Exxon motor fuel as a direct served dealer**." States' Counsel was allowed until December 18, 2008 to submit its memorandum in response.

The time period for this claim is from December 31, 1989 to July 1, 1992. There is no dispute that the dealer of record – the one listed within the November 2, 1990 Exxon Sales Agreement for the purchase of motor fuel – was Guerry Murphy, individually. The claimant asserts, however, that the subject station was operated through a Tennessee corporation, G&B, Inc., which did business as "Cedar Springs Exxon." G&B, Inc., according to the claimant, was created on January 4, 1990 and finally dissolved on September 17, 1993.

The claimant asserts that, during the claim period, she was a fifty-one percent (51%)

owner of the G&B, Inc. stock and Guerry Murphy was the remaining forty-nine percent (49%) owner, until the time Guerry Murphy turned over his stock and the operation of the station to the claimant. At that point, in 1992, the claimant became the one-hundred percent (100%) owner of the stock when Guerry Murphy allowed the corporation to redeem his entire share of stock (49%). The claimant asserts that this ownership change is evidenced by a document entitled "*Statement by G&B, Inc. of Election Under IRC §1377(a)(2)*." This document was signed by Guerry Murphy as President of G&B, Inc., and confirms that his entire shareholder interest in the corporation was terminated as of 1992 (though the month and day of said termination were left blank, and there is no other indication of a date anywhere else on the document).

An additional nuance to this dispute is that Guerry Murphy filed for bankruptcy in the Eastern District of Tennessee in August of 2004.[1] According to the claimant no mention was made of the *Allapattah* claim in the bankruptcy filings. The claimant reasoned that Guerry Murphy made no mention of the claim because he gave up his stock in the corporation in 1992. Yet, on December 13, 2007, Guerry Murphy executed an assignment of the subject claim in favor of the claimant (a claim which he did not apparently possess, according to the claimant, due to his complete relinquishment of G&B, Inc. stock in 1992, and a claim which was never disclosed in his bankruptcy proceeding).[2]

---

[1] Guerry Murphy has not filed a claim in this proceeding; however, he was mailed a claim package regarding the claims in this matter on June 4, 2004. His bankruptcy proceeding was filed in August of 2004. The close proximity between the date the claim packet was mailed to Guerry Murphy and the date he filed for bankruptcy raises some questions; however, based upon the record and testimony in this matter, the undersigned finds that the claimant had no knowledge of or participation with Mr. Murphy's bankruptcy filing or any seeming attempt to prevent the bankruptcy trustee from obtaining a right to the instant *Allapattah* claim.

[2] The claimant asserts, in her *Supplemental and Amended Reply to Memorandum in Opposition of Claim of Betty Murphy Claim #2555, Station #55550* [D.E. 5569], that it was Class Counsel who requested that Guerry Murphy sign the assignment. Based upon the documentation in the record, it does appear that Class Counsel prepared the assignment for the claimant and Mr. Murphy; however, it also appears that Class Counsel was unaware of Mr. Murphy's pending bankruptcy (though, Mr. Murphy himself was fully aware of his bankruptcy when he signed the

It is noted that the claimant has not provided documentation to show that the subject *Allapattah* claim was ever transferred or assigned to G&B, Inc. and/or the claimant, individually, by Guerry Murphy. The Exxon Sales Agreement, from which the *Allapattah* claim arises, was between Exxon and Guerry Murphy, individually. That is undisputed. Nonetheless, the claimant's position is that G&B, Inc. was the entity which actually paid for the subject motor fuel, not Guerry Murphy, irrespective of the fact that Guerry Murphy was the signatory to the Exxon Sales Agreement and the noted dealer of record. Yet, at the hearing, the claimant was unable to establish that G&B, Inc. was the actual entity which paid for the subject motor fuel. The difficulty in doing so appeared to stem from the fact that so much time has passed since the dissolution of G&B, Inc. making records hard to locate. As such, and as mentioned, following the hearing the undersigned allowed time for the claimant to locate and provide additional documentation and argument on the issue of whether G&B, Inc., and not Guerry Murphy, was the party that paid for and sold the subject motor fuel.

As part of her supplemental submission following the November 19, 2008 hearing, the claimant explained that providing the necessary records (*e.g.*, cancelled checks, invoices, etc.), to show that G&B, Inc. paid for the fuel, was problematic because records were not maintained over the past sixteen (16) years. Instead, the claimant provided the 1992 federal income tax return for G&B, Inc., along with the Affidavit of E.P. (Pete) Goodwin, the former bookkeeper and tax return preparer for G&B, Inc.

The 1992 federal income tax return for G&B, Inc. shows that as of the date of filing the tax return (it was prepared on March 13, 1993), Betty Murphy was 100% owner of G&B, Inc.

---

assignment). The claimant asserts that she was unaware of Guerry Murphy's bankruptcy until this very dispute, when it was raised by States' Counsel. *D.E. 5569, pg. 2.*

Accordingly, Ms. Murphy argues that she is the rightful claimant to the *Allapattah* damages. She became the full 100% owner of G&B, Inc. at some point during 1992 (the specific date in 1992 is not clear).

The claimant also provided the Affidavit of E.P. (Pete) Goodwin, the former bookkeeper of G&B, Inc. who prepared the 1992 federal income tax return for G&B, Inc. Mr. Goodwin attests that he prepared the tax returns for the corporation and that he reviewed the books and records of the corporation. He further attests that the cost of the fuel was a major portion of the costs of goods sold shown on line 2 of the tax returns. According to Mr. Goodwin, the fuel costs used for the tax returns were obtained (at the time of the preparation of returns) from cancelled checks of G&B, Inc. and/or billings from Exxon.[3] Finally, Mr. Goodwin attests that Guerry Murphy did not personally, individually, or through some other entity purchase the fuel for the station. *D.E. 5569*, pg. 3 and Affidavit of E.P. Goodwin attached thereto. The Affidavit has not been refuted or challenged.

## II.     Findings and Conclusions

The claimant's supplemental documentation and argument leads the undersigned to find, in the absence of argument, documentation or evidence to the contrary,[4] that G&B, Inc. was the

---

[3] States' Counsel has asserted that Exxon has been unable to locate any cancelled checks, or sample checks that may have been used for automatic payment, which would indicate the identity of the owner of the account used to pay for the motor fuel. *See, Sur-Reply Regarding Claim 2555 (Dispute D4.9)* [**D.E. 5522**].

[4] Additionally, States' Counsel's final *Sur-Reply Regarding Claim #2555 (Dispute D4.9)* notes the following:
> Upon additional review and consideration of the documentation that has been so furnished, and also in light of the fact that Exxon's records are devoid of documents that would otherwise indicate the actual source of the payment for the motor fuel, States' Counsel does not actively oppose the claim and submits to the Special Master's determination based on the submissions that are before him. States' Counsel does note, however, that if the claim is approved it appears that the claimant should be G&B, Inc.

*D.E. 5522*, pg. 2.

actual entity which bought, paid for and sold the subject Exxon motor fuel. This finding is made irrespective of the undisputed fact that Guerry Murphy was the dealer of record and the individual party to the Exxon Sales Agreement. Therefore, based upon the record before the undersigned, the undersigned finds that G&B, Inc. is the proper claimant. However, the claim filed here is not on behalf of G&B, Inc. Rather, the claim is filed and maintained by Betty Murphy, individually, as reflected by the Proof of Claim[5] and Reply. On this point, States' Counsel argues that if the claim is approved, the proper claimant should be G&B, Inc., not Betty Murphy individually. *See*, fn. 4, *supra*.[6]

The undersigned disagrees. At the hearing, it was presented by claimant's counsel that G&B, Inc. was administratively dissolved on September 17, 1993. *See, Hearing Transcript*, pg. 80:14-20. The documents submitted by the claimant confirm that G&B, Inc. was administratively dissolved on said date. *See*, D.E. 5619, *Exhibit 1*.[7] This dissolution was at a time after the claimant became the 100% owner of the G&B, Inc. stock, sometime in 1992. Since the corporation was administratively dissolved and the claimant was the sole shareholder at the time of dissolution, this claim belongs to Betty Murphy. *See e.g.,* KHB Holdings, Inc. v. Duncan, 2003 WL 21488268 (Tenn.Ct.App. 2003)("When a corporation is administratively dissolved, the assets of the corporation pass to its shareholders"), *citing, Jesse A. Bland Co. v.*

---

[5] At first, the Proof of Claim lists the "dealer name" as "G&B, Inc. Cedar Springs Exxon"; however, the claimant is listed as "Betty Murphy" and is checked of as "individual."

[6] At the hearing, the claimant's counsel asserted that "under Tennessee law, as the sole shareholder, [Betty Murphy] succeeds to any assets of the corporation, which would include this claim." *Hearing Transcript*, pg. 74, lines 15-17. However, counsel has cited no authority in support of this proposition. Additionally, the claimant's counsel asserted that there was a divorce between Betty Murphy and her husband resulting in "...a Tennessee decree that says that this claim belongs to her as opposed to anybody else." *Hearing Transcript* at pg. 78, lines 11-14. To date, no such documentation has been provided, despite the abundant opportunities to do so. Without more, it is unclear how such a decree would or could vest such rights in Betty Murphy.

[7] Additionally, the 1992 tax return reveals that G&B, Inc. only operated for ten (10) months in 1992, and as of the end of 1992 it was no longer in operation.

*Knox Concrete Prods., Inc.,* 207 Tenn. 206, 338 S.W.2d 605, 607-08 (Tenn.1960).

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

The claim of Betty Murphy, individually, (Claim No. 2555) is ALLOWED.

Class Counsel is directed to include this claim in a motion for summary judgment.

**DONE AND ORDERED** in Miami, Florida this ___ day of June, 2009.

SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

Sarah Sheppeard, Esq. (via facsimile – 865-637-7300)