IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al.,            )
                                              )
     Plaintiffs,                              )
                                              )
v.                                            )
                                              )
EXXON CORPORATION,                            )
                                              )
     Defendant.                               )
_____)
                                              )
RUSSELL A. CLINE,                             )
                                              )       **CONSOLIDATED WITH**
     Plaintiff,                               )       **CASE NO.: 05-21338-CIV-GOLD /**
                                              )       **SIMONTON**
vs.                                           )
                                              )
THE GARDEN CITY GROUP, INC.,                  )
                                              )
     Defendant.                               )
_____)

## ORDER REGARDING DISPUTED CLAIM D4.8 (CLAIM # 104202)

THIS CAUSE is before the Special Master upon Class Counsel's *Second Amended Fourth Motion for Adjudication of Disputed Claims (Motion D4)* **[D.E. 5237]**; *Memorandum in Opposition to Claim 102402 (Dispute D4.8)* **[D.E. 5382]**; *Notice of Filing (*letter containing supplemental argument and documentation by claimant) **[D.E. 5608]**; *States' Counsel's Notice of Filing* (letter regarding supplemental opposition) **[D.E. 5468]**; and any and all additional materials submitted[1] by, or on behalf of, the various claimants.

---

[1] Such materials include the original Replies and other documentation contained within the database maintained by the Claims Administrator, as well as the additional supplements provided by the claimants.

## I. Background

On November 19, 2008, the Special Master conducted an evidentiary hearing to resolve the disputed claim in D4.8. The claimant in this dispute is Gevork Boyadzhyan (Claim No. 104202) ("Boyadzhyan"). The States oppose the claim. The claimant was represented at the hearing by Martin Covitz, Esq. The States were represented by Kenneth Winters, Esq.

Boyadzhyan claims entitlement to the award because he was the president of the dealer corporation, A&H of New Jersey, Inc., and owner of shares of stock during the time period of the claim. Boyadzhyan no longer owns shares of the corporation. A&H of New Jersey, Inc.'s current "owner" has not filed a claim. The time period for the subject claim is from March 1, 1992 to August 28, 1994.

Following the hearing on November 19, 2008, the undersigned took the matter under advisement to further review the submissions of the parties, the arguments made at the hearing, and the supplemental arguments and documentation submitted by both the claimant and States' Counsel following the hearing. At the hearing, the claimant Boyadzhyan indicated there was a letter determinative of the outcome in this dispute, and the date of which raised an issue. He was given additional time to provide the letter to the undersigned along with a memorandum.

Boyadzhyan's proof of claim stated that the dealer was A&H of New Jersey, Inc. and that he "owned the corporation" during the period for this claim. **The dealer of record on the Exxon Sales Agreement was A&H of New Jersey, Inc.**, and A&H of New Jersey, Inc. commenced operation of the subject station on March 1, 1992.

The question initially raised in this dispute is who actually owned A&H of New Jersey, Inc. during the period of this claim. Exxon's records indicate that the ownership of A&H of New Jersey, Inc. changed during the claim period. However, at no point do the records show

that Boyadzhyan was ever a majority (much more, the "sole") shareholder in A&H of New Jersey, Inc. As of March 1992, according to the Exxon Key Person Clause, Boyadzhyan was an equal co-owner of A&H New Jersey, Inc. with "Gevork Boyadjian" (the claimant's cousin).

As of July 1994, just prior to the end of the claim period, Gevork Boyadjian was no longer a co-owner with the claimant (Boyadzhyan); however, in or about July of 1994, Bilal Demirok and Sally Vedutis became the co-owners of A&H of New Jersey, Inc. with the claimant (Boyadzhyan) in place of Gevork Boyadjian.

In or around February 1995, the claimant sold his interest (stock shares) in A&H of New Jersey, Inc. to Bilal Demirok and Sally Vedutis, and ceased to have any interest in the corporation.

## II.    Positions of Claimant and States' Counsel

### A.    Position of Claimant

The claimant asserts that he is entitled to 100% of the total *Allapattah* award at issue, as a former owner of the corporate stock in A&H of New Jersey, Inc., which corporation he formed in 1992. Further, the claimant believes that even when he sold his stock interest in the corporation, in February 1995 (purportedly incident to the June 6, 1994 Agreement), he specifically retained the right to assert the present claim.

On November 21, 2008, Boyadzhyan's counsel submitted his supplemental "memorandum" in the form of a letter, accompanied by an Affidavit of Kevork Boyadzhyan and the "Side Letter Agreement" relied upon during the November 19, 2008 hearing. Counsel argues it is evident from the Affidavit and Side Letter Agreement that "when the Boyadzhyan/Boyajian cousins sold the stock to Sally Vedutis and Bilal Demirok, they reserved the Corporation's rights to themselves of any recovery in this lawsuit." *See, D.E. 5608*, Letter dated November 21, 2008.

The "Affidavit of Kevork Boyadzhyan" asserts the following:[2]

a. He and his cousin, Kevork Boyajian, formed A&H of New Jersey, Inc.;
b. In June of 1994, they contracted with Sally Vedutis and Bilal Demirok to sell the business through a transfer of stock of A&H of New Jersey, Inc.;
c. Simultaneously with the execution of the Agreement of Sale, a separate "Side Letter" was signed by all granting the claimant and his cousin the rights to any recovery in the *Allapattah* lawsuit;
d. The claimant asserts that he heard about the *Allapattah* lawsuit from another Exxon Dealer, and since Exxon had to approve of the sale of the business/station to Vedutis and Demirok, it was decided to deal with the rights to the lawsuit separately; and,
e. The claimant's cousin resigned from A&H of New Jersey, Inc. and his stock was transferred directly to Vedutis and Bilal.

The "Side Letter to Agreement" dated June 6, 1994 states as follows:

Seller: Gevork Boyadzhyan and George Boyajian
Buyers: Sally Vedutis and Bilal Demirok

Re:   A&H of New Jersey, Inc.

The Buyers have been informed that there is now pending a certain claim or lawsuit in the Florida Federal Court, Southern District, (class action) and A&H of New Jersey, Inc. is a member of the class. Seller was the owner of A&H during the period of the claim, and Buyers agree that they have no rights to any recovery in that lawsuit and the claim belongs to Seller.

/s/ Sally Vedutis
/s/ Bilal Demirok
/s/ Gevork Boyadzhyan
/s/ George Boyajian

Accordingly, the claimant argues that this Side Letter Agreement to the main June 6, 1994 sale Agreement reserved any and all of claimant's rights to recovery of the *Allapattah* damages. Claimant argues this despite the fact that his cousin, Boyajian, sold and/or transferred his stock to the "Buyers" in July of 1994, and the claimant did not do so until approximately

---

[2] Note that the Affidavit names "Kevork Boyadzhyan" and is signed by "Gevork Boyadzhyan." The Proof of Claim also lists "Gevork Boyadzhyan" as the claimant. It would appear that "Kevork Boyadzhyan" and "Gevork Boyadzhyan" are the same.

February of 1995.[3]

### B. States' Counsel's Position

In response to the claimant's supplemental submission, States' Counsel filed its letter memorandum. *See, D.E. 5468*. States' Counsel agrees there is no dispute that the dealer of record was A&H of New Jersey, Inc. States' Counsel takes issue with the claimant's assertion that the June 6, 1994 Agreement provided for the sale of stock between the claimant and Kevork Boyajian (as Sellers) and Sally Vedutis and Bilol Demirok (as the Buyers). States' Counsel points out that the June 6, 1994 Agreement, which was attached as Exhibit F to their Memorandum in Opposition, only provides for the sale of Kevork Boyajian's interest to Vedutis and Demirok; it does not provide for the sale of the claimant's interest (50% of A&H of New Jersey, Inc.) to Vedutis and Demirok. States' Counsel is correct.

States' Counsel further argues that Exhibit E to the Memorandum in Opposition shows that by no later than July 6, 1994, Vedutis and Demirok were each 25% shareholders of A&H of New Jersey, Inc., which was a result of Boyajian's transfer of 50% total stock shares pursuant to the Agreement.

The claimant asserts that he actually transferred his 50% remaining interest in A&H of New Jersey, Inc. to Vedutis and Demirok in February 1995, once Exxon approved the transfer (See Exhibit F to the Memorandum in Opposition).

States' Counsel argues that the real reason for the purported Side Letter Agreement is not entirely clear. The claimant asserts that the June 6, 1994 Side Letter Agreement was created separate from the June 6, 1994 Agreement for the stock sale of A&H of New Jersey, Inc., to

---

[3] See discussion *infra* regarding State's Counsel's correct observation that the claimant's shares of stock were not a part of the June 6, 1994 sale Agreement; rather, only Boyajian's shares were subject to sale through the Agreement.

avoid Exxon refusing consent to the transfer. However, the Agreement for sale of stock unambiguously states that Boyajian "does hereby convey and transfer" his share to Vedutis and Demirok,[4] and it raises a question about the intent to obtain Exxon's consent to the transfer. In this regard, the claimant asserts that the Exxon approval was obtained in February 1995, at which time the claimant transferred his interest to Vedutis and Demirok. However, in actuality argues States Counsel, the transfer from Boyajian occurred less than a month after the June 6, 1994 Agreement's execution (*i.e.*, in July of 1994), and the Agreement did not include any provision for the sale of claimant's interest. Hence, it is unclear of the real reason behind the purported Side Letter Agreement.

States' Counsel also argues, as it did during the November 19, 2008 hearing, that the corporation was not a party to the Side Letter Agreement. Further, as the corporation was the owner of the claim and the party to the applicable Exxon Sales Agreement, the corporation needed to approve of any transfer; however, there is no evidence of any specific written approval by the corporation. The claimant asserts this argument is not appropriate, as it is merely form over substance. Nonetheless, States' Counsel argues that the corporate formalities must be observed under New Jersey law.

### III.   Findings

Initially, the undersigned is troubled by the Side Letter Agreement. First, it would seem that the Side Letter Agreement is an extremely key document, at least from the claimant's perspective relating to preservation of the specific *Allapattah* claim.[5] Yet, the claimant never

---

[4] Whereas, the Agreement states that the claimant shall retain his 50% ownership of the stock.

[5] However, States' Counsel raises a good point that this Side Letter Agreement, which is supposed to be a contemporaneous, controlling side agreement to the main June 6, 1994 Agreement, appears to have nothing really to

produced this document as part of his original Proof of Claim, his Reply, or any other filing relating to this case, until after the hearing on November 19, 2008. This document was first mentioned at the November 19, 2008 hearing. The claimant's explanation was that he "had forgotten about it." *See, Affidavit of Kevork Boyadzhyan.*

Respectfully, this explanation does not seem very credible. It is bewildering how the claimant can simply forget about the very document which may actually provide him with the keystone to his claim. A second troubling issue about the Side Letter Agreement is that its authenticity is in question, or at least not established by the claimant. Specifically, there has been no testimony (or affidavits) from any of the other three purported signatories to the Side Letter Agreement to attest that the document is true and correct.[6] Normally, a strict authentication of documents has not been an pervasive issue in these proceedings; however, in this circumstance, the undersigned questions the authenticity of the Side Letter Agreement, when coupled with the non-credible explanation from the claimant that he simply had forgotten about the document's existence – the very document that is, again, a keystone to proving his claim (or

---

do with the claimant's sale of shareholder interest, despite the claimant being defined as a "Seller" therein. The Side Letter Agreement purportedly operates to preserve the interests of the "Seller" in the *Allapattah* award, as part of the "Seller's" sale of stock to the "Buyers" (Vedutis and Demirok). Yet, the June 6, 1994 Agreement, to which the Side Letter Agreement relates, solely pertains to the sale of Boyajian's stock. It does not pertain to the claimant's sale of stock; indeed, the June 6, 1994 Agreement specifically states as follows: "Boyadzhyan shall retain his ½ right (50) shares of capital stock of A&H of New Jersey, Inc., and continue as officer and director." The claimant did not sell his stock to Vedutis and Demirok until February of 1995. While no additional agreement has been submitted to demonstrate this later stock sale, and despite the claimant's argument that the February 1995 stock sale was a result of the June 6, 1994 Agreement, the June 6, 1994 Agreement by its own clear terms does not include any sale of stock by the claimant. Thus, the undersigned agrees with States' Counsel that the point of the Side Letter Agreement of June 6, 1994, as it relates to the claimant, is unclear.

[6] The claimant filed his claim in June of 2007. Since that time, it appears he had "forgotten" about the Side Letter Agreement. Then, once he received the undersigned's notice of hearing scheduling a hearing on this matter for November 19, 2008, he contacted his attorney, Mr. Covitz for assistance. Only then did the claimant ask Ms. Vedutis for the sale file. *See Affidavit* at **D.E. 5608**. In the claimant's own affidavit, he states that he asked Sally Vedutis for a copy of the "sale file" since the claimant no longer possessed it. According to the claimant, it was Ms. Vedutis who provided him with a copy of the June 6, 1994 sale Agreement as well as the separate Side Letter Agreement, and it was then that he first realized he had forgotten about the Side Letter Agreement. If true, it would seem Ms. Vedutis was a key witness who could have presented testimony on the claimant's behalf, or at least provided an affidavit prior to the hearing, or as part of the claimant's supplemental submission. This did not occur.

a portion thereof).[7]

The claimant's underlying presumption for his claim is that he had 100% individual ownership of the corporation for the period from March 1, 1992 to August 28, 1994. However, the claimant fails to account for the fact that from March 1, 1992 to June or July 1994, claimant was no more than a 50% shareholder in A&H of New Jersey, Inc.[8] Nor does the purported Side Letter Agreement change (increase) the shareholder ownership of the claimant. From June or July 1994 until the close of the Allapattah period (August 28, 1994), the claimant was still only a 50% shareholder and Vedutis and Demirok were each a 25% shareholder.

Most importantly, it is undisputed that the dealer of record on the Exxon Sales Agreement was A&H of New Jersey, Inc. The subject *Allapattah* claim arises from the Exxon Sales Agreement. Accordingly, absent the establishment of the Side Letter Agreement's authenticity, the proper claimant is A&H of New Jersey, Inc. That entity has not filed a claim in this matter, despite it still being an active corporation. Any award must be in the name of the corporation as it was the proper claimant and owner of the rights under the Exxon Sales Agreement.

As argued by States' Counsel, under New Jersey law, a corporation is a separate entity from its shareholders. *Lyon v. Barrett*, 445 A.2d 1153 (1982). Therefore, the corporate existence of A&H of New Jersey, Inc. cannot be disregarded simply because a person (formerly)

---

[7] Even if the authenticity of this Side Letter Agreement was established, and if a valid agreement, the claimant would only be entitled to 50% of the award, not the 100% he seeks. The Side Letter Agreement defines "Seller" as both the claimant and Boyajian, and it was the "Seller" who purportedly retained the rights to this claim. Thus, the claim would also belong to Boyajian (if the Side Letter Agreement is authentic and valid). As of June 6, 1994, the claimant was a 50% shareholder of A&H of New Jersey, Inc. with his cousin (Boyajian) holding the other 50% interest. Accordingly, if the claimant was entitled to any *Allapattah* damages, it would only be for 50% of the amount claimed. The remaining 50% would still go to the States at the conclusion of the Claims Administration Process for distribution to the unclaimed property fund of the various States, as determined and/or ordered by the District Court, to potentially be claimed by Boyajian.

[8] See fn. 4, 5 and 7, *supra*.

involved with the corporation would like to disregard the separate existence of the corporation. *Id. See also, Somerset Apartments, Inc. v. Director, Division of Taxation*, 342 A.2d 520 (App. Div. 1975) and *Sandler v. Lawn-A-Mat Chemical and Equipment Corp.*, 358 A.2d 805 (App. Div. 1976), *cert. denied*, 366 A.2d 658 (1976). However, if one were to assume that the Side Letter Agreement is authentic, it would appear that all the stockholders of A&H New Jersey, as of June 1994 were a party to the Side Letter Agreement. As such, as an equitable matter, the transfer would appear to be valid, irrespective of the lack of strict corporate formalities.[9]

Yet, as mentioned, the undersigned questions the authenticity of the document, which authenticity has not been established. Accordingly, while the undersigned would not deny the claim based merely upon form over substance as an equitable matter, the undersigned cannot validate the claimant's claim[10] because the entire foundation (i.e., the Side Letter Agreement) is questionable based upon the lack of credible evidence supporting its authenticity. Despite having ample opportunity to provide evidence, testimony and witnesses, nothing was provided relating to the authenticity of the Side Letter Agreement. Without that evidence, the claim belongs in the name of A&H of New Jersey, Inc. Of course, the claimant can later try to assert a claim against the unclaimed property fund of the State of New Jersey, at the conclusion of this Claims Administration Process, to attempt to prove his claim there. He has not sufficiently proven his claim here based upon the record before the undersigned.

---

[9] Such as the lack of any indication that the Board of Directors approved of allowing the claimant and his cousin to retain a valuable claim of the corporation, for what appears to be no consideration. However, sight is not lost of the fact that the claimant and his cousin were the only two shareholders who controlled and owned A&H of New Jersey, Inc. as of June 6, 1994. Nonetheless, it would seem (though the undersigned is not specifically aware) that any such transfer to the claimant and his cousin by the corporation would be subject to state, local and/or federal tax, none of which appears to be accounted for within the June 6, 1994 Agreement or the Side Letter Agreement.
[10] Even so, the claimant would only be a 50% owner of the claim because at all times material the claimant was only a 50% shareholder of A&H of New Jersey, Inc.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

The claim of Gevork Boyadzhyan, individually, (Claim No. 104202) is DISALLOWED. The Claims Administrator shall make the appropriate notation in the claim file concerning this dismissal and shall distribute the Special Master's Order to Gevork Boyadzhyan (Claim No. 104202).

**DONE AND ORDERED** in Miami, Florida this 17th day of November, 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record