IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al.,  )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )
                                      )
EXXON CORPORATION,                    )
                                      )
        Defendant.                    )
_____)
                                      )
RUSSELL A. CLINE,                     )
                                      )          **CONSOLIDATED WITH**
        Plaintiff,                    )          **CASE NO.: 05-21338-CIV-GOLD /**
                                      )          **SIMONTON**
vs.                                   )
                                      )
THE GARDEN CITY GROUP, INC.,          )
                                      )
        Defendant.                    )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C11.2

This cause is before the Special Master pursuant to Class Counsel's Eleventh Motion for Adjudication of Conflicting Claims (Motion C11) **[D.E. 5216]**, and the materials submitted[1] by or on behalf of claimant H. Jason Gold, Trustee (Claim No. 4926) (hereinafter, "Gold"), and claimant R. William McGillicuddy (Claim No. 6225A) (hereinafter, "McGillicuddy").

On January 20, 2009, the Special Master conducted an evidentiary hearing to resolve the conflicting claimant dispute contained in dispute C11.2. The parties are H. Jason Gold, Trustee (Claim No. 4926) ("Gold") and claimant R. William McGillicuddy (Claim No. 6225A) ("McGillicuddy"). Gold was present at the hearing and was represented by Alex Laughlin, Esq.

---

[1] Such materials include the original Reply and the responses and documentation attached to the claimants' respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action."

McGillicuddy appeared *pro se*. Witnesses who provided testimony at the hearing included Gold, McGillicuddy and Mr. Idoni.

Following an evidentiary hearing, the Special Master finds as follows:

Both claimants concur that the dealer of record was Mario Idoni for the time period at issue (January 15, 1988 through February 1, 1992). Mr. Idoni and his wife, Kathryn Idoni, filed a voluntary bankruptcy petition on May 1, 1996. The Chapter 7 bankruptcy was closed on August 22, 1996, and later reopened on May 23, 2008, for the purpose of administering the *Allapattah* claim asset. Gold is the trustee of the Idoni bankruptcy estate.

McGillicuddy asserted that he acquired the right to this claim from Mr. Idoni.[2] Gold provided a "Bill of Sale" dated October 21, 1987 through which Idoni purchased the subject station from a prior dealer (Merrifield Service Center, Inc. and Herdman). At the hearing, McGillicuddy asserted he was part owner of Merrifield Service Center, Inc. and was a partner with Herdman. Accordingly, it appears that Mr. Idoni purchased the subject station from a corporation that was partly owned by McGillicuddy.[3]

### A.   The March 14, 1991 Consent to Designation of Attorney-in-Fact

Exxon records indicate McGillicuddy was designated, on or about March 14, 1991, as Idoni's "attorney-in-fact" to operate the station at issue. The stated reason for the designation was "to allow

---

[2] McGillicuddy has not provided any documentation to evidence the basis for how he, **individually**, acquired any rights from Mr. Idoni. Indeed, at the hearing, McGillicuddy indicated that he likely does not have any such documentation in his possession any longer. Additionally, at the hearing for the first time, McGillicuddy mentioned that he took over the station from Mr. Idoni on behalf of himself and his partners (from whom Mr. Idoni apparently purchased the station originally). No such documentation evidencing this aspect was provided.

[3] No documentation regarding this point was provided; rather, it is based upon the statements made by McGillicuddy at

sufficient time to locate such an assignment candidate suitable to Exxon and to preserve the viability of the franchise." *See, Consent to Designation of Attorney-in-Fact at Service Station #2-5355, Falls Church, Virginia* dated March 14, 1991 (hereinafter, the *Consent to Designation*). The *Consent to Designation*, signed by Mario Idoni and McGillicuddy, acknowledges the following:

1. Idoni executed an assignment of his Exxon franchise to McGillicuddy, subject to the acceptance or rejection of Exxon;
2. Idoni and McGillicuddy were to attempt to locate an assignee (as an alternative to proceeding with the assignment to McGillicuddy, presumably in the event Exxon rejected the assignment);
3. Idoni requested permission from Exxon to designate McGillicuddy as his attorney-in-fact to operate the station for ninety (90) days to allow Idoni sufficient time to locate an assignment candidate suitable to Exxon and for the purpose of preserving the ongoing business at the station;
4. Exxon agreed to number 3 above;
5. However, the *Consent to Designation* was subject to the following conditions:
   a. Idoni remained personally obligated to Exxon for the full performance of his contracts with Exxon (which would include the Sales Agreement for motor fuel);
   b. McGillicuddy warranted that "…he has no interest and will claim no interest in the franchise agreements or franchise relationship between Exxon and Idoni…" and, further, that McGillicuddy has no interest in the subject service station;
   c. Idoni expressly acknowledged "…that any act or omission on the part of McGillicuddy with respect to performance of contractual or legal obligations to Exxon will be imputed to Idoni";
   d. McGillicuddy expressly acknowledged that Exxon is doing business with him at the subject station strictly as Idoni's attorney-in-fact, and that McGillicuddy "…has no other interest in the service station operation";
   e. McGillicuddy acknowledged that "…Exxon does not recognize McGillicuddy in any way as a franchisee … at [the subject station], and any business McGillicuddy has with Exxon will not give rise to any rights or entitlements, legal or contractual, between McGillicuddy

---

the January 20, 2009 hearing, though it did not appear that Mr. Idoni disputed this particular assertion.

    and Exxon as to service station #2-5355 located Falls Church, Virginia";

f. Finally, "McGillicuddy warrants that he does not presently claim and will not claim any rights as a franchisee at this location unless and until Exxon enters into written contractual agreements with him."

Based upon the *Consent to Designation* alone (since McGillicuddy has not provided any documentation to counter or further explain its terms), McGillicuddy did not individually acquire any rights or interest of Mr. Idoni. In fact, from the *Consent to Designation*, it appears quite clear that McGillicuddy agreed that he did not have, nor would he seek, a personal interest in the subject station or contracts between Exxon and Mr. Idoni.

### B. February 4, 1992 Consent to Assignment

In the months following the execution of the *Consent to Designation*, on August 30, 1991, Idoni entered a subsequent Sales Agreement with Exxon, which was executed by McGillicuddy as Mr. Idoni's attorney-in-fact. On February 4, 1992 (the end of the instant claim period), Exxon executed a *Consent to Assignment* identifying McGillicuddy as the Assignee, effective February 1, 1992. However, McGillicuddy was listed as a "trustee," not in his individual, personal capacity. *See, Consent to Assignment of Dealer Agreements and Agreement* dated February 4, 1992. Thus far, no underlying sale, purchase or loan documents, by and between Idoni and McGillicuddy (or Merrifield), have been provided, nor have any explanations been provided regarding McGillicuddy's status as a "trustee" (such as who he was a trustee for, and how he is now able to assert the present claim in his own individual right and capacity). The February 4, 1992 *Consent to Assignment* pertained to, *inter alia*, the Exxon Sales Agreement (for motor fuel) for the period from September 1,

1991 through September 1, 1994. This is notable as the time period for this claim runs from January 1, 1988 through February 1, 1992. Thus, the February 4, 1992 *Consent to Assignment* affects a small portion of the claim at issue.

Gold provided a copy of the Exxon Sales Agreement referenced in the February 4, 1992 *Consent to Assignment*. The Sales Agreement is between Mr. Idoni, individually, and Exxon, though it was signed on August 30, 1991 by McGillicuddy as the attorney-in-fact for Mr. Idoni.

### C.    McGillicuddy's Stated Basis for Control over Mr. Idoni's Rights at Issue

McGillicuddy asserts, in his answers to the Claimant Questionnaire, that he took over the station as a "trustee" to satisfy debts Mr. Idoni owed to McGillicuddy and "others." At the January 20, 2009 hearing, McGillicuddy stated that he took over the station from Mr. Idoni on behalf of Merrifield Service Center, Inc. Yet, again, absolutely no documentation has been provided by McGillicuddy to support this assertion or to evidence the following:

   a.   that McGillicuddy had any right or authority to act on behalf of Merrifield;
   b.   any legal right or authority that Merrifield might have (or had) over Mr. Idoni to "take over" the station and operate that station as Mr. Idoni's attorney-in-fact and/or for the benefit or Mr. Idoni's purported creditors;
   c.   for whom McGillicuddy was acting as a "trustee" (Mr. Idoni or Merrifield), as the term "trustee" is utilized in the February 4, 1992 *Consent to Assignment* (as well as a later March 23, 1993 *Consent to Assignment* through which McGillicuddy as "trustee" assigned the remaining rights under the then-effective Sales Agreement to one Abraham Kang[4]);

---

[4] McGillicuddy provided a copy of the *Consent to Assignment of Dealer Agreements and Agreement* dated March 29, 1993. This agreement is between Exxon, "R. William McGillicuddy, Trustee" and "Abraham J. Kang." Mr. Kang received a transfer and assignment of the rights and interests of "R. William McGillicuddy, Trustee" under the Exxon Sales Agreement for the period of time from September 1, 1991 through September 1, 1994. Again, it is noted that this agreement was not with McGillicuddy in his individually capacity; rather, it was in a "trustee" capacity. Yet, it is never stated for whom he was acting as a trustee, though based upon the *Consent to Designation*, it could be argued that he was acting as a trustee for Mr. Idoni. Nonetheless, by virtue of the March 29, 1993 *Consent to Assignment*, McGillicuddy as

    d.    under what right McGillicuddy is asserting his present claim, in his own individual, personal capacity assuming;

        i.    McGillicuddy was acting for the benefit of Merrifield when he "took over the station" from Mr. Idoni and, on the basis of which, he obtained the February 4, 1992 *Consent to Assignment*;

        ii.    McGillicuddy obtained the right to assert this claim, in his personal capacity, when at most he acquired the claim as "trustee" for someone (again, either Mr. Idoni or Merrifield); or,

        iii.    McGillicuddy was acting on behalf of Mr. Idoni as "trustee" which could be implied by the very terms of the *Consent to Designation*.

McGillicuddy asserts that he was the attorney-in-fact for Mr. Idoni and eventually arranged for the sale of the station to Abraham Kang (which leads one to believe that McGillicuddy was acting as a "trustee" for the benefit of Mr. Idoni, in accordance with the *Consent to Designation*). He claims that the sale did not result in enough funds to satisfy all of Mr. Idoni's creditors, and thus McGillicuddy is entitled all receivables. He claims to be the rightful owner of any receivables as he was left with "thousands owed" to him as a result of Mr. Idoni's "default to [McGillicuddy] and … having to repossess the collateral." Once again, McGillicuddy has failed to provide any documentary evidence to establish the basis for this assertion. Assuming arguendo McGillicuddy could assert a claim against Mr. Idoni, the bankruptcy court might be the appropriate forum.

---

a trustee (for someone) conveyed the *Allapattah* claim (or the rights pursuant to the Sales Agreement from which the *Allapattah* claim arises) for this station for the period from September 1, 1991 through February 1, 1992. Thus, for the period of the claim at issue from September 1, 1991 through February 1, 1992, the *Allapattah* claim belongs to neither McGillicuddy nor Mr. Idoni (or Gold). Rather, that portion of the damage claim will need to pass to the Commonwealth of Virginia's unclaimed property fund, at the conclusion of the Claims Administration Process. While it would appear that the claim might belong to Mr. Kang, the undersigned is unaware whether Mr. Kang is the rightful owner or if he too sold, transferred or assigned the claim to another.

### D.     Findings and Conclusions

Based upon the foregoing, the undersigned finds that McGillicuddy has failed to prove his right to assert this claim in his individual capacity. No documentation was provided to evidence any right of McGillicuddy to take over the subject station for his personal benefit and/or for the benefit of others, as a "trustee." Indeed, the record tends to disprove that McGillicuddy ever personally or individually acquired any rights under the Exxon Sales Agreement between Mr. Idoni and Exxon, or that any such acquisition was intended. *See, Consent to Designation* (the language therein appears clear that the intention was that McGillicuddy would not obtain any such rights). Therefore, McGillicuddy's claim is denied and dismissed with prejudice.

Turning to the claim asserted by Gold, the undersigned grants the claim for the period from January 15, 1988 through August 31, 1991. However, the portion of the claim from September 1, 1991 through February 1, 1992 is denied with prejudice for two reasons: the first relates to the February 4, 1992 *Consent to Assignment*; and, the second reason relates to the March 23, 1993 *Consent to Assignment.*

With regard to the February 4, 1992 *Consent to Assignment*, this document was executed between Mr. Idoni and McGillicuddy, in his capacity as **trustee**. This document related to the rights pursuant to the Exxon Sales Agreement (from which the *Allapattah* claim arises) for the period from September 1, 1991 through September 1, 1994. As such, this *Consent to Assignment* did not affect any of Mr. Idoni's rights to an *Allapattah* claim for the period from January 15, 1988 through August 31, 1991. Therefore, Mr. Idoni never transferred any rights to McGillicuddy (as trustee) for any

-7-

period other than September 1, 1991 through February 1, 1992. Since those rights were never transferred, the *Allapattah* claim(s) for January 1, 1988 through August 31, 1991 remained the property of Mr. Idoni, and thus became the property of Mr. Idoni's bankruptcy estate. Accordingly, the claim for said period of time belongs to Gold. Yet, the February 4, 1992 *Consent to Assignment* did transfer Mr. Idoni's *Allapattah* claim for the period of September 1, 1991 through February 1, 1992 to McGillicuddy, as trustee. This transfer occurred almost four years prior to Mr. Idoni's filing of bankruptcy. As such, the September 1, 1991 to February 1, 1992 portion of the claim does not belong to Gold or to the bankruptcy estate of Mr. Idoni.

The second reason that the claim from September 1, 1991 through February 1, 1992 does not belong to Gold is due to the March 23, 1993 *Consent to Assignment*. This document is between McGillicuddy, as trustee, and Abraham Kang. Pursuant to the March 23, 1993 *Consent to Assignment*, McGillicuddy, as trustee, purports to transfer to Abraham Kang all rights under the Exxon Sales Agreement in effect for September 1, 1991 through September 1, 1994 (and thus, the *Allapattah* claim arising from the Sales Agreement).[5] The March 23, 1993 *Consent to Assignment* was executed almost three years before Mr. Idoni filed for bankruptcy. Thus, the transfer (by McGillicuddy as "trustee" for Mr. Idoni, and to Abraham Kang) of the rights pursuant to the September 1, 1991 through September 1, 1994 Exxon Sales Agreement was completed almost years before Mr. Idoni filed for bankruptcy.[6] There is no remaining claim which Gold can rightfully assert

---

[5] These rights were obtained by McGillicuddy as trustee for Idoni by virtue of the earlier February 4, 1992 *Consent to Assignment*.
[6] As set forth above on pg. 2, Mr. Idoni and his wife, Kathryn Idoni, filed a voluntary bankruptcy petition on May 1,

Case 1:91-cv-00986-ASG   Document 5856   Entered on FLSD Docket 11/17/2009   Page 9 of 10

*Order Regarding Conflicting Claimant Dispute C11.2*
*Page 9 of 10*

to the *Allapattah* damages <u>for the period from September 1, 1991 through February 1, 1992</u>.

Finally, it must be observed that, since the *Allapattah* claim arises out of the various Sales Agreements for motor fuel, any such assignment or transfer of rights pursuant to said Sales Agreements assigns or transfers the right to the *Allapattah* claim. Accordingly, as a result of the March 23, 1993 *Consent to Assignment*, the *Allapattah* claim for the period from September 1, 1991 through February 1, 1992 does not belong to either Mr. Idoni (or Gold) or McGillicuddy. The record suggests that the claim belongs to Mr. Kang, but that cannot presently be determined with any certainty. Since Mr. Kang has not filed a claim, the award for the period from September 1, 1991 through February 1, 1992 shall pass to the Commonwealth of Virginia (where the subject station was located) at the conclusion of this Claims Administration Process to be administered in accordance with Virginia's unclaimed property statute. For additional explanation, see footnote 4, *supra*.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

    1.    H. Jason Gold, Trustee (Claim No. 4926) is the rightful claimant as between these two disputing claimants; however, only for the period from January 15, 1988 through August 31, 1991. Accordingly, the claim of H. Jason Gold, Trustee (Claim No. 4926) is granted for the period from January 15, 1988 through August 31, 1991, and dismissed with prejudice for the period from September 1, 1991 through February 1, 1992. That portion of the claim from

---

1996. The Chapter 7 bankruptcy was closed on August 22, 1996, and later reopened on May 23, 2008, for the purpose of

September 1, 1991 through February 1, 1992 shall pass to the Commonwealth of Virginia, at the conclusion of the Claims Administration Process, to be administered pursuant to Virginia's unclaimed property statute.

2. The claim of R. William McGillicuddy (Claim No. 6225A) is hereby dismissed with prejudice. With the resolution of this dispute, Class Counsel is permitted to advance the claim of H. Jason Gold, Trustee (Claim No. 4926), for the period of January 1, 1988 through August 31, 1991 only, in the Claims Administration Process.

3. The Garden City Group is hereby ordered to make the appropriate updates to the claim files and shall distribute the Special Master's Order to: H. Jason Gold, Trustee (Claim No. 4926) and R. William McGillicuddy (Claim 6225A). The Garden City Group is directed to treat the Special Master's Order as an Order Denying Claim with respect to R. William McGillicuddy (Claim 6225A), and as an Order Granting Claim in Part and Denying Claim in Part with respect to H. Jason Gold, Trustee (Claim No. 4926).

**DONE AND ORDERED** in Miami, Florida this 17th day of November, 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

administering the *Allapattah* claim asset.