IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC., et al.,    )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )
                                       )
EXXON CORPORATION,                     )
                                       )
        Defendant.                     )
_____)
                                       )
RUSSELL A. CLINE,                      )
                                       )              **CONSOLIDATED WITH**
        Plaintiff,                     )              **CASE NO.: 05-21338-CIV-GOLD /**
                                       )              **SIMONTON**
vs.                                    )
                                       )
THE GARDEN CITY GROUP, INC.,           )
                                       )
        Defendant.                     )
_____)

## ORDER REGARDING CONFLICTING CLAIMANT DISPUTE C9.5a & C9.5b

THIS CAUSE is before the Special Master pursuant to Class Counsel's Ninth Motion for Adjudication of Conflicting Claims (Motion C9) **[D.E. 4611]**, and the materials submitted[1] by the claimants: (1) Estate of Ephriam Berry McDade, Claim No. 1004112A, and Robbins Oil Company, Claim No. 5783A [Dispute C9.5a]; and, (2) McDade Enterprises, Inc., Claim 1004112B, and Robbins Oil Company, Claim No. 5783B [Dispute C9.5b].

On February 11, 2009, the Special Master conducted an evidentiary hearing to resolve the

---

[1] Such materials include the original Replies and the responses and documentation attached to the claimants' respective answers to the "Claimants' Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as the additional supplements provided by the claimants, and the materials contained within the database maintained by the Claims Administrator.

*Order Regarding C9.5a & C9.5b*
*Page 2 of 10*

unsettled conflicting claimant dispute C9.5a and C9.5b, as contained in Class Counsel's C9 Motion. The parties to these two disputes are as follows:

**Dispute C9.5a**
1. Estate of Ephriam Berry McDade, Claim No. 1004112A;
2. Robbins Oil Company, Claim No. 5783A;

**Dispute C9.5b**
1. McDade Enterprises, Inc. Claim No. 1004112B; and,
2. Robbins Oil Company, Claim No. 5783B.

At the hearing, the Estate of Ephriam Berry McDade and McDade Enterprises, Inc. were represented by James Kirkpatrick, Esq. Robbins Oil was represented by William Gardner, Esq. Nell McDade, the widow of Ephriam Berry McDade, and the representative for the McDade claims, also attended the hearing. Ed Cottrell, on behalf of Robbins Oil was also present at the hearing.

Having reviewed and analyzed the Court file and the file maintained by the Claims Administrator, and all the materials submitted by the claimants and/or their counsel, and having conducted an evidentiary hearing concerning this dispute, and being otherwise fully advised in the premises, the Special Master finds as follows:

## FINDINGS AND CONCLUSIONS

1. Both disputes involve similar parties with the only difference being that the claimant in C9.5a is the Estate of Ephriam Berry McDade, and the claimant in C9.5b is McDade Enterprises, Inc., with the opposing claimant in both disputes being Robbins Oil Company.

2. With regard to dispute C9.5a, the time period of the claim is from March 1, 1983 to January 1, 1990. During this time period, it is undisputed that the Exxon direct-served dealer and

operator was Ephriam Berry McDade. With regard to dispute C9.5b, the time period of the claim is from January 1, 1990 to May 30, 1992. The undisputed dealer and operator of the station during this period was McDade Enterprises, Inc. McDade Enterprises, Inc. was dissolved around May 5, 2005.

3.  At the hearing, Robbins Oil Company indicated it was relying upon two additional documents to support its claim – neither of which was produced until a day after the hearing. Those two documents are: (a) a December 17, 1997 letter to "Excel Mart, Inc." from the Employment Security Commission of North Carolina, and (b) a Bill of Sale dated August 28, 1997 between Robbins Oil Company and McDade Enterprises, Inc.

4.  Neither McDade Enterprises, Inc. nor the Estate of Ephriam McDade had an opportunity to respond to the submission of these documents since they were provided for the first time following the February 11, 2009 hearing (though Robbins Oil Company provided testimony regarding these documents at the hearing). Nonetheless, as will be explained below, the undersigned does not find that either of these documents support Robbins Oil Company's claims to the *Allapattah* damages.

5.  Prior to the hearing, Nell McDade (who is the surviving spouse of the deceased dealer, and the secretary of McDade Enterprises, Inc.) submitted an affidavit in support of the claims for the estate and McDade Enterprises, Inc. Mrs. McDade attests that on or around May 30, 1992, McDade Enterprises, Inc. ceased being a direct-served Exxon dealer, which occurred because Exxon stopped selling them gas due to a leak in the gas tanks. She also attests that Robbins Oil Company purchased the station directly from Exxon in or around December 1994 and did not purchase it from

McDade Enterprises, nor did Robbins Oil Company purchase McDade Enterprises, Inc. (i.e., the stock shares of McDade Enterprises, Inc. were not purchased). Lastly, she attests that McDade did not intend to, nor did it, transfer the subject claim to Robbins Oil Company and that there was no discussion or understanding that Robbins would acquire the right to McDade Enterprises' claim when the property was purchased from Exxon.

6. The Estate of Ephriam McDade and McDade Enterprises, Inc. were the direct-served dealers and the ones damaged by Exxon's practices. The *Allapattah* claims therefore rest with the Estate of Ephriam McDade and McDade Enterprises, Inc., depending upon the time period at issue, as discussed below. Robbins Oil purchased the station, and real property upon which it rested, from Exxon and McDade leased the station from Robbins Oil. From the record and testimony before the undersigned, McDade Enterprises, Inc. was simply a tenant of Robbins Oil. The 12/20/1994 Mutual Franchise Termination Agreement between McDade and Robbins reflects this. McDade was the dealer of record who purchased the motor fuel from Exxon. Robbins Oil Company did not, which is undisputed.

7. Robbins Oil asserts that it succeeded to the McDade's interest in these claims, in connection with Robbins Oil's purchase of the station from Exxon. Specifically, in its memorandum submitted prior to the hearing as part of its response to the Conflicting Claimant Questionnaire, Robbins Oil stated as follows:

> Robbins Oil Company purchased the station located at Patton Avenue in Asheville, North Carolina in two transactions (January 1989 and option to purchase 1992 exercised 1994). The purchase not only included the real estate and equipment but also included the transfer

of the then existing business. The sellers were the landowners who leased the location to Exxon and owned 75% of the land and Exxon who owned 25% of the land. The building and equipment owned by Exxon were on both parcels of land. Exxon had notified the dealer and landowners in 1992 that they intended to let the lease expire May 30, 1992. Since Robbins Oil held the lease and option to purchase the remaining land, Robbins Oil agreed to let the dealer McDade, remain at the location via a verbal agreement as a consignment operator for Robbins Oil Company. Without this agreement Mr. McDade would have been out of business when Exxon terminated the lease. Robbins Oil Company filed this claim asserting they are entitled to the award on this claim because they purchased the rights of this claim in 1992.

8. Robbins Oil also provided an Affidavit of Jim Robbins relating the belief that the station was operated by McDade Enterprises from March 1, 1983 to May 20, 1992 and that Mr. E.B. McDade did not inform Robbins Oil Company that he, individually, operated the station for a period of that time. Robbins Oil provided a 12/20/1994 Mutual Franchise Termination Agreement between McDade Enterprises, Inc. and Robbins Oil. Robbins Oil says that this termination agreement terminated McDade as a consignment dealer. Robbins Oil asserts that McDade became a consignment dealer in May 1992 when Robbins Oil and McDade entered into an agreement to allow McDade to become a consignment dealer and through which Robbins Oil assumed all rights and liabilities to the station location. This particular "agreement" has not been produced.[2]

9. Nor has any "Consent to Assignment" been provided. Such "Consents to Assignment," as we have seen numerous times throughout this Claims Administration Process, refer to Exxon's consent to an assignment of various Sales Agreements (which relate to the motor fuel

---

[2] The specific terms of which, relating to the applicable Sales Agreements with Exxon, were not set forth in any of the papers filed with the Special Master, or sufficiently testified to at the February 11, 2009 hearing.

sales at issue), through which rights to those Sales Agreement (from which the *Allapattah* claim arises) are transferred and/or assigned. Additionally, no other separate documentation has been provided to evidence any such transfer or assignment of the Sales Agreements, or rights arising therefrom, to Robbins Oil Company from McDade Enterprises, Inc. or Mr. McDade individually.

10. In short, Robbins Oil relies upon a "verbal agreement" relating to a consignment dealer relationship, to accomplish the transfer and assignment of rights under the applicable Sales Agreements. Robbins Oil has not provided any documents or agreements which show a transfer either Mr. McDade's or McDade Enterprises, Inc.'s rights to the subject *Allapattah* claim (a *chose in action*).[3] As such, there is no clear evidence to show:

(1) that Robbins Oil was somehow the owner of the subject *Allapattah* claim pursuant to any specific Sales Agreement;
(2) that the claim was transferred or assigned to Robbins by McDade; or,
(3) that anyone other than McDade or McDade Enterprises, Inc. is the rightful owner of this claim.

11. Lastly, with regard to the two documents first identified at the hearing on February 11, 2009, and first produced on February 12, 2009, neither is supportive of Robbins Oil Company's claims. The December 17, 1997 letter from the Employment Security Commission of North Carolina is addressed to "Excel Mart, Inc. T/A Excel Mart #304." This letter essentially

---

[3] It appears that Robbins Oil purchased, from Exxon (not McDade), the subject station and the land on which it was located. It further appears that Robbins Oil then leased back the station to McDade (whereas previously McDade leased it from Exxon or another party). Basically, McDade's landlord changed. Robbins Oil claims that they also purchased some of the McDade business; however, no documents are provided by Robbins Oil to substantiate this claim. The documents provided after the February 11, 2009 hearing – such as the August 28, 1997 Bill of Sale – merely shows the sale of certain specified assets of McDade Enterprises, Inc. It does not relate to the sale of any stock, nor does it (or any other document) demonstrate any transfer, sale or assignment of any of McDade's rights, title or interest under the applicable *Sales Agreement* for Exxon motor fuel. It is from the *Sales Agreement* that the *Allapattah* claim arises. Without that, Robbins Oil appears to have nothing to claim.

communicates that the commission has made a "transfer of your predecessor's experience rating account" (the predecessor is identified as McDade Enterprises, Inc. T/A Biltmore Exxon). It appears that the commission is notifying Excel Mart that Excel Mart will be charged for any unemployment claims filed by former employees of McDade Enterprises, Inc. It further appears that Robbins Oil Company is asserting that it is, or owns, Excel Mart, Inc. and that this December 17, 1997 letter relates to Robbins Oil Company. However, no documentation to support this conclusion was provided by Robbins Oil Company. Irrespective of that issue, the December 17, 1997 letter does not address, in any manner, a purported transfer, sale or assignment of the *Allapattah* claim possessed by Ephriam McDade (or his estate) or McDade Enterprises, Inc.

12.     The Bill of Sale dated August 28, 1997 between Robbins Oil Company and McDade Enterprises, Inc. likewise does not address the sale, transfer or assignment of McDade Enterprises, Inc.'s *Allapattah* claim. The document does not indicate that any stock share sale or complete asset sale occurred; rather, the Bill of Sale simply purports to sell a finite set of assets of McDade Enterprises, Inc., as set forth in Schedule A to the Bill of Sale.[4] Specifically, the following was listed as being sold to Robbins Oil Company by McDade Enterprises, Inc.:

> All inventory held for resale including, but not limited to:
>
> Oil and antifreeze
> Oil, gas and airfilters
> Ignition parts
> Sparkplugs
> Brake pads and linings
> Wiper blades

---

[4] No documentation was provided to evidence that Robbins Oil Company purchased the entity of McDade Enterprises, Inc., and Nell McDade disputes that any such sale occurred.

*Order Regarding C9.5a & C9.5b*
*Page 8 of 10*

>   Fan belts and cooling hoses
>   Batteries
>   Tires
>   Cigarettes, sodas and snacks
>
>   All automotive repair equipment including, but not limited to:
>
>   1 FMC 8600 Tire changer
>   1 FMC 8600 HP Tire change
>   1 Atlas EB 301 Brake Lathe
>   1 Coats 600 Tire Balancer
>   1 RobinAire Air Condition Machine

*See*, Schedule A to the August 28, 1997 Bill of Sale.

13. The Bill of Sale does not address, even vaguely, the transfer, sale or assignment of McDade Enterprises, Inc.'s (or Mr. Ephriam's) rights pursuant to the particular Exxon Sales Agreements. The Bill of Sale does not provide for the transfer, sale or assignment of any such *chose in action*. Thus, the Bill of Sale does not support Robbins Oil Company's claims.

14. Accordingly as between the Estate of Ephriam McDade and McDade Enterprises, Inc., on the one hand, and Robbins Oil Company, on the other, the Estate of Ephriam McDade and McDade Enterprises, Inc. are the rightful claimants.

15. As between the Estate of Ephriam McDade and McDade Enterprises, Inc., the claim periods for each must be modified. Based upon a December 18, 1989 "Consent to Assignment of Dealer Agreements and Agreement" between E.B. McDade (individually) and McDade Enterprises, Inc., the rights of E.B. McDade (individually) pursuant to the Exxon Sales Agreement, in effect for July 1, 1988 through July 1, 1991, were transferred to McDade Enterprises, Inc.

16. As such, the *Allapattah* claim of E.B. McDade, individually, for a portion of his

*Order Regarding C9.5a & C9.5b*
*Page 9 of 10*

original claim (from July 1, 1988 through January 1, 1990) is owned by McDade Enterprises, Inc. Therefore, the Estate of E.B. McDade should be awarded the claim for the period of March 1, 1983 through June 30, 1988 only. This is the period of time for which Mr. McDade individually was the dealer of record, and for which he did not transfer any of his claims to McDade Enterprises, Inc. McDade Enterprises, Inc. should be awarded its claim for the period from July 1, 1988 through January 1, 1990.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. With regard to C9.5a, the rightful claimant, as between the two disputing claimants is the Estate of Ephriam Berry McDade (Claim No. 1004112A). However, the claim is properly held in the name of the Estate of Ephriam Berry McDade only for the period from March 1, 1983 through June 30, 1988. The remainder of the claim (Claim No. 1004112A), for the period from July 1, 1988 through January 1, 1990, is properly held in the name of McDade Enterprises, Inc.
2. With regard to C9.5a, the claim of Robbins Oil Company (Claim No. 5783A) is hereby dismissed with prejudice. With the resolution of dispute C9.5a, Class Counsel is permitted to advance the claim of the Estate of Ephriam Berry McDade (Claim No. 1004112A) in the Claims Administration Process for the period of time from March 1, 1983 through June 30, 1988 only. Class Counsel is also permitted to advance the claim of McDade Enterprises, Inc. for the period from July 1, 1988 through January 1, 1990.
3. The Garden City Group, Inc. is hereby ordered to make the appropriate updates to the claim files, including the necessary modifications to the claim periods and ownership of the same, as noted above, and The Garden City Group, Inc. shall distribute the Special Master's Order to: Robbins Oil Company (Claim No. 5783A). The Garden City Group, Inc. is directed to treat the Special Master's Order as denying the claim of Robbins Oil Company (Claim No.5783A).
4. With regard to C9.5b, the rightful claimant, as between the two disputing claimants is McDade Enterprises, Inc. (Claim No. 1004112B).
5. With regard to C9.5b, the claim of Robbins Oil Company (Claim No. 5783B)


is hereby dismissed with prejudice. With the resolution of dispute C9.5b, Class Counsel is permitted to advance the claim of McDade Enterprises, Inc. (Claim No. 1004112B) in the Claims Administration Process.

6. The Garden City Group, Inc. is hereby ordered to make the appropriate updates to the claim files, and to distribute the Special Master's Order to: Robbins Oil Company (Claim No. 5783B). The Garden City Group, Inc. is directed to treat the Special Master's Order as denying the claim of Robbins Oil Company (Claim No. 5783B).

**DONE AND ORDERED** in Miami, Florida this 17th day of November, 2009.

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

William Gardner, Esq. (via email: bgardner@maxgardner.com)

James Kirkpatrick, Esq.