IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO.: 91-0986-CIV-GOLD/SIMONTON
Special Master Thomas E. Scott

ALLAPATTAH SERVICES, INC., et al.,  )
)
    Plaintiffs,  )
)
v.  )
)
EXXON CORPORATION,  )
)
    Defendant.  )
_____)
)
RUSSELL A. CLINE,  )
)    **CONSOLIDATED WITH**
    Plaintiff,  )    **CASE NO.: 05-21338-CIV-GOLD /**
)    **SIMONTON**
vs.  )
)
THE GARDEN CITY GROUP, INC.,  )
)
    Defendant.  )
_____)

## AMENDED ORDER REGARDING CONFLICTING CLAIMANT DISPUTES C3.2, C3.3 and C3.4

THIS CAUSE is before the Special Master pursuant to Class Counsel's *Third Motion for Adjudication of Conflicting Claims (Motion C3)* **[D.E. 3808]**; *Claimant Anastasia Diamantaras' Position Papers (Brief) in Disputes C3.2, C3.3, and C3.4* **[D.E. 3952]**; *Memorandum of Van Diamantaras in Support of Distribution of the Entire Amount of Damages to Van Diamantaras in Disputes C3.2, C3.3 and C3.4* **[D.E. 3959]**; *Letter from Anastassios Triantaphylis to Clerk re: Omission of page 18 from Memorandum of Van Diamantaras* **[D.E. 3992]**; *Exhibit List of Van Diamantaras for hearing in Disputes C3.2, C3.3 and C3.4* **[D.E. 4094]**; *Witness List of Van Diamantaras for hearing in Disputes C3.2, C3.3 and C3.4* **[D.E. 4095]**; *Claimant, Anastasia*

*Diamantaras' Closing Arguments in Disputes C3.2, C3.3 and C3.4* **[D.E. 4273]**; *Memorandum of Van Diamantaras in Support of Distribution of the Entire Amount of Damages to Van Diamantaras in Disputes C3.2, C3.3 and C3.4 Following Evidentiary Hearing* **[D.E. 4282]**; and, all other materials submitted,[1] by or on behalf of claimant Van Diamantaras (Claim Nos. 4525, 4524, 4527A & 4527B), and claimant Anastasia Diamantaras (Claim Nos. 1022371, 1021556, 1022667A & 1022667B).

## I.     Introduction

On October 1, 2007, the Special Master conducted an extensive evidentiary hearing to resolve three unsettled conflicting claimant disputes contained in Class Counsel's Motion C3, all of which involved the same two parties – a former husband and wife, both of whom reside in Greece. Specifically, the Special Master held a hearing on disputes C3.2, C3.3 and C3.4. The first claimant is Van Diamantaras ("Van").[2] The second claimant is Anastasia Diamantaras ("Anastasia").[3] Anastasia was represented at the hearing by her counsel, Andrew Grimland, Esq. Van was represented at the hearing by his counsel, Anastassios Triantaphylis.

The three disputes before the undersigned, which were heard on October 1, 2007 are as follows:

**C3.2**

Dispute C3.2 pertains to Station #64656 located in Houston, Texas (the "Memorial Car Care

---

[1] Such materials include the original Reply and the responses and documentation attached to the claimants' respective answers to the "Claimant's Questionnaire for the Resolution of Conflicting Claims in the Exxon DFC Class Action," as well as materials submitted prior to the scheduled hearing.
[2] Van filed all three of his claims on or about November 17, 2004 through the use of a Third Party Service Provider,

Center"), and competing claim numbers 4525 (Van) and 1022371 (Anastasia). These claims are for the time period of October 1, 1990 to March 1, 1993.

**C3.3**

Dispute C3.3 pertains to Station # 68218 also located in or near Houston, Texas (the "Lakewood Exxon"), and competing claim numbers 4524 (Van) and 1021556 (Anastasia). These claims are for the time period of June 1, 1988 to April 1, 1990.

**C3.4**

Dispute C3.4 pertains to Station #63047 also located in Houston, Texas (the "Willowbrook Exxon"), and competing claims numbers 4527A (Van) and 1022667A (Anastasia) for the time period of August 8, 1983 to October 1, 1986 relating to Van's ownership of the station in his personal or sole proprietor capacity. Additionally, dispute C3.4 pertains to competing claim numbers 4527B (Van) and 1022667B (Anastasia) for the time period from October 1, 1986 to July 1, 1988 relating to the corporate ownership of the Willowbrook Station, as owned by Van's Automotive, Inc.

After analyzing the materials submitted by the claimants and their counsel, and having reviewed the Court file, conducted evidentiary hearings concerning these disputes, and being otherwise fully advised in the premises, the Special Master finds as follows:

## II.    Factual Background and Findings

Van and Anastasia were formerly married to one another, but are now divorced. They were first married on August 27, 1967 and moved to Abilene, Texas in 1970, and then to Houston, Texas

---

Class Action Refund, LLC.
[3] Anastasia filed all three of her claims on or about June 25, 2004 by and through her son, Damon Diamantaras.

around 1973. Then on February 5, 1992, they divorced one another in the State of Texas, only to be remarried approximately seven months later on August 27, 1992, in Las Vegas, Nevada. Another divorce was obtained in Texas in July of 2000. Yet another divorce was obtained in Greece in 2004 and is still pending[4] on appeal as is the division of property issue in the Greek courts.

Van sold the Memorial Station in March of 1993. The other two stations, Willowbrook and Lakewood, were sold in or about October 1986 and April 1990, respectively. In or about 1994, both Van and Anastasia moved permanently to Greece.

After moving to Greece, Van and Anastasia separated on or about July 28, 1999. Then in 2000, Van traveled to Texas and filed for a divorce in Harris County, Texas, even though he did not fulfill the state and county residency requirements.[5] Van also advised the Texas court that there was no property to distribute. Thereafter, as part of this proceeding, Van attempted to "explain" that

---

[4] At least as of October 2007 the Greek matter was still pending in one form or another.

[5] It is noted that in Van's filings with this Court, he states that in 1994 he and Anastasia **permanently** moved to Greece "where they have lived ever since except for trips to Houston, Texas, to see relatives and friends." *See*, D.E. 3959 at ¶12, pg. 3. Further, in that same filing, Van indicates that he simply "went to Texas [in 2000] and filed for divorce in Harris County, Texas, not knowing that he did not fulfill the state and county residency requirements." *Id*. at ¶13, pgs. 3-4. Yet, in Van's "Special Appearance" filed with the Harris County District Court, in Cause No. 2006-81064 (filed in response to Anastasia's 2006 Post-Divorce Petition), incredibly Van asserts (indeed the document is verified, under oath, by Van) that **only after** obtaining the July 6, 2000 Texas divorce did he then "...[leave] Texas and the United States of America and...returned to Greece where [he] has been a resident of Greece and where [he] intend [sic] to remain permanently." Moreover, Van verified under oath that he "has not been a resident of Texas after July 2000." Van's position in the instant proceeding, relative to his residency in Greece and the timing of the same, is vastly different than what he posited, under oath, to the Texas court in 2006. The undersigned specifically finds that Van was not simply mistaken, but he fully calculated these differing positions for his then-current benefit. The position asserted in this matter, in D.E. 3959, was filed on or about Jun 19, 2007, whereas his "Special Appearance" was filed in the Texas proceeding only four (4) months prior. However, Van tried to clean-up this issue by stating in his October 25, 2007 filing with this Court (well after the October 1, 2007 hearing) that Van was a resident of Greece since 1994 and has not been a resident of Greece since 1994. *See*, D.E. 4282 at ¶12, pg. 3. This new addition was a one-sentence add-on from the earlier, almost exactly similar, filing submitted in June 2007 as part of D.E. 3959. Simply, Van is not credible and the undersigned is concerned about his attempt to foreclose Anastasia from receiving what she is rightfully entitled to, or would have been under Texas law had Van not manipulated the facts in his filings with the Texas court. Since Van appears unconcerned with the requirement of truthfulness in filings submitted to the Texas court, the undersigned is concerned about Van's veracity

what he meant, when he filled out the divorce paperwork in 2000, was that he had no property to distribute in Texas. Anastasia claims this assertion was a mistake and or knowingly false, since the potential for the *Allapattah* proceeds was known and existing.[6]

On July 6, 2000, a final decree of divorce was entered in Case 2000-18488 in the District Court of Harris County, Texas (the "2000 Texas Decree") providing a "general" division of assets, not specifically mentioning any of the *Allapattah* claims. Van claims he filed in Texas based upon advice of counsel in Greece. The undersigned finds that Van has not established any proof reflecting the advice of counsel; rather, the undersigned finds that Van's actions with respect to the 2000 Texas Decree, and with regard to the related 2006 Post-Divorce Petition, were maliciously calculated with the intent to deprive Anastasia of property to which she is entitled.

The 2000 Texas Decree was granted (without Anastasia's knowledge or involvement) based upon Van's assertion that there was no marital property to divide. The arguments advanced by Van, attempting to provide logic and reason for his actions in filing and obtaining the 2000 Texas Decree, are simply unbelievable. Van asserts that he could not serve Anastasia because she did not have a residency in Texas and thus he was unable to identify a residency such that he could serve her in Texas. *See*, D.E. 3959 at ¶13, pg. 4. This argument is incredulous. Van knew exactly where Anastasia was in Greece and knew exactly how to provide her with notice of the 2000 Texas Divorce he filed, irrespective of the lack of a Texas residence.

In addition, Van argues "because the couple had no property in Texas, he consented to a no

---

with respect to this court and with respect to the proceedings in Greece relating to the divorce.
[6] Van claims he was first informed, sometime between 2001 and 2004, that he was entitled to receive an amount from a

property divorce decree." *Id.* Van did not simply "consent" to a no-property divorce, he sought it specifically. His attempt to explain the reason for seeking a no-property divorce, because there was no property "*in Texas*," is disingenuous and, again, not credible. Van asserts that, at the time when the 2000 Texas Decree was entered (i.e., as of July 6, 2000), no "Exxon Award" had been entered and neither he nor Anastasia knew of the "Exxon Award." *See*, D.E. 4282, pgs. 5 - 6. Yet, Van also separately argues that the language within the February 1992 Texas divorce judgment[7] provides for division of the "Exxon Award" in his favor. *See*, D.E. 4282, pg. 7. These arguments are entirely inconsistent. If he asserts there was no knowledge of the *Allapattah* claim in the year 2000, he cannot simultaneously argue that the February 1992 divorce judgment provided for a division of the *Allapattah* claim in his favor.

Then, in January of 2004, Van filed for a divorce in Greece (after living apart from Anastasia for four years, as is purportedly a requirement under Greek law before getting a divorce). The Greek court did not recognize or accept the 2000 Texas Decree. *See*, D.E. 3952, Attachments 1A and 1B. A divorce in Greece was granted in July of 2004 (the "2004 Greek Divorce")[8]. The 2004 Greek Divorce did not divide Anastasia's and Van's property, but the issue of property division is, or was as of October 2007, "litigated vigorously" and remains an issue on appeal in Greece, according to both parties.

---

judgment against Exxon arising out of his operation of the various three stations.
[7] Which was entered approximately eight (8) years prior to when Van says he had no knowledge of the *Allapattah* damages.
[8] Note: Anastasia claims in her affidavit dated December 18, 2006 that she filed for divorce in Greece in 2000; however, there is no documentation showing a divorce filed in 2000, in Greece, by Anastasia individually. It is possible that this was simply the 2000 Greek divorce which both parties may have filed together and/or willing joined when one, or the other, filed the proceeding..

Thereafter, in or about December 2006, Anastasia filed, in Harris County, Texas, a Petition for Post-Divorce Division of Property asking the court to divide the *Allapattah* proceeds, pursuant to the 2000 Texas Decree ("2006 Post-Divorce Petition"). Van argues that the 2000 Texas Decree and the 2006 Post-Divorce Petition have no bearing on the distribution of the Allapattah award because of: (a) principles of international comity; (b) res judicata; (c) collateral estoppel; and (d) lack of jurisdiction. None of these arguments have merit.

First and foremost, the Texas courts should have personal jurisdiction over Van, especially considering he filed for and sought the 2000 Texas Decree, submitting to the jurisdiction of the Texas Courts. Based upon Van's "Special Appearance" filed in the 2006 Post-Divorce Petition proceeding, Van was contesting the Texas court's assertion of personal jurisdiction over him.

Moreover, the 2000 Texas Decree states that the court "expressly reserves the right to make orders necessary to clarify and enforce this decree." *See*, D.E. 3952 at Exhibit C (July 6, 2000 "Decree of Divorce" in Cause No. 2000-18488). Irrespective of the applicable procedural rules in Texas allowing for petitions to modify a prior order, such as the 2006 Petition for Post-Divorce Division of Property, the 2000 Texas Decree specifically reserved the court's right to clarify and enforce its order. Since Van sought this 2000 Texas Decree and submitted to the jurisdiction of that court to obtain the decree, the Texas court retained jurisdiction over him to clarify, enforce or modify its prior order.

Secondly, Van's argument citing principles of international comity itself demonstrates why comity should not be extended to the 2004 Greek Divorce. Van argues that the 2004 Greek Divorce

should be respected over and above the 2000 Texas Decree, but the 2004 Greek Divorce refused to recognize and respect the 2000 Texas Decree calling it "illegal." If the Greek court will not respect a valid prior Texas judgment (one which himself Van sought and manipulated), then why should this court give greater, or any, credence to the 2004 Greek Divorce?

Third, with regard to the principles of res judicata and collateral estoppel, it is the 2004 Greek Divorce which itself should be unenforceable based upon those very same principles, as a result of the 2000 Texas Decree. This view is especially demonstrated, with regard to res judicata, by Van's admission that there is

> ...no dispute that the 2000 Texas Decree and the ensuing 2006 Petition for Post-Divorce Division are based on the same claims raised in the 2004 Greek Divorce claims or claim that could have been raised therein, that being divorce and property division.

See, D.E. 3959, at ¶35. If anything, the 2000 Texas Decree should have prevented the 2004 Greek Divorce, as the 2000 Texas Decree was a prior superseding divorce judgment. Anastasia properly sought a division of property pursuant to the 2000 Texas Decree by virtue of her 2006 Post-Divorce Petition. Moreover, the undersigned determines that Van is equitably estopped from attempting to disavow the 2000 Texas Decree – a judgment that he solely and personally flew back to Texas to file and obtain without properly providing Anastasia with notice. The fact that Van has changed his position regarding this 2000 Texas Decree simply because the 2004 Greek Divorce would not recognize the 2000 Texas Decree is irrelevant, at least for the purposes of equity in the instant proceeding.

Anastasia's 2006 Post-Divorce Petition was dismissed by the Texas court and, apparently,

she did not appeal the same. Yet, according to Anastasia's filing in this matter, the Texas court seemed satisfied that this court was handling the issues. Thus, while there is no Texas divorce decree which **specifically** disposes of the subject property,[9] the undersigned will make a determination of the proper property division in accordance with the Texas "just and right" standard, extending from the 2000 Texas Decree, and other applicable facts and circumstances relevant to equitable considerations. In this regard, the undersigned does not agree with Van's argument that the February 1992 divorce, and accompanying division of property, granted him the *Allapattah* claims with regard to the Memorial Station (or as to the other two stations). *See* fn. 9, *supra*. Moreover, no evidence was provided to establish that Van ever kept these "Memorial Station" assets or proceeds separate from the other marital community property when the couple remarried on August 27, 1992.

Van argues that he should be paid the full award by this Court, and if Anastasia thinks she has a claim to these proceeds, she can file the appropriate pleading in the Greek proceeding to have those proceeds divided. While this could be accomplished, assuming the Greek proceeding is still ongoing, it is not the most equitable result considering the underlying factual background, as described above. In this regard, if Van believes that this Court is incorrect, and if he believes the Greek court should have the authority to divide the *Allapattah* proceeds, **he** can file whatever appropriate pleading he deems necessary with the Greek court. In the meantime, in this Court's

---

[9] Of course, Van asserts that the February 1992 Texas divorce decree awarded him everything related to the Memorial Station. The undersigned does not agree with Van's position. First, though the February 1992 divorce decree provided that the assets and liabilities of the Memorial Station were awarded to Van, the parties were remarried approximately seven (7) months later. Second, by Van's own admission the *Allapattah* claims were not known to him in 1992, and thus the February 1992 decree could not have awarded him the *Allapattah* claims (or the ownership of the chose in action). Third, even though the Lakewood and Willowbrook Exxon stations were already sold and no longer in operation by Van as of February 1992, assets relating to both were not specifically addressed in the February 1992 decree.

estimate, it is fair, equitable, and "just and right" to award Anastasia a significant portion of the subject *Allapattah* damages, as specifically delineated below.

The undersigned is aware that both parties have advised that following the October 1, 2007 hearing in this matter, the Texas court dismissed the 2006 Post-Divorce Petition for lack of "subject matter jurisdiction." Anastasia simply advised that "[g]iven the proceeds are in Florida and that this Florida court already heard this dispute, the Texas court dismissed the Texas case for lack of jurisdiction on or about October 3, 2007, and thus reached no decision on the merits." *See*, D.E. 4273 at pg. 6. Van has advised that the 2006 Post-Divorce Petition was dismissed on October 3, 2007 "because [the court] did not have jurisdiction on the subject matter…" *See*, D.E. 4282 at pg. 5. If accurate, it would appear that the Texas court was inclined to push the decision to the undersigned.

However, no party has provided the undersigned with a copy of the order, or a detailed explanation of the court's reasoning, if any. As such, the undersigned can only surmise the reasoning. Possibly, the Court did not believe it had subject matter jurisdiction, since Anastasia was not a resident of the States of Texas when she filed the 2006 Post-Divorce Petition. However, that petition was merely seeking a modification and/or clarification of the Court's own prior judgment – the 2000 Texas Decree, which the Court expressly reserved the right to modify or clarify. Since the Texas court would not resolve the matter, and apparently was satisfied that this Court was hearing and handling the matter, the undersigned is going to divide these *Allapattah* proceeds based upon the 2000 Texas Decree; however, this decree and the division of property will be modified in accordance with the undersigned's determination of the just and right division of property and in consideration of the equities based upon the circumstances and factual findings made above. Further, since Van

specifically sought and obtained that 2000 Texas Decree, especially under the circumstances through which he intentionally obtained it, Van's present argument – that the 2000 Texas Decree is invalid or otherwise improper – is disregarded. He will have to live with his own choices and actions.

### III.  Conclusion

The undersigned finds that the *Allapattah* proceeds (and at all times material to the parties' marriage these proceeds were *choses in action*) were a direct result of events occurring during the parties' respective marriage (and remarriage). Thus, the proceeds are property which need to be partitioned under Texas law and the inception of title doctrine. *See, e.g., Philips v. Philips*, 951 S.W.2d 955 (Tex. App. – Waco 1997). *See also, Vallone v. Vallone*, 644 S.W.2d 455 (Tex. 1982) and §§3.003 and 3.006, *Family Code, V.T.C.A.* Pursuant to Texas statutory authority, a fair and "just and right" division of the community property is the general rule for property division, and is equitable. *See*, §7.001, *Family Code, V.T.C.A.* (regarding the "just and right" standard). The undersigned finds that a "just and right" division of the subject property is 50% to each party; however, in further consideration of the actions of Van in essentially attempting to prevent Anastasia from obtaining her rightful share of the property, the equities dictate that the most "just and right" division of property is for Anastasia to receive 65% of the *Allapattah* award, and Van shall only receive 35% of the *Allapattah* award.

The gross award total from C3.2 through C3.4 is $394,091.18 and the net award (after all reductions) is $276,930.54. 65% of the total award should be paid to Anastasia (i.e., $256,159.27 in gross total, and $180,004.85 as the net total amount), and 35% of the total award should be paid to Van (i.e., $137,931.91 in gross total, and $96,925.69 as the net total amount).

Specifically, the breakdown is as follows:

| Dispute # | Total Gallons | Anastasia's Award | Van's Award |
|---|---|---|---|
| C3.2 | 5,090,639 | $ 77,943.91 (gross)<br>$ 54,771.71 (net) | $ 41,969.80 (gross)<br>$ 29,492.46 (net) |
| C3.3 | 3,302,496 | $ 49,427.48 (gross)<br>$ 34,733.02 (net) | $ 26,614.79 (gross)<br>$ 18,702.40 (net) |
| C3.4 | 7,511,411 | $ 128,787.88 (gross)<br>$ 90,500.12 (net) | $ 69,347.32 (gross)<br>$ 48,730.83 (net) |
| | **TOTALS:** | $ 256,159.27 (gross)<br>$ 180,004.85 (net) | $ 137,931.91 (gross)<br>$ 96,925.69 (net) |

Moreover, these same percentages shall apply to the recovery of the 5% Reserve payment, plus interest, when the 5% Reserve payments are awarded. Anastasia will receive 65% and Van will receive 35% of the total 5% Reserve and interest payment, which will be forthcoming after final rulings are made relative to the entire Class. Both Anastasia and Van should be provided with the appropriate 5% Reserve packages by The Garden City Group, Inc., as soon as The Garden City Group, Inc. deems appropriate.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1. With regard to C3.2:

   a. Anastasia Diamantaras, Claim No. 1022371, should be awarded 65% of the total available award for conflicting claimant dispute C3.2. Van Diamantaras, Claim No. 4525, should be awarded 35% of the total available award for

      conflicting claimant dispute C3.2.

    b. With the resolution of this dispute, Class Counsel is permitted to advance the claims of Anastasia Diamantaris Claim No. 1022371 and Van Diamantaras, Claim No. 4525, in the Claims Administration Process, in accordance with the proportions noted.

2. With regard to C3.3:

    a. Anastasia Diamantaras, Claim No. 1021556, should be awarded 65% of the total available award for conflicting claimant dispute C3.3. Van Diamantaras, Claim No. 4524, should be awarded 35% of the total available award for conflicting claimant dispute C3.3.

    b. With the resolution of this dispute, Class Counsel is permitted to advance the claims of Anastasia Diamantaris Claim No. 1021556 and Van Diamantaras, Claim No. 4524, in the Claims Administration Process, in accordance with the proportions noted.

3. With regard to C3.4:

    a. Anastasia Diamantaras, Claim Nos. 1022667A & B, should be awarded 65% of the total available award for conflicting claimant dispute C3.4. Van Diamantaras, Claim Nos. 4527A

*Order Regarding Conflicting Claimant Disputes C3.2, C3.3 and C3.4*
*Page 14 of 14*

&amp; B, should be awarded 35% of the total available award for conflicting claimant dispute C3.4.

    b.    With the resolution of this dispute, Class Counsel is permitted to advance the claims of Anastasia Diamantaris Claim Nos. 1022667A &amp; B and Van Diamantaras, Claim No. 4527A &amp; B, in the Claims Administration Process, in accordance with the proportions noted.

4.    The Garden City Group, Inc. is hereby ordered to make the appropriate updates and necessary adjustments to the claim files and shall distribute the Special Master's Order to: (a) Anastasia Diamantaras, Claim Nos. 1022371, 1021556 and 1022667A &amp; B, and (b) Van Diamantaras, Claim Nos. 4524, 4525, and 4527A &amp; B.

**DONE AND ORDERED** in Miami, Florida this 20th day of November, 2009

_____
SPECIAL MASTER THOMAS E. SCOTT

Copies furnished to:
United States District Court Judge Alan S. Gold
All counsel of record

Andrew Grimland, Esq.
2211 Norfolk, Suite 528
Houston, TX 77098

Anastassios Triantaphyllis
Triantaphyllis Law Firm
The Civil Justice Center
112 E. 4th Street
Houston, TX 77007